IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JERRY R. KENNEDY<br>1155 Langan Lane<br>Zanesville, OH 43701,<br><br>RICHARD KENNEDY<br>1095 Langan Lane<br>Zanesville, OH 43701,<br><br>CYNTHIA HAIRSTON<br>1800 Coal Run Road<br>Zanesville, OH 43701,<br><br><br>Individually and as Representatives<br>of a Class of All Others<br>Similarly Situated,<br><br>and<br><br>THE FAIR HOUSING ADVOCATES<br>ASSOCIATION<br>520 South Main Street #2459<br>Akron, OH 44311<br><br>          Plaintiffs,<br>   v.<br><br>THE CITY OF ZANESVILLE, OHIO,<br>WASHINGTON TOWNSHIP,<br>PAUL BUNTING, individually and<br>in his official capacity as Washington<br>Township Trustee,<br>CLINT CAMERON, individually<br>and in his official capacity as<br>Washington Township Trustee,<br>DOUG CULBERTSON, individually<br>and in his official capacity as<br>Washington Township Trustee,<br>SANDRA JAMES, individually and in<br>her official capacity as Washington<br>Township Trustee, | Civil Action No. C2-03 1047<br><br>CLASS ACTION COMPLAINT JUDGE MARBLEY<br><br>MAGISTRATE JUDGE ABEL<br><br>DEMAND FOR JURY TRIAL |

| | |
|---|---|
| **MUSKINGUM COUNTY,** | ) |
| **ED KENILY, individually and in** | ) |
| **his official capacity as Muskingum** | ) |
| **County Commissioner,** | ) |
| **DON MADDEN, individually and in** | ) |
| **his official capacity as Muskingum** | ) |
| **County Commissioner,** | ) |
| **DOROTHY MONTGOMERY,** | ) |
| **individually and in her official capacity** | ) |
| **as Muskingum County Commissioner,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs Jerry R. Kennedy, Richard Kennedy, Cynthia Hairston, individually and as representatives of a class of all others similarly situated, and the Fair Housing Advocates Association, by counsel, bring this action against defendants City of Zanesville, Washington Township, Washington Township Trustees Paul Bunting, Clint Cameron, Doug Culbertson, and Sandra James, Muskingum County, and Muskingum County Commissioners Ed Kenily, Don Madden, and Dorothy Montgomery, as follows:

### NATURE OF THE ACTION

1.      This is a civil rights class action for declaratory and injunctive relief and damages to remedy defendants' continuing violation of the rights of African American and other residents of a predominantly African American neighborhood in Washington Township, Muskingum County, Ohio. Defendants have maintained, and continue to maintain, a racially discriminatory policy, pattern, and practice of intentionally denying public water service to these residents because they are African American and/or because they reside in a predominantly African

2

American neighborhood. Plaintiffs Jerry R. Kennedy, Richard Kennedy, and Cynthia Hairston, on behalf of themselves and all other persons similarly situated, and the Fair Housing Advocates Association bring this action pursuant to the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 *et seq.*, 42 U.S.C. §§ 1981, 1982, 1983, Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, and Ohio Revised Code § 4112.02(H).

2.   African American and other residents of a predominantly African American neighborhood in Washington Township have been denied public water service for nearly fifty years. During the same time period, defendants have provided water service to white residents, including white individuals residing on the very same streets as plaintiffs.

3.   Plaintiffs' homes are located within approximately one mile of public water lines and/or the City of Zanesville's water plant. The homes in this area are built on abandoned coal mines, and do not enjoy access to potable well water. Due to defendants' ongoing discriminatory refusal to provide public water service on an equal basis, residents unable to dig wells on their property have been forced to purchase water from the City of Zanesville at a cost up to or exceeding ten times the price that white residents pay for public water service. They have been forced to haul this water to their homes and store it in cisterns, where it often becomes stagnant, and in many cases, becomes infested with insects and parasites, and thereby dangerous for consumption. Even those residents who have been able to dig wells on their property, at great expense, cannot use the contaminated well water for drinking or cooking, and must purchase water at a cost much greater than the cost that white residents pay for running water to their homes.

4.   Despite longstanding awareness of these dire circumstances, defendants have

3

continually denied African American and other residents of this predominantly African American neighborhood access to public water service, while permitting white residents, sometimes on the very same streets, access to such service. Defendants also have authorized, financed, developed, and/or constructed new water projects in white neighborhoods, while continually ignoring the longstanding, desperate need for public water service in this predominantly African American area.

5.     The Ohio Civil Rights Commission recently investigated defendants' practices, and on June 12, 2003, following a lengthy and comprehensive on-site investigation, concluded that the facts "give rise to the inference that [defendants] failed to provide [residents] with access to public water service because of their race, Black [,] and the racial composition of their neighborhood." *Hairston v. City of Zanesville*, (OSI)H1071702 (29606) 072602, 05-02-0934-8 (Ohio Civil Rights Comm'n June 13, 2003); *Fair Housing Advocates Ass'n v. City of Zanesville* (OSI/COL)H1071702 (26917) 080502 (Ohio Civil Rights Comm'n June 13, 2003) ("Comm. Order") (attached as Ex. A).

## JURISDICTION AND VENUE

6.     Jurisdiction is conferred on this Court by 42 U.S.C. § 3613(a), and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), 1367(a), and 2201.

7.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), as the claims arise in Muskingum County, Ohio.

4

## PARTIES

### Plaintiffs

8.      Plaintiff Jerry R. Kennedy is an African American resident of Washington Township in Muskingum County and a citizen of the United States. Jerry Kennedy currently resides at 1155 Langan Lane and pays property taxes to Muskingum County. He previously resided at 1140 Langan Lane. Jerry Kennedy has never received public water service at either of these properties.

9.      Richard Kennedy is an African American resident of Washington Township in Muskingum County and a citizen of the United States. Richard Kennedy resides at 1095 Langan Lane, and pays property taxes to Muskingum County. Richard Kennedy has never received public water service at his property.

10.     Plaintiff Cynthia Hairston is an African American resident of Washington Township in Muskingum County and a citizen of the United States. Cynthia Hairston resides at 1800 Coal Run Road and pays property taxes to Muskingum County. Until 1980, she resided at 1775 Coal Run Road. Ms. Hairston has never received public water service at either of these properties on Coal Run Road.

11.     Plaintiff Fair Housing Advocates Association ("the FHAA") is a private, non-profit fair housing organization incorporated in 1993 under the laws of the State of Ohio, with its principal place of business at 520 S. Main Street #2459, Akron, Ohio 44311. The FHAA seeks to eliminate housing discrimination and to promote equal housing opportunity for all persons without regard to race, religion, gender, national origin, familial status, or disability. The FHAA provides its services throughout the state of Ohio.

5

<u>Defendants</u>

12.    Defendant City of Zanesville ("the City") is a municipal corporation organized under the laws of the State of Ohio. It is located in Muskingum County, approximately fifty-five miles east of downtown Columbus. The City provides water service to the homes of residents in neighborhoods outside the City limits, including parts of Washington Township. The City also is responsible for maintaining water lines, billing customers, and determining which residents are granted permission to tap into the existing water lines in these neighborhoods. The City has received, and continues to receive, federal Community Development Block Grant funds that are used for water and sanitary sewer programs.

13.    Defendant Washington Township ("the Township") is a political subdivision organized under the laws of the State of Ohio and located in Muskingum County, just outside the City's borders. The Township, by and through the Washington Township Trustees ("the Trustees"), possesses the authority to finance the provision of water service to residents of the Township, and, upon information and belief, has initiated, authorized and/or facilitated the construction and management of water projects to serve residents of the Township. Upon information and belief, the Township has received, and continues to receive, federal Community Development Block Grant funds that are used for water and sanitary sewer programs.

14.    Defendant Paul Bunting is a Washington Township Trustee. He is sued in his official and individual capacities.

15.    Defendant Clint Cameron is a Washington Township Trustee. He is sued in his official and individual capacities.

16.    Defendant Doug Culbertson is a Washington Township Trustee. He is sued in his

6

official and individual capacities.

17.     Defendant Sandra James is a Washington Township Trustee. She is sued in her official and individual capacities.

18.     Defendant Muskingum County ("the County") is a political subdivision organized under the laws of the State of Ohio. Since at least December 2000, the County, by and through the Muskingum County Commissioners, has maintained partial or sole responsibility for providing water service to the homes of County residents. The County has received, and continues to receive, federal Community Development Block Grant funds that are used for water and sanitary sewer programs.

19.     Defendant Ed Kenily is a Muskingum County Commissioner. He is sued in his official and individual capacities.

20.     Defendant Don Madden is a Muskingum County Commissioner. He is sued in his official and individual capacities.

21.     Defendant Dorothy Montgomery is a Muskingum County Commissioner. She is sued in her official and individual capacities.

## FACTUAL BACKGROUND

A.     The History of Racial Segregation and Discrimination in the Allocation of Water Service in the Coal Run/Langan Lane Neighborhood

22.     Plaintiffs Jerry R. Kennedy, Richard Kennedy, and Cynthia Hairston reside in a predominantly African American area of the Township, just east of the City's border, in Muskingum County. This area includes Coal Run Road and the southern portion of Langan Lane ("Coal Run/Langan Lane neighborhood").

7

23.     The City and its surrounding area have a long history of racial segregation, discrimination, and intimidation. In the 1950s, the City maintained racially segregated public recreational facilities, including swimming pools and cemeteries. Decades after a 1950 study by the Zanesville Council on Human Rights concluded that "Negroes can buy only certain homes," Council on Human Rights, Zanesville, Ohio, An Even Break, Human Rights in the "Typical American City" 5-6 (2d ed., 1950), African American residents have continued to face racial discrimination, harassment, and even violence, upon attempting to purchase, rent, or live in homes outside of historically African American neighborhoods. African American students in Muskingum County continue to experience racial harassment and discrimination in public education. As recently as 1999, the City was the site of a Ku Klux Klan rally.

24.     Residential segregation in the Zanesville area persists to this day. For example, according to data from the 2000 Census, African Americans constitute only 3% of the population of Washington Township and 4% of the population of Muskingum County. The census blocks encompassing the Coal Run/Langan Lane neighborhood, however, are nearly 30% African American.

25.     Langan Lane itself is neatly divided, at the side street Circle Drive, by two racially segregated neighborhoods. The northern portion of Langan Lane, including Circle Drive, is entirely white, and ends to the north at Adamsville Road, which is nearly all white. In contrast, the southern portion of Langan Lane is entirely African American, and ends to the south at Coal Run Road, which is predominantly African American.

26.     In the Coal Run/Langan Lane neighborhood, whether a particular home has access to public water service depends on the race of its residents and/or the race of its neighboring

8

residents.

27. The northern half of Langan Lane and the side street Circle Drive are comprised of nineteen white residences. The City provides water to every one of these homes.

28. The southern half of Langan Lane is comprised of thirteen African American residences. The City does not provide water to the vast majority of these African American homes. Upon information and belief, only three of these African American homes receive water service, due to their close proximity to the white portion of the street, and/or their unilateral actions in tapping into existing water lines serving white residences.

29. Of the twenty-two residences on Coal Run Road, thirteen are occupied by African American families, and nine are occupied by white families. Not a single African American resident on Coal Run Road receives water service from the City.

30. The City provides water service to only three homes on Coal Run Road. Every one of these three homes is occupied by a white family. The six white residences that do not receive water service are surrounded by or located in close proximity to African American homes.

31. Upon information and belief, all but one of the residents of Adamsville Road (where Langan Lane ends to the north) are white. All of the homes on Adamsville Road have access to public water service. The only African American family on the street purchased its home from a white owner with pre-existing water service.

32. Upon information and belief, Defendants have been, and are, generally aware of the demographic information, and the disparity in access to public water service, described above.

9

B.    Hardship Resulting from the Lack of Public Water Service

33.    The site on which the homes of plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston were built makes surviving without access to public water service an extraordinary hardship. Because the land was formerly used for coal mining, the majority of residents in the Coal Run/Langan Lane neighborhood cannot build wells on their properties. Instead, they must resort to purchasing water from the City's water treatment plant and hauling it, or having it hauled, to their homes by the truckload. There, the water is stored in cisterns, where it becomes stagnant if not promptly used. Many Coal Run/Langan Lane neighborhood residents catch rainwater in their cisterns in order to obtain a sufficient water supply at a lower cost, and the water becomes infested with snails, worms, and mosquitoes before it is pumped into their homes. These residents self-treat the water with bleach and other chemicals before using it to bathe and wash dishes. Because the water stored in their cisterns is often contaminated, most residents in the neighborhood with cisterns frequently must buy bottled water for drinking and cooking.

34.    Each month, residents of the Coal Run/Langan Lane neighborhood who are without water service or a well pay up to, or sometimes more than, ten times as much to purchase and haul water from the City as white residents pay for running tap water in their homes. In addition to the labor required to purchase, haul and store water, these residents also pay significant additional costs, including, for example, the cost of purchasing, installing, and maintaining the cistern and pump, the cost of purchasing and maintaining a vehicle to haul water, and the cost of purchasing chemicals for treatment, and bottled water for drinking and cooking. In addition, they must pay costs associated with damage to their hot water tanks and appliances

10

resulting from contaminated water.

35.     Even those Coal Run/Langan Lane neighborhood residents who have been able to maintain a well on their property cannot make full use of the water obtained from the well, as the former coal mines have thoroughly contaminated the ground water with sulfur and other pollutants, making the limited well water supply unsafe for consumption. These residents must purchase bottled water for drinking and cooking, and must pay costs associated with damage to their hot water tanks and appliances resulting from contaminated water.

36.     Due to the former mining activity in the area, plaintiff Jerry Kennedy has been unable to build a well for either of his homes on Langan Lane. Instead, because he does not have public water service, he has been forced to purchase large quantities of water from the City, and haul the water, or have it hauled, to his home in a truck. Jerry Kennedy stores the water in a cistern on his property, where it mixes with rainwater and becomes infested with worms. He treats the water with bleach before he and his family use it for bathing and other non-drinking purposes. Because the water is unfit for drinking, Jerry Kennedy must purchase a separate supply of drinking water for himself and his family.

37.     Plaintiff Richard Kennedy has twice attempted to build a well on his property, but has been unable to do so due to former mining activity. Instead, because he does not have public water service, he has been forced to purchase water for himself and his family from the City by the truck load and haul the water to his home, where he stores it in a cistern he built on his property. Richard Kennedy does not catch rainwater in his cistern, and must haul water to his home twice a day.

38.     Plaintiff Cynthia Hairston was able to dig a well on her property, at great expense,

to provide a limited supply of water to her home. Because the well water is contaminated and
unsafe, Ms. Hairston must purchase drinking water for herself and her family. She is also forced
to purchase supplemental water supplies for any other purpose requiring a significant amount of
water.

39.     The lack of public water service has left plaintiffs and other residents in the Coal
Run/Langan Lane neighborhood without an effective fire defense system. Upon information and
belief, as a result, at least some residents have paid, and continue to pay, higher premiums for
homeowners insurance.

C.     <u>Defendants' Continued Discriminatory Denial of Water to the Coal Run/Langan
       Lane Neighborhood</u>

40.     Upon information and belief, defendants exercise overlapping and concurrent
responsibility to provide water service to residents in the Coal Run/Langan Lane neighborhood.
Although independent in name, defendants work in close cooperation with one another. Upon
information and belief, defendants have regularly collaborated, and continue to collaborate, on
public projects, including water projects.

41.     Defendants long have been aware, or should have been aware, that African
American and other residents of the predominantly African American Coal Run/Langan Lane
neighborhood lack public water service to their homes, and that those residents not only desire,
but require, such service. Despite their knowledge, and their authority and/or responsibility to
provide water service to this area, defendants, working together, have intentionally maintained,
and continue to maintain, a policy, pattern, and practice of denying African American and other
residents of the Coal Run/Langan Lane neighborhood access to public water service to their

12

homes, while providing the same service to white residents' homes.

        *1.*      *Discriminatory Denial of Water Service by the City of Zanesville*

      42.      For almost fifty years and continuing to the present, the City has knowingly, intentionally, and continually provided water service to homes outside the City limits on a selective basis, depending on the race of the residents of the home, or the racial composition of the neighborhood in which the home is located.

      43.      The City has maintained, and continues to maintain, a dual system of municipal water service. The City has continually refused to provide water service to homes occupied by African American and other residents in the Coal Run/Langan Lane neighborhood, requiring them instead to purchase, haul, and store more expensive water from the City's water treatment plant, or from other retail locations. At the same time, the City has continually provided water service to white homes in the same area or other areas occupied predominantly by white residents.

      44.      On December 27, 1955, the City enacted an ordinance extending water service to select individuals residing in the Township just outside the City boundary, on Adamsville Road and the northern portion of Langan Lane. The residents to whom the City extended water service were, and are, nearly all white.

      45.      Since 1955 and continuing to the present, the City has provided water service to homes in this predominantly white area, with knowledge of its racial composition, but has deliberately refused to provide water service to the predominantly African American Coal Run/Langan Lane neighborhood, portions of which border Adamsville Road. Many of the white residents whose homes continue to receive water service from the City live on the same streets as

13

African American residents who still do not receive water service from the City.

46.     Throughout the many years that the City has selectively provided water service outside the City's borders, it has known, or should have known, about the desperate need for potable running water in the Coal Run/Langan Lane neighborhood and the longstanding deprivation suffered by its African American residents.

47.     Upon information and belief, the City has repeatedly denied requests by African American residents for water service to the Coal Run/Langan Lane neighborhood, while granting requests by white residents. For example, plaintiff Richard Kennedy first requested water service when he built his house on Langan Lane in 1962. The City denied his request, stating that low water pressure precluded it. Richard Kennedy repeated his request to the City several times in subsequent years, and even offered to run his own water line from the City's supply, but the City denied his request each time. In contrast, in 1969, 1975 and 1991, the City permitted white residents on Langan Lane to tap into the water lines.

48.     Similarly, in approximately 1988, plaintiff Jerry Kennedy built his house on Langan Lane and requested permission to tap into the water line. The City denied his request, citing low water pressure. In 1998, however, the City allowed a white resident who built a house on Circle Drive, approximately 100 yards from Jerry Kennedy's home, to tap into the water line. Mr. Kennedy learned that this had happened when he saw his white neighbor watering his lawn.

49.     Studies conducted by City employees or agents as recently as 2002 have noted the history of requests for water service to the Coal Run/Langan Lane neighborhood, and the inadequacy of wells in the area. At least one of these studies specifically acknowledged that for years, many Coal Run/Langan Lane neighborhood residents had been storing water hauled from

14

the Zanesville water treatment plant in cisterns, leading to ineffective fire defense and poor and
unsanitary water distribution. Upon information and belief, even after being presented with the
findings from these studies, City officials deliberately refused to take the steps necessary to
provide clean, safe water to African American residents in the Coal Run/Langan Lane
neighborhood.

50.    On July 16, 2002, the FHAA sent the City a letter raising concerns about the lack
of water service in the Coal Run/Langan Lane neighborhood. The FHAA requested that the City
take action to provide the area with water service and ensure that its services and programs were
provided to residents on an equal basis.

51.    On July 26, 2002, after pressure from Plaintiffs' counsel and the FHAA, City
representatives attended a meeting with African American residents and representatives from the
County and Washington Township, to discuss the need for public water service in the Coal
Run/Langan Lane neighborhood.

52.    Notwithstanding this meeting, the City continued to deny, and to this day
continues to deny, water service to African American and other residents in the Coal Run/Langan
Lane neighborhood.

53.    The City's actions during and after the July 26, 2002 meeting are consistent with a
long history of attempting to placate residents of the Coal Run/Langan Lane neighborhood with
false assurances that they would gain access to public water service. For example, in
approximately the early 1990's, the City used documentation of Coal Run/Langan Lane
neighborhood residents' income levels to secure grant money to install a water pumping station
on Adamsville Road. An official went door-to-door conducting income surveys and soliciting

15

signatures from Jerry Kennedy and other residents. Jerry Kennedy was told that this information would be used to extend water service to him. Only after the pump station was installed and he inquired about obtaining water did the City tell him the truth: the pump station, which is located approximately ¼ mile from Jerry Kennedy's home, was built to improve the water pressure for residents with pre-existing taps and would not be used to extend water to new customers.

54.     The foregoing constitutes a continuing policy, pattern, and practice of discrimination by the City on the basis of race in the provision of municipal services.

> 2.     *Discriminatory Denial of Water Service by Washington Township and Washington Township Trustees*

55.     For many years, the Township and the Trustees have been involved in the initiation or provision of water service to areas of the Township outside City limits.

56.     Upon information and belief, in the late 1980's, residents of the Coal Run/Langan Lane neighborhood met with the Trustees and the East Muskingum Water Authority and requested water service. Their request was denied and they were told that running water lines to their neighborhood was not feasible.

57.     In May 2001, the Trustees passed an emergency resolution requesting that the East Muskingum Water Authority reinstate portions of its jurisdiction as an "emergency measure necessary for the immediate preservation of the public health, safety, and welfare because of the residents' immediate need for safe drinking water and fire suppression." Comm Order at 5 (Ex. A). At that time, the East Muskingum Water Authority lacked jurisdiction to provide water service to the Township. Upon information and belief, the Trustees made this request specifically for the purpose of developing a water project to provide water to the predominantly

white portions of the Township.

58. The Trustees submitted to the East Muskingum Water Authority a reincorporation plan that deliberately excluded the Coal Run/Langan Lane neighborhood. Upon information and belief, the Trustees intentionally limited the area for a new water project to portions of Adamsville Road, Pleasant Grove, and Lovers Lane, with the knowledge that this area was virtually 100% white, and that the homes there already had access to potable well water. Upon information and belief, the Trustees devised the boundaries of the proposed emergency water project specifically to exclude areas and/or residences that it knew were occupied by African Americans and specifically to include areas and/or residences that it knew were occupied by whites.

59. Upon information and belief, following the reincorporation, the Township and the Trustees worked closely with both the County and the East Muskingum Water Authority to ensure that the water project would be carried out in the discriminatory manner in which it was planned, and to complete the water project in November 2002.

60. Of the eighty-two Washington Township residents who receive public water service as a result of the reincorporation, only one is African American.

61. The foregoing constitutes a continuing policy, pattern, and practice of discrimination by the Township and its Trustees on the basis of race in the provision of municipal services.

17

### 3. Discriminatory Denial of Water Service by Muskingum County and Muskingum County Commissioners

62.     In December 2000, the County entered into a cooperative agreement with the East Muskingum Water Authority to provide water service to County residents. Pursuant to this agreement, the County initiated a series of water projects to extend water lines to overwhelmingly white areas of the County. At the time it initiated these projects, the County knew of the pressing need for running water in the Coal Run/Langan Lane neighborhood. Despite this knowledge, the County and the County Commissioners deliberately chose to proceed with the scheduled water projects in areas they knew were predominantly white.

63.     While commencing and developing water projects in white neighborhoods, the County and the County Commissioners denied requests for water service made by residents of the Coal Run/Langan Lane neighborhood. For example, when plaintiff Cynthia Hairston moved into her home in late 2000, a Muskingum County official expressly denied her request for water service, stating that she would have to dig a well.

64.     In July 2001, however, the County authorized preliminary engineering plans for three separate water projects to extend public water service to Adamsville Road, Chandlersville Road, and Gaysport, which are all-white, or nearly all-white, areas. Upon information and belief, the County was aware that residents in these areas were all white or nearly all white, and that they already had access to potable water from wells. Notwithstanding this fact, the County chose to provide water to these white areas while intentionally omitting from consideration the Coal Run/Langan Lane neighborhood, with its highly contaminated ground water and predominantly African American population.

18

65.     On December 13, 2001, at a County hearing to discuss federal Community
Development Block Grant funding for the Chandlersville water project, Jerry Kennedy publicly
reiterated the need for water service in the Coal Run/Langan Lane neighborhood. Jerry Kennedy
explained that his mother had lived on Coal Run Road for almost seventy years and that he
would like her to have public water service in her lifetime.

66.     County Commissioner Dorothy Montgomery flatly denied his request, stating that
there would be no water there "until President Bush drops spiral bombs in the holler," and
emphasizing that even Kennedy's "grandchildren's grandchildren would not have water." White
citizens in attendance laughed at these remarks.

67.     At the same hearing, the County approved a water project for the nearly all-white
neighborhood of Chandlersville Road. In January 2002, the County approved the Gaysport water
project, for an area that is 100% white.

68.     On July 16, 2002, the FHAA sent the County Commissioners a letter raising
concerns about the lack of water service in the Coal Run/Langan Lane neighborhood. The
FHAA requested that the County take action to provide the area with water service and ensure
that its services and programs were provided to residents on an equal basis.

69.     At the July 26, 2002 meeting described in paragraph 51 above, the County
Commissioners were specifically informed of the need for water service in the Coal Run/Langan
Lane neighborhood. In response, County Commissioner Don Madden asserted that the County
would consider providing water to the Coal Run/Langan Lane neighborhood if grant money
could be found to pay for it. Commissioner Madden further asserted that the County did not
know how to apply for grants. Upon information and belief, the County and the County

19

Commissioners never told the predominantly white communities for which they approved water service that the County would consider making water available only if residents could find grant money to pay for it.

70.     Upon information and belief, in November 2002, the County, in collaboration with the Township and the East Muskingum Water Authority, completed the Adamsville Road project. The project was financed by federal Community Development Block Grant funds. The new water lines installed as part of the project stopped just north of African American residences on Coal Run Road. Rather than extending the lines less than one mile south to include African American residents, the County extended an 18-inch main to a Dollar General distribution center located approximately ten miles to the north. The County also ran smaller "tributary" lines a mile down small side streets where as few as two or four white homes were located, in order to provide water service to these residents.

71.     In May 2003, the County commenced the Chandlersville water project, which also was financed in part through federal Community Development Block Grant funds.

72.     Upon information and belief, the County has also considered water projects for Vrooms Road (100% white), Dresden (99.9% white), and the Nashport Frazeysburg area (98.9% white).

73.     The foregoing constitutes a continuing policy, pattern, and practice of discrimination by the County and the County Commissioners on the basis of race in the provision of municipal services.

20

D.    Ohio Civil Rights Commission Proceedings

74.    On July 26, 2002, twenty-five residents of Washington Township, including

plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, filed a complaint with the

Ohio Civil Rights Commission ("Commission") alleging that defendants had denied, and were

continuing to deny, public water service to African American and other residents in the

Township. On August 5, 2002, plaintiff the FHAA filed a complaint with the Commission,

asserting similar allegations.

75.    The Commission conducted an investigation, and on June 12, 2003, issued an

order finding probable cause that defendants had denied, and were continuing to deny, the

complainants water service on the basis of race and neighborhood racial composition.

Specifically, the Commission concluded:

> For almost five decades Black residents of Coal Run Road [and] Langan Lane . . . waited
> to obtain access to the water lines extended by the City of Zanesville. Their white
> neighbors, residing in the very same area, and on the same streets, have been provided
> water service by the City. . . .
>
> The Washington Township Trustees' request to reincorporate a portion of the area
> previously deleted from the [East Muskingum Water] Authority ... selectively failed to
> include the complainants[,] foreclosing their ability to obtain water services offered by
> the Authority. The Authority reincorporated a nearly 100% White area, but failed to
> include the complainants' area where 20% of the population is black.
>
> Nearly one and a half years after the Kennedys made the need for water in the Langan
> Lane/Coal Run Road area known to the Muskingum County Commissioners, no action
> has been taken to remedy the request, and the need for public water service continues to
> exist. Nonetheless, the County Commissioners have completed, or are in the process of
> completing, water projects for several other areas in the county, all of which have nearly
> 100% White populations.
>
> Taken together, all of these factors give rise to the inference that the [Respondents] failed
> to provide the complainants with access to public water because of their race, Black[,]
> and the racial composition of their neighborhood.

21

Comm. Order at 7 (Ex. A).

76.     Since filing their complaint with the Commission, African American residents of
the Coal Run/Langan Lane neighborhood have endured racial harassment and intimidation.  For
example, on December 2, 2002, the day of the first public hearing held by County
Commissioners regarding a water project for the Coal Run/Langan Lane neighborhood, plaintiff
Cynthia Hairston found a severed pig's head in her driveway.  On or about June 28, 2003, a co-
worker of Cynthia Hairston warned her that "you people out on Coal Run act like the Klan don't
exist out here any more."

77.     More than a year after the filing of the complaint with the Commission, and
months after the Commission's finding of probable cause, African American and other residents
in the Coal Run/Langan Lane neighborhood still do not have public water service.

78.     Well after the filing of the complaint with the Commission, and in response to
pressure from Plaintiffs' counsel and the FHAA, the County approved plans to commence a
project to provide water service to the Coal Run/Langan Lane neighborhood.  As of this date,
water lines have not been extended to individual homes of any of the plaintiffs or the class they
seek to represent.  Nor is there any plan to compensate residents in the affected area for the
longstanding deprivation of water service to their homes or for the significant costs they have
incurred over the years as a result of this deprivation.  To the contrary, even after the water
project is completed, at least some Coal Run/Langan Lane residents still will have to pay
between $500-$1,000 in tap fees, in addition to the cost of running water lines from the main line
to their individual homes.  In contrast, residents of Adamsville Road, who are predominantly
white and will also benefit from the project, are not being charged.

E.    Injury Caused by Defendants' Discriminatory Practices

   1.    *Injury to Class Representatives and Members of Plaintiff Class*

79.    The pattern and practice of discrimination by defendants, described above,

constitutes a continuing violation of the rights of plaintiffs and the members of the class they

seek to represent.

80.    As a proximate result of defendants' actions described above, plaintiffs Jerry

Kennedy, Richard Kennedy, and Cynthia Hairston, and the members of the class they seek to

represent, have suffered and are continuing to suffer injuries including, but not limited to,

deprivation of their constitutional and statutory rights, economic loss, lack of fire suppression,

humiliation, embarrassment, and emotional distress.

   2.    *Injury to the FHAA*

81.    The FHAA has provided and continues to provide an array of programs and

services designed to eliminate housing discrimination through counseling, education, advocacy,

research, and enforcement of fair housing laws.

82.    The FHAA has engaged in and continues to engage in the following activities,

services, and programs, among others:

   (a)    assisting victims of housing discrimination;

   (b)    providing counseling and referral services to the public regarding housing
          discrimination;

   (c)    educating the public about housing discrimination laws, discriminatory
          housing practices, and the remedies available for discriminatory housing
          practices;

   (d)    working with tenant, landlord, and community groups to expand and
          promote equal housing opportunities through counseling and education;

23

> (e)     assisting governmental entities in meeting their fair housing obligations;
>
> (f)     informing the public about housing opportunities and assisting them in taking advantage of these opportunities;
>
> (g)     expanding equal housing opportunities; and
>
> (h)     serving on various community and governmental boards designed to promote and ensure compliance with fair housing laws.

83.     As a proximate result of defendants' discriminatory policies and practices, as alleged above, the FHAA has been damaged by having to divert scarce resources to identify and counteract such discriminatory policies and practices – resources that instead could have been used to provide the activities and services identified in paragraphs 81-82 above.

84.     To offset the effect of defendants' discriminatory policies and practices, the FHAA has been required to devote time, resources, and money toward efforts to educate individuals adversely affected by defendants' discriminatory practices, regarding their rights to equal housing opportunities and equal access to municipal services and the remedies available to address the deprivation of those rights.  The FHAA also has been required to devote time, resources, and money toward efforts to educate governmental entities and officials regarding their legal responsibilities to provide public utilities and services in a non-discriminatory manner.

85.     In August 2002, the FHAA filed a charge with the Commission alleging that defendants failed to provide water service to the area where plaintiffs reside due to the racial composition of that area.  On June 12, 2003, the Commission ruled that there was probable cause to believe that defendants' actions constituted illegal racial discrimination.

86.     As a proximate result of defendants' discriminatory policies and practices, the FHAA has been substantially injured and frustrated in its mission to eradicate discrimination in

24

housing, and in its efforts to carry out the programs and services it provides, including providing

counseling and referral services to the public regarding housing discrimination, educating the

public about housing discrimination laws, discriminatory housing practices, and the remedies

available for discriminatory housing practices, assisting governmental entities in meeting their

fair housing obligations, expanding equal housing opportunities, and eliminating discriminatory

housing practices.

## CLASS ALLEGATIONS

87.     Plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston bring this action

on behalf of themselves and all other persons similarly situated. The class these plaintiffs seek to

represent consists of all residents of Coal Run Road or Langan Lane in Washington Township, in

Muskingum County, Ohio, who have been denied public water service.

88.     The proposed class is too large to make joinder practicable. At this time,

plaintiffs can identify over sixty class members who have been affected by defendants' illegal

discriminatory policies and practices. Upon information and belief, discovery will reveal the

existence of additional class members.

89.     This action presents issues of law and fact, as alleged above, that are common to

and affect the rights of all members of the class. Such issues include, but are not limited to,

whether defendants have refused to provide public water service to the Coal Run/Langan Lane

neighborhood on the basis of race, in violation of federal and state law.

90.     The claims of the named plaintiffs are typical of the claims of the proposed class

as a whole. Defendants have maintained a deliberate policy and practice over many years of

denying public water service to plaintiffs and other residents in the predominantly African

American Coal Run/Langan Lane neighborhood on the basis of race. These policies and practices affect all class members residing in the Coal Run/Langan Lane neighborhood and constitute illegal racial discrimination on a class-wide basis.

91.     Plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston will adequately and fairly represent the interests of the class. Plaintiffs seek no relief antagonistic or adverse to the members of the class. Plaintiffs wish to represent the class and have retained counsel experienced in litigating class action discrimination claims.

92.     This class action will lie under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure. As alleged above, defendants have acted or refused to act on grounds applicable to the entire class, and questions of law and fact common to the members of the class predominate over any individual issues. A class action is superior to other available methods for obtaining a fair and efficient adjudication of these common questions of law and fact.

## CAUSES OF ACTION

### COUNT I

#### Unlawful Discrimination Under the Fair Housing Act
#### (All Plaintiffs against All Defendants)

93.     Plaintiffs reallege and incorporate by reference paragraphs 1-92 above, as if fully set forth herein.

94.     By the actions described above, defendants have violated, and/or continue to violate, the rights of plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, the members of the class they seek to represent, and the FHAA, under the federal Fair Housing Act, 42 U.S.C. §3601 *et seq.* and implementing regulations, by:

26

(a)     Making unavailable or denying dwellings to persons because of race, in violation of 42 U.S.C. § 3604(a) and implementing regulations; and

(b)     Discriminating on the basis of race in the terms, conditions, or privileges of the provision of services or facilities in connection with the sale or rental of a dwelling, in violation of 42 U.S.C. § 3604(b) and implementing regulations.

95.     By the actions described above, defendants have engaged in, and continue to engage in, a policy, pattern, and practice of discrimination against African American and other residents of the Coal Run/Langan Lane neighborhood due to their race, or the racial composition of their neighborhood, in violation of the Fair Housing Act.

96.     The past and continuing acts and conduct of the individual defendants, described above, were and are intentional, and have been carried out with malice and/or reckless indifference to the federally protected rights of plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, the members of the class they seek to represent, and the FHAA.

97.     Defendants have intentionally, knowingly, and continuously engaged in the practices described above, with the intent of denying equal housing opportunities to plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, the members of the class they seek to represent, and individuals served by the FHAA.

**COUNT II**

**Unlawful Discrimination Under 42 U.S.C. § 1981**
**(Plaintiffs Jerry Kennedy, Richard Kennedy, Cynthia Hairston against All Defendants)**

98.     Plaintiffs reallege and incorporate by reference paragraphs 1-92 above, as if fully set forth herein.

99.     By the actions described above, defendants have continually denied plaintiffs

27

Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, and the members of the class they seek to represent, the same right to make and enforce contracts as is enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1981.

100.    By the actions described above, defendants have engaged in, and continue to engage in, a policy, pattern, and practice of discrimination against African American and other residents of the Coal Run/Langan Lane neighborhood due to their race, or the racial composition of their neighborhood, in violation of 42 U.S.C. § 1981.

101.    The past and continuing acts and conduct of the individual defendants, described above, were and are intentional, and have been carried out with malice and/or reckless indifference to the federally protected rights of plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, and the members of the class they seek to represent.

102.    Defendants have intentionally, knowingly, and continuously engaged in the practices described above, with the intent of denying equal housing opportunities to plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, and the members of the class they seek to represent.

## COUNT III

### Unlawful Discrimination Under 42 U.S.C. § 1982
**(Plaintiffs Jerry Kennedy, Richard Kennedy, Cynthia Hairston against All Defendants)**

103.    Plaintiffs reallege and incorporate by reference paragraphs 1-92 above, as if fully set forth herein.

104.    By the actions described above, defendants have continually denied plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, and the members of the class they seek

to represent, the same right to hold property as is enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1982.

105.    By the actions described above, defendants have engaged in, and continue to engage in, a policy, pattern, and practice of discrimination against African American and other residents of the Coal Run/Langan Lane neighborhood due to their race, or the racial composition of their neighborhood, in violation of 42 U.S.C. § 1982.

106.    The past and continuing acts and conduct of the individual defendants, described above, were and are intentional, and have been carried out with malice and/or reckless indifference to the federally protected rights of plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, and the members of the class they seek to represent.

107.    Defendants have intentionally, knowingly, and continuously engaged in the practices described above, with the intent of denying equal housing opportunities to plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, and the members of the class they seek to represent.

## COUNT IV

### Unlawful Discrimination Under 42 U.S.C. § 1983
### (Plaintiffs Jerry Kennedy, Richard Kennedy, Cynthia Hairston against All Defendants)

108.    Plaintiffs reallege and incorporate by reference paragraphs 1-92 above, as if fully set forth herein.

109.    The above conduct of the defendants has been taken under color of state and local law.

110.    By the actions described above, defendants have deprived, and continue to

29

deprive, plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, and the members of the class they seek to represent, of the rights, privileges, and immunities secured by the United States Constitution and other laws.

111.   By the actions described above, defendants have engaged in, and continue to engage in, a policy, pattern, and practice of discrimination against African American and other residents of the Coal Run/Langan Lane neighborhood due to their race, or the racial composition of their neighborhood, in violation of 42 U.S.C. § 1983.

112.   The past and continuing acts and conduct of the individual defendants, described above, were and are intentional, and have been carried out with malice and/or reckless indifference to the federally protected rights of plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, and the members of the class they seek to represent.

113.   Defendants have intentionally, knowingly, and continuously engaged in the practices described above, with the intent of denying equal housing opportunities to plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, and the members of the class they seek to represent.

## COUNT V

### Unlawful Discrimination Under Title VI of the Civil Rights Act
### (Plaintiffs Jerry Kennedy, Richard Kennedy, Cynthia Hairston against
### Defendants City of Zanesville, Washington Township, and Muskingum County)

114.   Plaintiffs reallege and incorporate by reference paragraphs 1-92 above, as if fully set forth herein.

115.   Defendants City of Zanesville, Washington Township, and Muskingum County, have been, and are, recipients of federal financial assistance, and are thus covered by Title VI of

the Civil Rights Act of 1964 (42 U.S.C. § 2000d). Defendants City of Zanesville, Washington Township, and Muskingum County have utilized federal financial assistance in the course of the actions described above. Title VI and its implementing regulations prohibit recipients of federal monies from discriminating on the basis of race.

116. By the actions described above, these defendants have intentionally discriminated against plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, and the members of the class they seek to represent, and/or have exhibited deliberate indifference to the rights of plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, and the members of the class they seek to represent, in violation of Title VI and implementing regulations.

## COUNT VI

### Unlawful Discrimination Under Ohio Revised Code § 4112.02(H)
### (All Plaintiffs against All Defendants)

117. Plaintiffs reallege and incorporate by reference paragraphs 1-92 above, as if fully set forth herein.

118. By the actions described above, defendants have violated the rights of plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, the members of the class they seek to represent, and the FHAA, by discriminating on the basis of race in the furnishing of facilities, services, or privileges in connection with the ownership, occupancy, or use of any housing accommodations, in violation of Ohio Revised Code § 4112.02(H).

119. By the actions described above, defendants have engaged in, and continue to·
engage in, a policy, pattern, and practice of discrimination against African American and other residents of the Coal Run/Langan Lane neighborhood due to their race, or the racial composition

31

of their neighborhood, in violation of Ohio Revised Code § 4112.02(H).

120.    The past and continuing acts and conduct of the individual defendants, described above, were and are intentional, and have been carried out with malice and/or reckless indifference to the federally protected rights of plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, the members of the class they seek to represent, and the FHAA.

121.    Defendants have intentionally, knowingly, and continuously engaged in the practices described above, with the intent of denying equal housing opportunities to plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, the members of the class they seek to represent, and individuals served by the FHAA.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that this Court grant the following relief:

(a)    Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Declare that the actions of defendants described above constitute discrimination on the basis of race in violation of the Fair Housing Act of 1968, Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, 1982, 1983, and Ohio Revised Code §4112.02(H);

(c)    Enter a permanent injunction prohibiting defendants from engaging in the illegal discriminatory conduct described herein, requiring all defendants to take all steps necessary to remedy the effects of such conduct and prevent similar occurrences in the future, and ordering defendants to provide water service forthwith to plaintiffs and the members of the class they seek to represent;

(d)    Award plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, and

32

members of the class they seek to represent, compensatory damages, in an amount to be determined at trial, to fully compensate them for injuries including, but not limited to, monetary loss, humiliation, embarrassment, emotional distress, the deprivation of statutory and constitutional rights, and other damages they have suffered as a result of defendants' actions described above;

(e)     Award plaintiff the FHAA compensatory damages, in an amount to be determined at trial, to fully compensate it for its diversion of resources, frustration of mission, and other damages it has suffered as a result of defendants' actions described above;

(f)     Award plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, members of the class they seek to represent, and the FHAA, punitive damages in an amount to be determined at trial that would punish individual defendants for their intentional, malicious, willful, callous, wanton, and reckless disregard for plaintiffs' rights, and would effectively deter individual defendants from engaging in similar conduct in the future;

(g)     Award plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, members of the class they seek to represent, and the FHAA, reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and 3613(c)(2), and O.R.C. § 4112.051(D);

(h)     Award plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, members of the class they seek to represent, and the FHAA, prejudgment interest; and

(I)     Award such other relief as the Court deems appropriate and just.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

33

John P. Relman
Shilpa S. Satoskar
Corey L. Stoughton
RELMAN & ASSOCIATES, PLLC
1350 Connecticut Ave., N.W., Suite 304
Washington, D.C. 20036-1738
(202) 728-1888
jrelman@relmanlaw.com
ssatoskar@relmanlaw.com
cstoughton@relmanlaw.com

**Of Counsel**

Kimberly M.. Skaggs (Bar No. 0061572)
Rachel K. Robinson* (Bar No. 0067518)
EQUAL JUSTICE FOUNDATION
88 East Broad Street, Suite 1590
Columbus, OH 43215
(614) 221-9800
kms@equaljusticefoundation.com
rkr@equaljusticefoundation.com

**\*Trial Attorney**

Stephen M. Dane (Bar No. 0013057)
Beth A. Wilson (Bar No. 0068766)
Jennifer W. Steves (Bar No. 0074804)
COOPER & WALINSKI
900 Adams Street
P.O. Box 1568
Toledo, OH 43603-1568
(419) 241-1200
dane@cooperwalinski.com
wilson@cooperwalinski.com
steves@cooperwalinski.com



DECEIVED
JUN 1 3 2003

**Bob Taft**
Governor

# Ohio Civil Rights Commission

*"Many Faces...One Cause"*

JUN 1 2 2003

Lynn & Cynthia Hairston
1800 Coal Run Road
Zanesville, OH 43701

Jerry Kennedy
1155 Langan Lane
Zanesville, OH 43701

Vince Curry, Executive Director
Fair Housing Advocates Association
520 South Main Street, Suite 2459
Akron, OH 44311

Scott T. Hillis, City Law Director
City of Zanesville
825 Adair Ave.
Zanesville, OH 43701

Walter K. Chess, Jr., Asst. Prosecuting
Attorney
Muskingum County, Ohio
27 N. Fifth Street, Suite 201
Zanesville, OH 43701

James R. Krischak, Esq.
Gottlieb, Johnston, Beam & Dal Ponte,
P.L.L.
320 Main Street
P.O. Box 190
Zanesville, OH 43702-0190

CENTRAL OFFICE
1111 E. Broad Street, Suite 301
Columbus, Ohio 43205-1379
(614) 466-2785
TTY (614) 466-9353
FAX (614) 644-8776

AKRON REGIONAL OFFICE
Akron Government Center
161 S. High Street, Suite 205
Akron, Ohio 44308
(330) 643-3100
Voice-TTY
FAX (330) 643-3120

CINCINNATI REGIONAL OFFICE
Holiday Park
801-B W. 8th Street, 2nd Floor
Cincinnati, Ohio 45203
(513) 852-3344
Voice-TTY
FAX (513) 852-3357

CLEVELAND REGIONAL OFFICE
615 W. Superior Avenue, Suite 885
Cleveland, Ohio 44113
(216) 787-3150
Voice-TTY
FAX (216) 787-4121

COLUMBUS REGIONAL OFFICE
1111 E. Broad Street, Suite 301
Columbus, Ohio 43205-1379
(614) 466-5928
Voice-TTY
FAX (614) 466-6250

DAYTON REGIONAL OFFICE
40 W. 4th Centre, Suite 1900
Dayton, Ohio 45402-1831
(937) 285-6500
Voice-TTY
FAX (937) 285-6606

TOLEDO REGIONAL OFFICE
One Government Center
Jackson & Erie Streets, Room 936
Toledo, Ohio 43604
(419) 245-2900
Voice-TTY
FAX (419) 245-2668



Cynthia and Lynn Hairston, Jerry Kennedy, et al. v. City of Zanesville, et al.
(OSI)H1071702 (29606) 072602, 05-02-0934-8

Fair Housing Advocates Association v. City of Zanesville, et al.
(OSI/COL)H1071702 (26917) 080502

## I. INTRODUCTION

On July 26 2002, Lynn and Cynthia Hairston, Jerry Kennedy, and 22 other persons residing on Coal Run Road, Langan Lane, Russell Street, Wallwork Avenue and Thomas Street in Muskingum County, Ohio filed a charge of discrimination with the Ohio Civil Rights Commission, alleging that they had been discriminated against in the furnishing of public water service. Specifically, the complainants allege that Washington Township and the Washington Township Trustees, Muskingum County and the Muskingum County Commissioners, the East Muskingum Water Authority and the City of Zanesville failed to provide them with access to public water service due to consideration of their race, Black, and the racial composition of their neighborhood.

Cynthia and Lynn Hairston, Jerry Kennedy, et al. v. City of Zanesville, et al.
(OSI)H1071702 (29606) 072602, 05-02-0934-8
Fair Housing Advocates Association v. City of Zanesville, et al.
(OSI/COL)H1071702 (26917) 080502
Page 2

On August 5, 2002, the Fair Housing Advocates Association filed a charge alleging that the above-named Respondents failed to furnish water service to the area where the complainants in charge (OSI)H1071702 (29606) 072602, 05-02-0934-8, reside. The Fair Housing Advocates Association further asserts that significant resources were expended in order to obtain information and identify the Respondents' discriminatory practices.

## II. BACKGROUND AND INVESTIGATION

The complainants are residents of Washington Township, and they reside in an area located directly adjacent to the City of Zanesville on Coal Run Road, Langan Lane, Russell Street, Wallwork Street and Thomas Street.

At the present time, the Complainants' only sources of water for consumption are wells and cistern structures, unless they have truckloads of water hauled to their homes. Cisterns are water systems in which rainwater is collected from rooftops, and then filtered into a cement structure located in the ground, and then pumped into the home. The majority of homes in the area in which the complainants reside are located on land previously used for coal mining, and due to the demolition of the coal mines within recent years, the water is highly contaminated with sulfur and other pollutants, making the limited well water supply unsafe for consumption.

The area in which the Complainants reside has a substantial minority population when compared to the surrounding areas within the Muskingum County. According to data obtained from the U.S. Census Bureau, the area comprising Coal Run Road, Langan Lane Russell Street and Wallwork Avenue has a 20% Black population.

### A. The City of Zanesville

The City of Zanesville provides water service to persons residing within the city limits. The city, however also provides water service to a select number of persons residing outside of the city limits in Muskingum County. A list of the non-resident customers receiving water service from the city was obtained and the race of each customer residing on the streets listed above was verified. Numerous non-resident water customers, almost all of whom are White, live on the same streets as the complainants (Langan Lane, Coal Run Road, Russell Street and Wallwork Avenue).

The furnishing of water service to non-residents began in 1955 when an ordinance passed by the Zanesville City Council extended water lines and service outside the city limits to the residents on a portion of Adamsville Road and Langan Lane. The ordinance imposed the following requirements: (1) all lines must meet specifications detailed in the ordinance, (2) residents must assume the cost of the construction, which was to be supervised by the City Superintendent of

Cynthia and Lynn Hairston, Jerry Kennedy, et al. v. City of Zanesville, et al.
(OSI)H1071702 (29606) 072602, 05-02-0934-8
Fair Housing Advocates Association v. City of Zanesville, et al.
(OSI/COL)H1071702 (26917) 080502
Page 3

Water Works, (3) a designated number of fire plugs must be installed by each resident, (4) the residents utilizing the line must agree to use their efforts and influence on behalf of annexation to the City of Zanesville, and (5) residents must pay the regular rate for water use plus ten percent.

The complainants', as well as the persons that began receiving water service from the City of Zanesville after the passage of this ordinance, reside just outside the city limits on the eastern boarder in Muskingum County. Nearly all Black families residing in the bottom-half portion of Langan Lane, Coal Run Road, Wallwork Avenue, Russell Street and Thomas Street, have yet to be provided access to the water services provided by the City.

On Langan Lane and Circle Drive (a small side street) there are 26 total residences, of which 18 are White residences and 8 are Black residences. Each of the 18 homes belonging to the White residents (located at the top-half portion of Langan Lane and extending to, and including the entire length of, Circle Drive) have water service provided by the City of Zanesville.

The bottom-half portion of Langan Lane is comprised entirely of Black residences. Only three of the eight homes belonging to Black reisdents receive water service from the City. The remaining five Black families have not been provided access to the City's water services.

The three Black residents on Langan Lane receiving water, moreover, did not obtain access to the City's water service at the time that the 1955 ordinance was passed and implemented. One Black resident, whose home is located at 1180 Langan Lane, installed a water line to his home several years after the passage of the ordinance and was permitted to tap into the existing line which already served several White residents on the street. Mrs. Elton Hill, who lives next door to Mr. Melvin Hill, states that, in approximately the early 1980's, she and her husband dug and installed a water line from Melvin Hill's property to their own home and the trailer on their property located at 1160 Langan Lane. A document from a city official indicates that the tap to Mrs. Elton Hill's home was questioned on the basis of legality because the home was tapped into and using water from another residence without having prior authorized approval. Mrs. Elton Hill states that, after her home was tapped into Melvin Hills' line, she informed the City and was permitted to pay the required tap fees in order to become a paying customer.

On Coal Run Road, there are 23 total residences, of which 17 are Black residences, and 5 are White residences. According to water account records, the only residents who receive water service from the City are two White residents. None of the Black residences on Coal Run Road have been granted permission to tap into water lines to receive water service from the city.

On Russell Street, there are 13 total residences, of which 11 are occupied by White residences, and 2 are Black residences. According to water account records, 11 residents on Russell Street are receiving water service from the City of Zanesville. All but one of these are comprised of

Cynthia and Lynn Hairston, Jerry Kennedy, et al. v. City of Zanesville, et al.
(OSI)H1071702 (29606) 072602, 05-02-0934-8
Fair Housing Advocates Association v. City of Zanesville, et al.
(OSI/COL)H1071702 (26917) 080502
Page 4

White residents. Moreover, the single Black resident receiving water services is not the original owner, but rather bought the home from a White resident with pre-existing water service. Finally, the one White family not receiving water service owns a home located at 1674 Russell Street, which is next door to a Black resident, that likewise does not receive City water service.

Robert J. Pletcher, City Water Superintendent, conducted a study in March 2000 regarding the extension of water lines to unsupplied areas of Langan Lane, Coal Run Road, Wallwork Avenue and Russell Street. According to the study, Pletcher acknowledges that the complainants have requested water service to be provided to their area from the City of Zanesville for at least the past 35 years. A preliminary engineering study was conducted in 2002 at the request of the City, and this study also acknowledges requests made over the last 35 years by the complainants for water service. Nonetheless, the City of Zanesville has not permitted the remaining residents, who are Black or residing near Black residents, to obtain access to water.

The City of Zanesville contends that it has no obligation to provide water service to areas located outside the city limits. Water account records, however, demonstrate that several persons residing outside the city limits are customers receiving water service from the City of Zanesville, including persons who reside on the same streets as the complainants (e.g., Langan Lane, Coal Run Road, Russell Street and Wallwork Avenue).

In addition, as recently as 1998, the City has extended water service to a non-resident who resides near the complainants. The home located at 1730 Circle Drive was built in 1997, and the City granted permission to the owner to tap into the water lines the following year. The home, which is occupied by a White resident, is located approximately 100 yards from the home of a Black residence, located at 1155 Langan Lane, that has not been granted permission to tap into the water system or receive water service from the City. Similarly, the homes located at 1520, 1580 and 1675 Langan Lane, occupied by White residents, were built as late as 1969, 1975 and 1991, respectively, and each of these residents are City customers according to water account records.

### B. The East Muskingum Water Authority and Washington Township

Established in 1967, the East Muskingum Water Authority was organized as a regional water district to provide water service within set geographical boundaries. The original boundaries of the Authority included several streets within Washington Township, including Langan Lane, Coal Run Road, Wallwork Avenue and Russell Street. None of the residents on these streets, however, have ever received water service from the Authority.

In 1984, the Authority petitioned the Muskingum County Court of Common Pleas to amend its geographical boundaries. The reorganization of boundaries deleted Coal Run Road, Langan

Cynthia and Lynn Hairston, Jerry Kennedy, et al. v. City of Zanesville, et al.
(OSI)H1071702 (29606) 072602, 05-02-0934-8
Fair Housing Advocates Association v. City of Zanesville, et al.
(OSI/COL)H1071702 (26917) 080502
Page 5

Lane, Wallwork Avenue and Russell Street from its jurisdiction. The Authority concluded that this area should be deleted because it was being provided with water services by the City of Zanesville through water lines previously extended to the area. Ultimately, the petition was granted, and the boundaries of the Authority's jurisdiction were reorganized.

In May 2001, the Authority received a resolution from the Washington Township Trustees to reincorporate a portion of the previously deleted area. The request was made as an "emergency measure necessary for the immediate preservation of the public health, safety, and welfare because of the residents' immediate need for safe drinking water and fire suppression." The area to be reincorporated included portions of Pleasant Grove, Old Adamsville Road and Lovers Lane. The reincorporated area, however, did not include Langan Lane, Coal Run Road, Wallwork Avenue or Russell Street. According to data obtained from the U.S. Census Bureau, the reincorporated area has a Black population of less than 1%. In stark contrast, the area comprising Coal Run Road, Langan Lane, Russell Street, Wallwork Avenue and Thomas Street has a 20% Black population.

The re-incorporation of the above-mentioned areas resulted in the Authority's decision to extend water lines and begin providing water service to residents of the area. This project is referred to as the Pleasant Grove Road water project. According to water account records, the reincorporated area resulted in 82 new customers. Only one of the new customers, however, is a Black resident.

### C. Muskingum County

In December 2000, the Authority entered into a Cooperative Water Agreement with, Muskingum County in order to provide water service to the residents in each entities respective jurisdiction. This agreement provided the County with a source of water from the Authority, enabling the County to build distribution facilities so that water service could be provided to a range of prospective customers.

The County began a series of projects in an attempt to provide prospective customers and areas with water service. Among the areas where projects were initiated by the County are Adamsville Road, Chandlersville and Gaysport. The County authorized preliminary engineering plans to be conducted for all three areas listed above in July 2001. According to data obtained from the U.S. Census Bureau, the Black population in the area comprising the Adamsville Road accounts for less than 1% of the area's total population, the area comprising the Chandlersville project has a 4.2% Black population and the area comprising the Gaysport area has a 0.0% Black population. Again, this stands in stark contrast to the area comprising Coal Run Road, Langan Lane, Russell Street, Wallwork Avenue and Thomas Street, which has a 20% Black population.

Cynthia and Lynn Hairston, Jerry Kennedy, et al. v. City of Zanesville, et al.
(OSI)H1071702 (29606) 072602, 05-02-0934-8
Fair Housing Advocates Association v. City of Zanesville, et al.
(OSI/COL)H1071702 (26917) 080502
Page 6

Prior to the Cooperative Water Agreement between the County and the Authority, studies were conducted by the Authority to assess the financial feasibility of a water project for the Adamsville Road area. At the conclusion of the contract, the Authority decided to extend service to a portion of the area, specifically Adamsville Road. On May 13, 2002, the Board of County Commissioners approved and authorized the start of construction for the Adamsville Road project. The project was completed and regarded as a financially feasible project without a source of funding for Low to Moderate Income families.

On December 13, 2001, the Board of County Commissioners held a public hearing in order to discuss the possibility of obtaining Community Development Block Grant funding to assist in the completion of the Chandlersville project. In attendance at this meeting were Jerry Kennedy and Richard Kennedy, two residents of the Langan Lane area. Both gentlemen expressed the need for water in the Langan Lane area to the Commissioners at this public hearing.

Richard Kennedy and Jerry Kennedy gave their account of the events that occurred during the public hearing that took place on December 13, 2001. They stated that a County Commissioner, Dorothy Montgomery, responded to their request for water by saying that they "won't have water until President Bush drops spiral bombs in the holler," and that even their "grandchildren's grandchildren would not have water." Cindy Hairston and Joyce Hill confirmed the Kennedys' account of these events, stating that the men visited them at their homes on the night of the public hearing visibly upset about the comments.

According to the County Commissioner Board members, the county water projects, including the Adamsville Road, Chandlersville and Gaysport projects, were started when the County received petitions or formal requests for water services in those areas. Ed Kenily, County Commissioner, states that the County was not aware of the need for water in the Langan Lane/Coal Run Road area until the public hearing in December 2001. However, the position statement submitted by the County acknowledges that they had been previously approached by City officials for the City of Zanesville with a request for financial participation. The County states that at that time the project was not financially feasible.

Dorothy Montgomery also stated that the County Commissioners are considering additional water projects to be completed by the County. These projects include Vroom Road, Dresden and the Nashport/Frazeysburg area. Data obtained from the U.S. Census Bureau indicates that the Black population in these areas is 0%, 0.1% and 1.1%, respectively, which again shows a drastic difference in the Black population of these areas as compared to the area of Coal Run Road, Langan Lane, Russell Street, and Wallwork Avenue.

The water projects initiated by the Commissioners for the areas of Chandlersville and Gaysport have entered the beginning phases towards completion. The Adamsville Road project was

Cynthia and Lynn Hairston, Jerry Kennedy, et al. v. City of Zanesville, et al.
(OSI)H1071702 (29606) 072602, 05-02-0934-8
Fair Housing Advocates Association v. City of Zanesville, et al.
(OSI/COL)H1071702 (26917) 080502
Page 7

completed in November 2002. The Chandlersville project began in May 2003 with project engineer bids submitted to the County, and is anticipated to near completion within 4 months. The project for the Gaysport area was approved in January 2002 and preliminary engineering designs have been completed.

As announced in the Zanesville Times Recorder on May 9, 2003, the Commissioners sought funding through a state issued Community Development Block Grant for the resident hook up fees in the Chandlersville project for those who qualified as low to moderate income (LMI) households. The grant totaled $500,000, of which $100,000 was designated for hook-up fees for these families. The tap fee payment schedule distributed to the residents of the Coal Run Road, Langan Lane, Russell Street, and Wallwork Avenue area, however, indicated that the fees would be $500.00 before the project commenced, $600.00 while the project was under construction and $1500.00 when the project is completed. The residents have not been informed that supplemental sources of funding have been requested in order to assist LMI families with tap fees nor have they been informed of whether or not they qualify for such funding.

## III. ANALYSIS

For almost five decades Black residents of Coal Run Road, Langan Lane, Russell Street, Wallwork Avenue and Thomas Street waited to obtain access to the water lines extended by the City of Zanesville. Their White neighbors, residing in the very same area, and on the same streets, have been provided water service by the City. Indeed, one of the White neighbors was provided water service only a few years earlier in 1998.

The Washington Township Trustees request to reincorporate a portion of the area previously deleted from the Authority, and the decision to reincorporate the area by the East Muskingum Water Authority, selectively failed to include the complainants foreclosing their ability to obtain water services offered by the Authority. The Authority reincorporated a nearly 100% White area but, failed to include the complainants area where 20% of the population is Black.

Nearly one and a half years after the Kennedys made the need for water in the Langan Lane/Coal Run Road area known to the Muskingum County Commissioners, no action has been taken to remedy the request, and the need for public water service continues to exist. Nonetheless, the County Commissioners have completed, or are in the process of completing, water projects for several other areas in the county, all of which have nearly 100% White populations.

Taken together, all of these factors give rise to the inference that the Respondent's failed to provide the complainants with access to public water service because of their race, Black and the racial composition of their neighborhood.

Cynthia and Lynn Hairston, Jerry Kennedy, et al. v. City of Zanesville, et al.
(OSI)H1071702 (29606) 072602, 05-02-0934-8
Fair Housing Advocates Association v. City of Zanesville, et al.
(OSI/COL)H1071702 (26917) 080502
Page 8

## DECISION

The Ohio Civil Rights Commission determines that Probable Cause exists to believe that Respondents engaged in an unlawful discriminatory practice under Ohio Revised Code Section 4112.02 (H).

## NOTICE OF RIGHT TO REQUEST RECONSIDERATION:

You have the right to request reconsideration of this determination of the Commission. Such application must be in writing and state specifically the grounds upon which it is based.

Your request for reconsideration, along with all additional evidence or supporting documentation you wish to provide in support of your request for reconsideration, must be filed with the Commission's Compliance Department at 1111 East Broad Street, Suite 301, Columbus, OH 43205-1379 within **TEN (10)** days of the date of mailing of this notice. Any application for reconsideration, or additional documentation and evidence, received by the Compliance Department in the Commission's Columbus Central Office after the ten day period has expired will be deemed untimely filed. Section 4112-1-02 of the Ohio Administrative Code governs the application of this ten day period to any request.

The Commission's Rules do not permit any employee of the Commission to grant an extension to this ten day filing period.

FOR THE COMMISSION

Matthew D. Miko
Chief Legal Counsel and Director of Enforcement

Cc: All other Complainants (see charge affidavit)

Thu Nov 13 13:26:17 2003

UNITED STATES DISTRICT COURT

COLUMBUS, OH

Receipt No.    200 238547
Cashier        rew

Check Number: 1337

DD Code    Div No
4661        2

Sub Acct Type Tender        Amount
1:510002  H      2           90.00
2:086900  H      2           60.00

Total Amount          $    150.00

NEW CASE 02-03-1047

JERRY R.KENNEDY VS MUSKINGUM COUNTY ET AL

%JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

1047

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Jerry R. Kennedy, et al.

**(b)** County of Residence of First Listed Plaintiff   Muskingum
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Rachel K. Robinson
Equal Justice Foundation
88 East Broad Street, Suite 1590
Columbus, OH 43215     614-221-9800 x 14

## DEFENDANTS

Muskingum County, et al.

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury--- | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Other Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☒ 443 Housing/ | Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff | Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | State Statutes |
| | | ☐ 550 Civil Rights | Security Act | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Plaintiffs claim defendants violated the Federal Fair Housing Act, as amended, 42 USC Section 3601 et seq., by maintaining a racially discriminatory policy, pattern and practice of intentionally denying public water service.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE            DOCKET NUMBER

DATE    11/13/03      SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____