**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JERRY KENNEDY;** | ) | |
| **RICHARD KENNEDY, SR.;** | ) | |
| **CYNTHIA HAIRSTON;** | ) | |
| **MARGARETTE ADAMS;** | ) | |
| **BARBARA CHATMAN;** | ) | |
| **AUDREY FORD;** | ) | |
| **THOMAS FORD;** | ) | |
| **KAREN GILBERT;** | ) | |
| **LYNN HAIRSTON;** | ) | |
| **DORETTA HALE;** | ) | |
| **MARK HALE;** | ) | |
| **REGINA HALE;** | ) | |
| **RODNEY HALE;** | ) | **Case No. 2:03cv1047** |
| **ELLEN HARVEY;** | ) | |
| **JAMES HILL;** | ) | |
| **JEFF HILL;** | ) | |
| **JOHN HILL;** | ) | **THIRD AMENDED** |
| **KATHLEEN HILL;** | ) | **COMPLAINT** |
| **LORENA HILL;** | ) | |
| **ROBERT HILL;** | ) | |
| **ROGER HILL;** | ) | |
| **BERNARD KENNEDY;** | ) | |
| **DENNIS KENNEDY;** | ) | |
| **DONALD KENNEDY;** | ) | |
| **EVELYN KENNEDY;** | ) | **JURY TRIAL DEMANDED** |
| **JEANENE KENNEDY;** | ) | |
| **MARCUS KENNEDY;** | ) | |
| **MARSHA KENNEDY;** | ) | |
| **MARTHA KENNEDY;** | ) | |
| **MARVIN KENNEDY, SR.;** | ) | |
| **MARY KENNEDY;** | ) | |
| **MICHAEL KENNEDY;** | ) | |
| **NANCY KENNEDY;** | ) | |
| **REBECCA KENNEDY;** | ) | |
| **RICHARD KENNEDY, JR.;** | ) | |
| **RICKY LEE KENNEDY;** | ) | |
| **ROBERT KENNEDY;** | ) | |
| **SHAWN KENNEDY;** | ) | |
| **THOMAS LEVI KING;** | ) | |
| **SHAWN KROUSKOUPF;** | ) | |
| **JULIA LANDKROHN;** | ) | |

DONNA LEWIS;                                  )
FREDERICK H. MARTIN;                          )
PAUL C. MARTIN;                               )
RICHARD L. MARTIN;                            )
TOMMY W. MARTIN;                              )
JOHN PAUL MAYLE;                              )
GLENNA MCCONNELL;                             )
HELEN MCCUEN;                                 )
JAMES MCCUEN;                                 )
JOHN MCCUEN;                                  )
SONDRA MCCUEN;                                )
JESSICA MIRGON;                               )
BRYAN NEWMAN;                                 )
GOLDIE NEWMAN;                                )
JUDY NEWMAN;                                  )
JACQUELENE NORVET;                            )
CAROLYN PAGE;                                 )
BARANDA PAYNTER;                              )
TAMMY SCOTT;                                  )
BRITTANY SMITH;                               )
PAMELA SMITH;                                 )
ALICE STOKES;                                 )
ERIN THOMPSON;                                )
COTY TOMSON;                                  )
KAY TURNER;                                   )
MARK WALKER;                                  )
NORA WALKER;                                  )
                                              )
and                                           )
                                              )
THE FAIR HOUSING ADVOCATES                    )
ASSOCIATION                                   )
                                              )
              Plaintiffs,                     )
                                              )
       v.                                     )
                                              )
THE CITY OF ZANESVILLE, OHIO;                 )
WASHINGTON TOWNSHIP;                          )
PAUL BUNTING, individually and                )
in his official capacity as Washington        )
Township Trustee;                             )
CLINT CAMERON, individually                   )
and in his official capacity as               )
Washington Township Trustee;                  )

2

DOUG CULBERTSON, individually          )
and in his official capacity as        )
Washington Township Trustee;           )
MUSKINGUM COUNTY;                       )
ED KENILY, individually and in         )
his official capacity as Muskingum     )
County Commissioner;                    )
DON MADDEN, individually and in        )
his official capacity as Muskingum     )
County Commissioner;                    )
DOROTHY MONTGOMERY,                     )
individually and in her official capacity )
as Muskingum County Commissioner,      )
                                        )
                    Defendants.         )
_____)

## THIRD AMENDED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs Jerry Kennedy, Richard Kennedy, Sr., Cynthia Hairston, Margarette Adams,

Barbara Chatman, Audrey Ford, Thomas Ford, Karen Gilbert, Lynn Hairston, Doretta Hale,

Mark Hale, Regina Hale, Rodney Hale, Ellen Harvey, James Hill, Jeff Hill, John Hill, Kathleen

Hill, Lorena Hill, Robert Hill, Roger Hill, Bernard Kennedy, Dennis Kennedy, Donald Kennedy,

Evelyn Kennedy, Jeanene Kennedy, Marcus Kennedy, Marsha Kennedy, Martha Kennedy,

Marvin Kennedy, Sr., Mary Kennedy, Michael Kennedy, Nancy Kennedy, Rebecca Kennedy,

Richard Kennedy, Jr., Ricky Lee Kennedy, Robert Kennedy, Shawn Kennedy, Thomas Levi

King, Shawn Krouskoupf, Julia Landkrohn, Donna Lewis, Frederick H. Martin, Paul C. Martin,

Richard L. Martin, Tommy W. Martin, John Paul Mayle, Glenna McConnell, Helen McCuen,

James McCuen, John McCuen, Sondra McCuen, Jessica Mirgon, Bryan Newman, Goldie

Newman, Judy Newman, Jacquelene Norvet, Carolyn Page, Baranda Paynter, Tammy Scott,

Brittany Smith, Pamela Smith, Alice Stokes, Erin Thompson, Coty Tomson, Kay Turner, Mark

Walker, Nora Walker ("Individual Plaintiffs") and the Fair Housing Advocates Association, by counsel, bring this action against Defendants City of Zanesville, Washington Township, Washington Township Trustees Paul Bunting, Clint Cameron, and Doug Culbertson, Muskingum County, and Muskingum County Commissioners Ed Kenily, Don Madden, and Dorothy Montgomery, as follows:

## NATURE OF THE ACTION

1.      This is a civil rights action for declaratory and injunctive relief and damages to remedy Defendants' violation of the rights of African-American and other residents of a predominantly African-American neighborhood in Washington Township, Muskingum County, Ohio.  Defendants have maintained a racially discriminatory policy, pattern, and practice of intentionally denying public water service to these residents because they are African-American and/or because they reside in a predominantly African-American neighborhood.  Plaintiffs bring this action pursuant to the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 *et seq.*, 42 U.S.C. §§ 1981, 1982, 1983, Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, and Ohio Revised Code § 4112.02(H).

2.      African-American and other residents of a predominantly African-American neighborhood in Washington Township were denied public water service for nearly fifty years until after the initiation of this action.  During the same time period, Defendants provided water service to white residents, including white individuals residing on the very same streets as Plaintiffs.

3.      Plaintiffs' homes were located within approximately one mile of public water lines and/or the City of Zanesville's water plant.  The homes in this area are built on abandoned

4

coal mines, and do not enjoy access to potable well water.  Due to Defendants' discriminatory refusal to provide public water service on an equal basis, residents unable to dig wells on their property have been forced to purchase water from the City of Zanesville at a cost up to or exceeding ten times the price that white residents pay for public water service.  They have been forced to haul this water to their homes and store it in cisterns, where it often becomes stagnant, and in many cases, becomes infested with insects and parasites, and thereby dangerous for consumption.  Even those residents who have been able to dig wells on their property, at great expense, cannot use the contaminated well water for drinking or cooking, and must purchase water at a cost much greater than the cost that white residents pay for running water to their homes.

4.     Despite longstanding awareness of these dire circumstances, Defendants continually denied African-American and other residents of this predominantly African-American neighborhood access to public water service, while permitting white residents, sometimes on the very same streets, access to such service.  Defendants also have authorized, financed, developed, and/or constructed new water projects in white neighborhoods, while continually ignoring the longstanding, desperate need for public water service in this predominantly African-American area.

5.     The Ohio Civil Rights Commission recently investigated Defendants' practices, and on June 12, 2003, following a lengthy and comprehensive on-site investigation, concluded that the facts "give rise to the inference that [Defendants] failed to provide [residents] with access to public water service because of their race, Black [,] and the racial composition of their neighborhood."  *Hairston v. City of Zanesville*, (OSI)H1071702 (29606) 072602, 05-02-0934-8

(Ohio Civil Rights Comm'n June 13, 2003); *Fair Housing Advocates Ass'n v. City of Zanesville* (OSI/COL)H1071702 (26917) 080502 (Ohio Civil Rights Comm'n June 13, 2003) ("Comm. Order") (attached as Ex. A).

## JURISDICTION AND VENUE

6.      Jurisdiction is conferred on this Court by 42 U.S.C. § 3613(a), and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), 1367(a), and 2201.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b), as the claims arise in Muskingum County, Ohio.

## PARTIES

### Plaintiffs

8.      Plaintiff Margarette Adams is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Margarette Adams currently resides at 1679 Coal Run Road.  Margarette Adams had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

9.      Plaintiff Barbara Chatman is African-American.  Barbara Chatman currently resides in Columbus, Ohio.  Barbara Chatman previously resided at 1685 Coal Run Road. Barbara Chatman never received public water service at this property.  At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

10.      Plaintiff Audrey Ford is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Audrey Ford currently resides at 1663

Coal Run Road.  Audrey Ford had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

11.     Plaintiff Thomas Ford is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Thomas Ford currently resides at 1663 Coal Run Road.  Thomas Ford had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

12.     Plaintiff Karen Gilbert is African-American.  Karen Gilbert previously resided at 1775 Coal Run Road.  She never received public water service at this property.  She currently resides in Albuquerque, New Mexico.  At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

13.     Plaintiff Cynthia Hairston is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Cynthia Hairston currently resides at 1800 Coal Run Road.  She previously resided at 1775 Coal Run Road.  Cynthia Hairston had never received public water service at either of these properties on Coal Run Road until she received public water service at 1800 Coal Run Road after the initiation of this action and Defendant Muskingum County laid water lines.

14.     Plaintiff Lynn Hairston is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Lynn Hairston currently resides at 1800 Coal Run Road.  He had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

15.     Plaintiff Doretta Hale is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Doretta Hale currently resides at 1775

Coal Run Road.  Doretta Hale had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

16.     Plaintiff Mark Hale is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Mark Hale currently resides at 1636 Coal Run Road.  Mark Hale previously resided at 1775 Coal Run Road.  Mark Hale had never received public water service at either of these properties until he received public water service at 1636 Coal Run Road after the initiation of this action and Defendant Muskingum County laid water lines.

17.     Plaintiff Regina Hale is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Regina Hale currently resides at 1636 Coal Run Road.  She had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

18.     Plaintiff Rodney Hale is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Rodney Hale currently resides at 1775 Coal Run Road.  Rodney Hale had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

19.     Plaintiff Ellen Harvey is African-American.  She currently resides in Reynoldsburg, Ohio.  Ellen Harvey previously lived at two residences on what is now Coal Run Road.  She never received public water services at either of these properties.  At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

20.    Plaintiff James Hill is African-American.  James Hill previously resided at 910 Langan Lane and 920 Langan Lane.  He never received public water service at either of these properties.  He currently resides in Zanesville, Ohio.  At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum County and a citizen of the United States.

21.    Plaintiff Jeff Hill is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Jeff Hill currently resides at 1707 Coal Run Road.  Jeff Hill had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

22.    Plaintiff John Hill is African-American.  John Hill previously resided at 910 Langan Lane.  He never received public water service at this property.  He currently resides in Zanesville, Ohio.  At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum County and a citizen of the United States.

23.    Plaintiff Kathleen Hill is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Kathleen Hill currently resides at 910 Langan Lane.  Kathleen Hill had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

24.    Plaintiff Lorena Hill is African-American.  Lorena Hill previously resided at 1715 Coal Run Road.  She never received public water service at this property.  She currently resides in Zanesville, Ohio.  At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

25.     Plaintiff Robert Hill is African-American.  Robert Hill previously resided at 1715 Coal Run Road.  He never received public water service at this property.  He currently resides in Zanesville, Ohio.  At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum County and a citizen of the United States.

26.     Plaintiff Roger Hill is African-American.  Roger Hill previously resided at 1715 Coal Run Road.  He never received public water service at this property.  He currently resides in Zanesville, Ohio.  At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum County and a citizen of the United States.

27.     Plaintiff Bernard Kennedy is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  He previously resided at 910 Langan Lane and/or 1125 Langan Lane.  He never received public water service at either of these properties.

28.     Plaintiff Dennis Kennedy is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  He currently resides at 915 Langan Lane.  He previously resided at 1705 Coal Run Road.  He had never received public water service at either of these properties until he received public water service at 915 Langan Lane after the initiation of this action and Defendant Muskingum County laid water lines.

29.     Plaintiff Donald Kennedy is white.  He previously resided at 1105 Langan Lane and at a house on Coal Run Road that is no longer standing.  He had never received public water service at either of these properties.  Donald Kennedy currently resides in Chandlersville, Ohio. At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum County and a citizen of the United States.

10

30.     Plaintiff Evelyn Kennedy is African-American.  She previously resided at 1705 Coal Run Road.  She never received public water service at this property.  At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

31.     Plaintiff Jeanene Kennedy is a white resident of Washington Township in Muskingum County and a citizen of the United States.  She currently resides at 1095 Langan Lane.  She had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

32.     Plaintiff Jerry Kennedy is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Jerry Kennedy currently resides at 1155 Langan Lane.  He previously resided at 1705 Coal Run Road and 940 Langan Lane.  Jerry Kennedy had never received public water service at any of these properties until after the initiation of this action and Defendant Muskingum County laid water lines.

33.     Plaintiff Marcus Kennedy is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  He currently resides at 1095 1/2 Langan Lane.  Marcus Kennedy had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

34.     Plaintiff Marsha Kennedy is white.  Marsha Kennedy previously resided at 1155 Langan Lane and 940 Langan Lane.  She never received public water service at either of these properties.  Marsha Kennedy currently lives in Dresden, Ohio.  At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

11

35.     Plaintiff Martha Kennedy is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  She currently resides at 915 Langan Lane.  She had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

36.     Plaintiff Marvin Kennedy, Sr. is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  He currently resides at 1145 Langan Lane.  He previously resided at 1705 Coal Run Road.  He has never received public water service at either of these properties until he received water service at 1145 Langan Lane after the initiation of this action and Defendant Muskingum County laid water lines.

37.     Plaintiff Mary Kennedy is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  She currently resides at 1740 Adamsville Road.  She previously resided at 1705 Coal Run Road and at two residences on what is now Coal Run Road.  She never received public water service at the properties on Coal Run Road.

38.     Plaintiff Michael Kennedy is African-American.  He currently resides in Columbus, Ohio.  Michael Kennedy previously resided at 1095 Langan Lane.  Michael Kennedy never received public water service at this property.  At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum County and a citizen of the United States.

39.     Plaintiff Nancy Kennedy is a white resident of Washington Township in Muskingum County and a citizen of the United States.  Nancy Kennedy currently resides at 925 Langan Lane.  Nancy Kennedy had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

40.     Plaintiff Rebecca Kennedy is African-American.  She previously resided at 1155 Langan Lane and 940 Langan Lane.  Rebecca Kennedy never received public water service at either of these properties.  Rebecca Kennedy currently resides in Zanesville, Ohio.  At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

41.     Plaintiff Richard Kennedy, Jr. is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  He currently resides at 1095 1/2 Langan Lane.  He had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

42.     Plaintiff Richard Kennedy, Sr. is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Richard Kennedy, Sr. currently resides at 1095 Langan Lane.  Richard Kennedy, Sr. had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

43.     Plaintiff Ricky Lee Kennedy is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Ricky Lee Kennedy currently resides at 921 Langan Lane.  He previously resided at 925 Langan Lane.  Ricky Lee

Kennedy had never received public water service at either of these properties until after the initiation of this action and Defendant Muskingum County laid water lines.

44.     Plaintiff Robert Kennedy is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Robert Kennedy currently resides at 1680 Russell Street.  He previously resided at 1705 Coal Run Road.  Robert Kennedy never received public water service at this property on Coal Run Road.

45.     Plaintiff Shawn Kennedy is white.  He previously resided at 1155 Langan Lane and 940 Langan Lane.  Shawn Kennedy never received public water service at any of these properties.  He currently resides in Dresden, Ohio.  At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum County and a citizen of the United States.

46.     Plaintiff Thomas Levi King is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Thomas Levi King currently resides at 1800 Coal Run Road.  He had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

47.     Plaintiff Shawn Krouskoupf is white.  Shawn Krouskoupf currently resides in Zanesville, Ohio.  Shawn Krouskoupf previously resided at 1627 Coal Run Road.  Shawn Krouskoupf never received public water service at this property.  At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum County and a citizen of the United States.

48.     Plaintiff Julia Landkrohn is African-American.  She previously resided at 1155 Langan Lane and 940 Langan Lane.  Julia Landkrohn never received public water service at

14

either of these properties. Julia Landkrohn currently resides in Dresden, Ohio. At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

49.     Plaintiff Donna Lewis is African-American. Donna Lewis currently resides in Columbus, Ohio. Donna Lewis previously resided at 1685 Coal Run Road. Donna Lewis never received public water service at this property. At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

50.     Plaintiff Frederick H. Martin is African-American. Frederick H. Martin currently resides in Nashport, Ohio. He previously resided at a house and a trailer on Coal Run Road that are no longer standing. Frederick H. Martin never received public water service at these residences. At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum County and a citizen of the United States.

51.     Plaintiff Paul C. Martin is African-American. Paul C. Martin currently resides in Zanesville, Ohio. He previously resided at a house on Coal Run Road that is no longer standing. Paul C. Martin never received public water service at this residence. At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum County and a citizen of the United States.

52.     Plaintiff Richard L. Martin is African-American. Richard L. Martin currently resides in Zanesville, Ohio. He previously resided at a house on Coal Run Road that is no longer standing. Richard L. Martin never received public water service at this residence. At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum

County and a citizen of the United States.

53.     Plaintiff Tommy W. Martin is African-American.  Tommy W. Martin currently resides in Zanesville, Ohio.  He previously resided at two houses on Coal Run Road that are no longer standing.  Tommy W. Martin never received public water service at this residence.  At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum County and a citizen of the United States.

54.     Plaintiff John Paul Mayle is African-American.  John Paul Mayle currently resides in Zanesville, Ohio.  John Paul Mayle previously resided at 1665 Coal Run Road.  John Paul Mayle never received public water service at this property.  At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum County and a citizen of the United States.

55.     Plaintiff Glenna McConnell is African-American.  Glenna McConnell currently resides in Zanesville, Ohio.  Glenna McConnell previously resided at 1685 Coal Run Road.  Glenna McConnell never received public water service at this property.  At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

56.     Plaintiff Helen McCuen is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Helen McCuen currently resides at 1685 Coal Run Road.  Helen McCuen had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

57.     Plaintiff James McCuen is African-American.  James McCuen currently resides in

Zanesville, Ohio.  James McCuen previously resided at 1685 Coal Run Road.  James McCuen never received public water service at this property.  At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum County and a citizen of the United States.

58.     Plaintiff John McCuen is African American.  John McCuen currently resides in Zanesville, Ohio.  John McCuen previously resided at 1685 Coal Run Road.  James McCuen never received public water service at this property.  At all times relevant to his allegations herein, he was a resident of Washington Township in Muskingum County and a citizen of the United States.

59.     Plaintiff Sondra McCuen is an African-American resident of Washington Township in Muskingum County and a citizen of the United States. Sondra McCuen currently resides at 1685 Coal Run Road.  Sondra McCuen had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

60.     Plaintiff Jessica Mirgon is African-American.  She currently resides in Dresden, Ohio.  She previously resided at 1095 Langan Lane.  She never received public water service at this property. At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

61.     Plaintiff Bryan Newman is a white resident of Washington Township in Muskingum County and a citizen of the United States.  Bryan Newman currently resides at 1695 Coal Run Road.  He had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

62.     Plaintiff Goldie Newman is a white resident of Washington Township in Muskingum County and a citizen of the United States. Goldie Newman currently resides at 1805 Coal Run Road. He had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

63.     Plaintiff Judy Newman is a white resident of Washington Township in Muskingum County and a citizen of the United States. Judy Newman currently resides at 1805 Coal Run Road. She had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

64.     Plaintiff Jacquelene Norvet is African-American. Jacquelene Norvet currently resides in Columbus, Ohio. Jacquelene Norvet previously resided at a house on Coal Run Road that is no longer standing. Jacquelene Norvet never received public water service at this property. At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

65.     Plaintiff Carolyn Page is African-American. Carolyn Page currently resides in Columbus, Ohio. Carolyn Page previously resided at a house on Coal Run Road that is no longer standing. Carolyn Page never received public water service at this property. At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

66.     Plaintiff Baranda Paynter is a white resident of Washington Township in Muskingum County and a citizen of the United States. Baranda Paynter currently resides at 1625 Coal Run Road. Baranda Paynter had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

18

67.     Plaintiff Tammy Scott is a white resident of Washington Township in Muskingum County and a citizen of the United States.  Tammy Scott currently resides at 921 Langan Lane. Tammy Scott had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

68.     Plaintiff Brittany Smith is white.  Brittany Smith currently resides in Zanesville, Ohio.  She previously resided at 1627 Coal Run Road.  Brittany Smith never received public water service at this property.  At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

69.     Plaintiff Pamela Smith is a white resident of Washington Township in Muskingum County and a citizen of the United States.  Pamela Smith currently resides at 1627 Coal Run Road.  Pamela Smith had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

70.     Plaintiff Alice Stokes is African-American.  Alice Stokes currently resides in Richmond, Virginia.  Alice Stokes previously resided at a house on Coal Run Road that is no longer standing.  Alice Stokes never received public water service at this property.  At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

71.     Plaintiff Erin Thompson is a white resident of Washington Township in Muskingum County and a citizen of the United States.  Erin Thompson currently resides at 1659 Coal Run Road.  Erin Thompson had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

72.     Plaintiff Coty Tomson is an African-American resident of Washington Township

19

in Muskingum County and a citizen of the United States.  He currently resides at 1095 Langan Lane.  Coty Tomson had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

73.     Plaintiff Kay Turner is African-American.  Kay Turner currently resides in Chicago, Illinois.  Kay Turner previously resided at a house on Coal Run Road that is no longer standing.  Kay Turner never received public water service at this property.  At all times relevant to her allegations herein, she was a resident of Washington Township in Muskingum County and a citizen of the United States.

74.     Plaintiff Mark Walker is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Mark Walker currently resides at 1659 Coal Run Road.  Mark Walker had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

75.     Plaintiff Nora Walker is an African-American resident of Washington Township in Muskingum County and a citizen of the United States.  Nora Walker currently resides at 1655 Coal Run Road.  Nora Walker had never received public water service at this property until after the initiation of this action and Defendant Muskingum County laid water lines.

76.     Plaintiff Fair Housing Advocates Association ("the FHAA") is a private, non-profit fair housing organization incorporated in 1993 under the laws of the State of Ohio, with its principal place of business at 520 S. Main Street #2459, Akron, Ohio 44311.  The FHAA seeks to eliminate housing discrimination and to promote equal housing opportunity for all persons without regard to race, religion, gender, national origin, familial status, or disability.  The FHAA provides its services throughout the state of Ohio.

20

<u>Defendants</u>

77.     Defendant City of Zanesville ("the City") is a municipal corporation organized under the laws of the State of Ohio.  It is located in Muskingum County, approximately fifty-five miles east of downtown Columbus.  The City provides water service to the homes of residents in neighborhoods outside the City limits, including parts of Washington Township.  The City also is responsible for maintaining water lines, billing customers, and determining which residents are granted permission to tap into the existing water lines in these neighborhoods.  The City has received, and continues to receive, federal Community Development Block Grant funds that are used for water and sanitary sewer programs.

78.     Defendant Washington Township ("the Township") is a political subdivision organized under the laws of the State of Ohio and located in Muskingum County, just outside the City's borders.  The Township, by and through the Washington Township Trustees ("the Trustees"), possesses the authority to finance the provision of water service to residents of the Township, and, upon information and belief, has initiated, authorized and/or facilitated the construction and management of water projects to serve residents of the Township.  Upon information and belief, the Township has received, and continues to receive, federal Community Development Block Grant funds that are used for water and sanitary sewer programs.

79.     Defendant Paul Bunting is a Washington Township Trustee.  He is sued in his official and individual capacities.

80.     Defendant Clint Cameron is a Washington Township Trustee.  He is sued in his official and individual capacities.

81.     Defendant Doug Culbertson is a Washington Township Trustee.  He is sued in his

official and individual capacities.

82.    Defendant Muskingum County ("the County") is a political subdivision organized under the laws of the State of Ohio.  Since at least December 2000, the County, by and through the Muskingum County Commissioners, has maintained partial or sole responsibility for providing water service to the homes of County residents.  The County has received, and continues to receive, federal Community Development Block Grant funds that are used for water and sanitary sewer programs.

83.    Defendant Ed Kenily was a Muskingum County Commissioner through 2004.  He is sued in his official and individual capacities.

84.    Defendant Don Madden is a Muskingum County Commissioner.  He is sued in his official and individual capacities.

85.    Defendant Dorothy Montgomery is a Muskingum County Commissioner.  She is sued in her official and individual capacities.

## FACTUAL BACKGROUND

A.    The History of Racial Segregation and Discrimination in the Allocation of Water Service in the Coal Run/Langan Lane Neighborhood

86.    Plaintiffs reside in a predominantly African-American area of the Township, just east of the City's border, in Muskingum County.  This area includes Coal Run Road and the southern portion of Langan Lane ("Coal Run/Langan Lane neighborhood").

87.    The City and its surrounding area have a long history of racial segregation, discrimination, and intimidation.  In the 1950s, the City maintained racially segregated public recreational facilities, including swimming pools and cemeteries.  Decades after a 1950 study by the Zanesville Council on Human Rights concluded that "Negroes can buy only certain homes,"

22

Council on Human Rights, Zanesville, Ohio, An Even Break, Human Rights in the "Typical American City" 5-6 (2d ed., 1950), African-American residents have continued to face racial discrimination, harassment, and even violence, upon attempting to purchase, rent, or live in homes outside of historically African-American neighborhoods.  African-American students in Muskingum County continue to experience racial harassment and discrimination in public education.  As recently as 1999, the City was the site of a Ku Klux Klan rally.

88.     Residential segregation in the Zanesville area persists to this day.  For example, according to data from the 2000 Census, African Americans constitute only 3% of the population of Washington Township and 4% of the population of Muskingum County.  The census blocks encompassing the Coal Run/Langan Lane neighborhood, however, are nearly 30% African-American.

89.     Langan Lane itself is neatly divided, at the side street Circle Drive, by two racially segregated neighborhoods.  The northern portion of Langan Lane, including Circle Drive, is entirely white, and ends to the north at Adamsville Road, which is nearly all white.  In contrast, the southern portion of Langan Lane is entirely African-American, and ends to the south at Coal Run Road, which is predominantly African-American.

90.     In the Coal Run/Langan Lane neighborhood, whether a particular home has had access to public water service has depended on the race of its residents and/or the race of its neighboring residents.

91.     The northern half of Langan Lane and the side street Circle Drive are comprised of nineteen white residences.  The City provided water to every one of these homes.

92.     The southern half of Langan Lane is comprised of thirteen African-American residences.  The City did not provide water to the vast majority of these African-American homes.  Upon information and belief, only three of these African-American homes received water service, due to their close proximity to the white portion of the street, and/or their unilateral actions in tapping into existing water lines serving white residences.

93.     Of the twenty-two residences on Coal Run Road, thirteen are occupied by African-American families, and nine are occupied by white families.  Not a single African-American resident on Coal Run Road received water service from the City.

94.     The City provided water service to only three homes on Coal Run Road.  Every one of these three homes is occupied by a white family.  The six white residences that did not receive water service are surrounded by or located in close proximity to African-American homes.

95.     Upon information and belief, all but one of the residents of Adamsville Road (where Langan Lane ends to the north) are white.  All of the homes on Adamsville Road had access to public water service.  The only African-American family on the street purchased its home from a white owner with pre-existing water service.

96.     Upon information and belief, Defendants have been, and are, generally aware of the demographic information, and the disparity in access to public water service, described above.

B.      Hardship Resulting from the Lack of Public Water Service

97.     The site on which the homes of Plaintiffs were built makes surviving without access to public water service an extraordinary hardship.  Because the land was formerly used for

24

coal mining, the majority of residents in the Coal Run/Langan Lane neighborhood cannot build wells on their properties.  Instead, they were forced to resort to purchasing water from the City's water treatment plant and hauling it, or having it hauled, to their homes by the truckload.  There, the water was stored in cisterns, where it became stagnant if not promptly used.  Many Coal Run/Langan Lane neighborhood residents caught rainwater in their cisterns in order to obtain a sufficient water supply at a lower cost, and the water became infested with snails, worms, and mosquitoes before it was pumped into their homes.  These residents self-treated the water with bleach and other chemicals before using it to bathe and wash dishes.  Because the water stored in their cisterns was often contaminated, most residents in the neighborhood with cisterns frequently bought bottled water for drinking and cooking.

98.     Each month, residents of the Coal Run/Langan Lane neighborhood who were without water service or a well would pay up to, or sometimes more than, ten times as much to purchase and haul water from the City as white residents pay for running tap water in their homes.  In addition to the labor required to purchase, haul and store water, these residents also paid significant additional costs, including, for example, the cost of purchasing, installing, and maintaining the cistern and pump, the cost of purchasing and maintaining a vehicle to haul water, and the cost of purchasing chemicals for treatment, and bottled water for drinking and cooking. In addition, they were forced to pay costs associated with damage to their hot water tanks and appliances resulting from contaminated water.

99.     Even those Coal Run/Langan Lane neighborhood residents who were able to maintain a well on their property could not make full use of the water obtained from the well, as the former coal mines have thoroughly contaminated the ground water with sulfur and other

pollutants, making the limited well water supply unsafe for consumption.  These residents were forced to purchase bottled water for drinking and cooking, and must pay costs associated with damage to their hot water tanks and appliances resulting from contaminated water.

100.    Plaintiff Evelyn Kennedy raised seven children while residing at 1705 Coal Run Road, including Plaintiffs Jerry Kennedy, Mary Kennedy, Marvin Kennedy, Sr., Dennis Kennedy and Robert Kennedy.  Due to the former mining activity in the area, Evelyn Kennedy, Jerry Kennedy, Mary Kennedy, Marvin Kennedy, Sr., Dennis Kennedy and Robert Kennedy were unable to build a well for their home on 1705 Coal Run Road.  Instead, because they did not have public water service, they were forced to purchase large quantities of water from the City and pay to have it hauled to their home in a truck.

101.    Evelyn Kennedy and her children incurred great expense in constructing and maintaining a cistern for water storage at 1705 Coal Run Road.  They also paid for the installation and maintenance of a water tank, pump, and heating system. Evelyn Kennedy and her children stored the water in the cistern, where it mixed with rainwater, became stagnant, and/or became infested with vermin.  They treated the water with chemicals before using it for bathing and other non-drinking purposes.  Because the water was unfit for drinking, Evelyn Kennedy and her children were forced to purchase a separate supply of bottled drinking water.

102.    Due to former mining activity in the area, Plaintiff Jerry Kennedy has been unable to build a well for either of his homes on Langan Lane.  Instead, because he did not have public water service, he was forced to purchase large quantities of water from the City, and haul the water, or have it hauled, to his home in a truck.  Jerry Kennedy stored the water in a cistern on his property, where it mixed with rainwater and became infested with worms.  He treated the

water with bleach before he and his family used it for bathing and other non-drinking purposes. Because the water was unfit for drinking, Jerry Kennedy was forced to purchase a separate supply of drinking water for himself and his family.

103.    From approximately 1975 to 1990, Marsha Kennedy and Jerry Kennedy were married.  During this time period, Marsha Kennedy resided with Jerry Kennedy at 940 Langan Lane and 1155 Langan Lane.  Their three children, Julia Lankrohn, Shawn Kennedy and Rebecca Kennedy lived at 940 Langan Lane and/or 1155 Langan Lane for approximately the first eighteen years of their lives.  Because Marsha Kennedy, Julia Lankrohn, Shawn Kennedy and Rebecca Kennedy did not have public water service while living on Langan Lane, they were forced to purchase large quantities of water from the City, and haul the water, or have it hauled, to their home in a truck.  Marsha Kennedy, Julia Landkrohn, Shawn Kennedy and Rebecca Kennedy stored the water in a cistern on the property, where it mixed with rainwater and became infested with worms.  They treated the water with bleach before using it for bathing and other non-drinking purposes.  Because the water was unfit for drinking, Marsha Kennedy, Julia Landkrohn, Shawn Kennedy and Rebecca Kennedy purchased a separate supply of drinking water.

104.    In 1982, Bernard Kennedy purchased the residence at 940 Langan Lane from Jerry Kennedy.  While he lived at 940 Langan Lane, Bernard Kennedy did not have public water service.  He was forced to purchase large quantities of water from the City and haul it, or have it hauled, to his home in a truck.  Bernard Kennedy stored the water in a cistern on the property, where it mixed with rainwater and became infested.  He treated the water with bleach and other

27

chemicals before using it for bathing and other non-drinking purposes.  Because the water was unfit for drinking, Bernard Kennedy purchased a separate supply of drinking water.

105.    Bernard Kennedy owns property at 1125 Langan Lane.  He never received public water at this property.

106.    From approximately 1945 to 1958, Donald Kennedy resided at a house on Coal Run Road.  The house no longer exists.  The house had a well that supplied Donald Kennedy with drinking water.  The well periodically became contaminated with snakes and rainwater, and Donald Kennedy had to clean the well twice a year.

107.    Donald Kennedy moved from Coal Run Road to a house on 1105 Langan Lane, where he resided for approximately twenty years.  Because he did not have public water service, Donald Kennedy had to construct and maintain a cistern, haul water with a truck, and catch rainwater.  Because the water was of poor quality, Donald Kennedy had to treat the water with a water filter.

108.    In approximately 1972, Mary Kennedy moved from her lifelong residence at 1705 Coal Run Road to a house near the intersection of Coal Run Road and Langan Lane.  The house no longer exists.  She and her daughter Ellen Harvey lived there for approximately six years. Mary Kennedy and Ellen Harvey purchased water from the City and paid to have it hauled to the property.  Mary Kennedy and Ellen Harvey bore the costs of maintaining the cistern and its pumping and heating system.  The well was not of sufficient capacity to allow Mary Kennedy or Ellen Harvey to do laundry on the property.  Mary Kennedy was forced to make regular trips to the laundromat in order to wash her family's clothes.

109.    In approximately 1980, Mary Kennedy and Ellen Harvey moved to a trailer on Coal Run Road, where they lived for approximately one year.  The trailer had a well that supplied the water Mary Kennedy and Ellen Harvey used for bathing.  They treated the well water with bleach before washing the dishes.  The well water could not be used for drinking. Mary Kennedy and Ellen Harvey purchased a separate supply of bottled drinking water.

110.    Plaintiff Marvin Kennedy, Sr. has lived at 1145 Langan Lane for approximately forty-six years.  He has been unable to dig a well for his home on Langan Lane.  Instead, because he did not have public water service, he was forced to purchase large quantities of water from the City, and haul the water, or have it hauled, to his home in a truck.  Marvin Kennedy, Sr. stored the water in a cistern on his property, where it mixed with rainwater and became infested with worms.  He treated the water with chemicals before he and his family used it for bathing and other non-drinking purposes.  He incurred great expense in constructing and maintaining the cistern, as well as in installing and maintaining a heating system, hot water tank, pump, and plumbing system.  Because the water was unfit for drinking, Marvin Kennedy, Sr. purchased a separate supply of drinking water for himself and his family.

111.    Plaintiffs Dennis Kennedy and Martha Kennedy have lived at 915 Langan Lane for approximately twenty-five years.  They have been unable to dig a well for their home on Langan Lane.  Instead, because Dennis Kennedy and Martha Kennedy did not have public water service, they were forced to purchase large quantities of water from the City.  Dennis Kennedy hauled the water to their home in a truck.  In addition to physical labor and inconvenience, this required him to purchase and maintain the necessary equipment, vehicle, gasoline and insurance. Dennis Kennedy and Martha Kennedy stored the water in a cistern on their property, where the

29

water mixed with rainwater and became stagnant and/or infested with vermin.  They paid to construct and maintain the cistern, as well as to install and maintain a heating system, hot water tank, pump, and plumbing system.  They treated the water with chemicals before using it for bathing and other non-drinking purposes.  Because the water was unfit for drinking, Dennis Kennedy and Martha Kennedy purchased a separate supply of drinking water for themselves and their family.

112.    Plaintiff Richard Kennedy, Sr. has twice attempted to drill a well on his property, but only hit water contaminated by mining activity.  Instead, because he did not have public water service, he was forced to purchase water for himself and his family from the City by the truckload and haul the water to his home, where he stored it in a cistern he built on his property.  Richard Kennedy, Sr. did not catch rainwater in his cistern, and hauled water to his home twice a day.  Richard Kennedy, Sr.'s family members who live or have lived with him at 1095 Langan Lane have also endured these conditions.  His family members include Plaintiffs Jeanene Kennedy, Richard Kennedy, Jr., Marcus Kennedy, Michael Kennedy, Jessica Mirgon, and Coty Tomson.

113.    Plaintiffs Rodney Hale and Doretta Hale currently reside at 1775 Coal Run Road, where they have lived for approximately forty-eight years.  They raised their children at this home, including Plaintiffs Cynthia Hairston, Mark Hale and Karen Gilbert.  While living at 1775 Coal Run Road, Plaintiffs Rodney Hale, Doretta Hale, Cynthia Hairston, Mark Hale and Karen Gilbert obtained water from a well.  Because they did not have public water service while living at 1775 Coal Run Road, and the water supply from the well was not dependable, they were forced to purchase large quantities of water from the City, and haul the water, or have it hauled,

to their home.  They also paid to construct and maintain a pumping, plumbing, and heating system to transport the water into the house.  The well capacity was insufficient to allow Rodney Hale, Doretta Hale, Cynthia Hairston, Mark Hale and Karen Gilbert to use an automatic washer to clean their clothes at home.  Instead they must use the laundromat.  In addition, Rodney Hale, Doretta Hale, Cynthia Hairston, Mark Hale and Karen Gilbert were forced to purchase a separate supply of bottled water for drinking and cooking.

114.    Plaintiff Cynthia Hairston was able to dig a well on her property at 1800 Coal Run Road, at great expense, to provide a limited supply of water to her home.  Because the well water was contaminated and unsafe, Cynthia Hairston purchased drinking water for herself and her family.  She was also forced to purchase supplemental water supplies for any other purpose requiring a significant amount of water.  Cynthia Hairston's family members who live with her at 1800 Coal Run Road have also endured these conditions.  Her family members include Plaintiffs Lynn Hairston and Thomas Levi King.

115.    Mark Hale and Regina Hale have lived at 1636 Coal Run Road for approximately nineteen years.  Mark Hale and Regina Hale obtained water from a well on their property at 1636 Coal Run Road.  Mark Hale and Regina Hale paid for the maintenance of the well.  They also paid for the installation of a plumbing system on their property.  The poor quality of the well water caused damage to the plumbing system, including the water pump and pressure switch, the toilet, the sink, and the washing machine.  Mark Hale and Regina Hale treat the water with chemicals and water softener before using it for bathing.  The contaminated condition of the well water prevented Mark Hale and Regina Hale from washing white or light-colored clothing at home.  As a result, they traveled to a laundromat or relative's home once every two weeks.

Because the water is unfit for drinking, they purchased bottled water to drink and cook every week.  They have also experienced damage to their carpet from water stains.  Mark Hale and Regina Hale purchased equipment necessary to remove the residue left by contaminated water from the drains and pipes in their home.

116.     Plaintiff Margarette Adams has lived at 1679 Coal Run Road for approximately fifty years.  Because Margarette Adams has been denied public water service, she was forced to construct and maintain a plumbing system to transport water from her well and/or cistern into her home.  The lack of public water has caused her considerable inconvenience, hardship and expense.

117.     Because she was denied public water service, Nancy Kennedy had to install a cistern to obtain running water in her house.  She and her now-deceased husband constructed the cistern and its heating, plumbing and pumping system when they built the house at 925 Langan Lane in which Nancy Kennedy resides.  Nancy Kennedy purchased water and paid for the water to be hauled to her cistern.  In addition, she paid to maintain the cistern, which required cleaning twice a year.  She purchased and maintained the equipment necessary to heat water from the cistern and to pump the water through her house.  These costs have caused her considerable expense and inconvenience.  The poor water quality prevents her from using an automatic washing machine and she used a ringer machine.

118.  Ricky Lee Kennedy lived at 925 Langan Lane for approximately the first twenty years of his life.  Because he was denied public water service, his family had to install a cistern to obtain running water in the house.  His family purchased water and paid for the water to be hauled to the cistern.  Ricky Lee Kennedy's family purchased and maintained the equipment

necessary to heat water from the cistern and to pump the water through his house.  These costs have caused him considerable expense and inconvenience.

119.    In 1988, Ricky Lee Kennedy purchased and moved into a trailer at 921 Langan Lane.  In 1997 Tammy Scott moved into this trailer to live with Ricky Lee Kennedy.  Without public water service or a reliable natural water source, Ricky Lee Kennedy and Tammy Scott had to haul water or pay to have water hauled to their home.  This caused them considerable expense and inconvenience.

120.    Helen McCuen has lived at 1685 Coal Run Road for approximately fifty-seven years.  Helen McCuen's children, including Plaintiffs Barbara Chatman, Donna Lewis, Glenna McConnell, James McCuen, John McCuen and Sondra McCuen, lived at 1685 Coal Run Road during their childhood.  Without access to public water service, Helen McCuen, Barbara Chatman, Donna Lewis, Glenna McConnell, James McCuen, John McCuen and Sondra McCuen were forced to purchase water by the truckload from the City and pay to have the water hauled to their home, where they stored it in a cistern.  They paid to maintain the cistern, as well as to purchase and maintain equipment to transport the water from the cistern into her house.  Because water from the cistern was not potable, Helen McCuen, Barbara Chatman, Donna Lewis, Glenna McConnell, James McCuen, John McCuen and Sondra McCuen purchased water for drinking and cooking.  Helen McCuen lacked the ability to clean her or her family's clothes at home.  The denial of public water service has subjected Helen McCuen, Barbara Chatman, Donna Lewis, Glenna McConnell, James McCuen, John McCuen and Sondra McCuen to considerable hardship, especially during the winter.

121.    Kathleen Hill has lived in the house at 910 Langan Lane for approximately thirty-seven years.  Kathleen Hill's sons, Plaintiffs James and John Hill, have also lived in the house at 910 Langan Lane and a trailer at 920 Langan Lane.  Because Kathleen Hill, James Hill and John Hill have been denied public water service at these properties, they were forced to maintain a well and/or cistern to obtain water.  They purchased large quantities of water from the City, which they hauled in a truck and/or paid to have hauled to their house and trailer.  The lack of public water has caused Kathleen Hill, James Hill and John Hill considerable inconvenience, hardship and expense.

122.    Lorena Hill moved into the house at 1715 Coal Run Road in 1953, where she lived for more than thirty years with her sons Plaintiffs Jeff Hill, Robert Hill and Roger Hill.  Without public water service, Lorena Hill, Jeff Hill, Robert Hill and Roger Hill had to haul water or pay for water to be hauled to their home.  The lack of public water has caused Lorena Hill, Jeff Hill, Robert Hill and Roger Hill considerable inconvenience, hardship and expense.

123.    Due to former mining activity in the area, Plaintiff Jeff Hill has been unable to build a well for his home at 1707 Coal Run Road.  Because he did not have public water service, Jeff Hill purchased large quantities of water from the City, and hauled the water, or had it hauled, to his home in a truck.  Jeff Hill stored the water in a cistern on his property, where it mixed with rainwater, became stagnant and/or became infested with vermin.  He paid to have the cistern, plumbing and pumping system cleaned and maintained.  The poor water quality has caused damage to his household appliances, including his washing machine.  Because the water is unfit for drinking, Jeff Hill purchased drinking water for himself and his family.

124.    Nora Walker lived at 1655 Coal Run Road for approximately forty-six years.  She was able to dig a well and install a plumbing system on her property, at great expense, to provide a limited supply of water to her home.  She paid to maintain the well and plumbing system.  Because the well water is contaminated and unsafe, Nora Walker used chemicals to treat the water before she can use it for bathing or cleaning.  Nora Walker must purchase water for drinking and cooking.

125.    Plaintiff Mark Walker was able to dig a well on his property at 1659 Coal Run Road.  He incurred great expense to drill the well and pays recurring maintenance fees.  The well water is contaminated from previous mining activity in the area.  In order to use the well water for washing or bathing, Mark Walker had to process it with a water-softening machine and treat it with chemicals.  Mark Walker purchased bottled water every week for drinking and cooking.  The well occasionally ran dry, increasing Mark Walker's bottled water expenses.  Mark Walker lives on the property with Plaintiff Erin Thompson and her four daughters, who have also endured these conditions.

126.    Plaintiffs Thomas Ford and Audrey Ford obtain water from a well.  Thomas Ford and Audrey Ford incurred considerable expense to install the well, the accompanying pipes, and the water heating system.  Thomas Ford and Audrey Ford treated the water for contamination.  The lack of public water has caused Thomas Ford and Audrey Ford considerable inconvenience, hardship and expense.

127.    Plaintiffs Judy Newman and Goldie Newman have lived at 1805 Coal Run Road for approximately 30 years.  Because Judy Newman and Goldie Newman did not have public water service, they were forced to purchase large quantities of water from the City, and haul the

35

water, or have it hauled, to their home.  They were also forced to purchase water for drinking and cooking.  Judy and Goldie Newman's family members who have lived at 1805 Coal Run Road, including Bryan Newman, have also endured these conditions.

128.    Plaintiff Bryan Newman has lived at 1695 Coal Run Road for approximately five years.  Due to former mining activity in the area, Plaintiff Bryan Newman has been unable to build a well for his home on Coal Run Road.  Instead, he paid for the installation and maintenance of a cistern and plumbing system.  Because he did not have public water service, he was forced to purchase large quantities of water from the City, and haul the water, or have it hauled, to his home in a truck.  Bryan Newman stored the water in the cistern on his property. Because the water was unfit for drinking, Bryan Newman purchased a separate supply of drinking water for himself and his family.

129.    Plaintiff Baranda Paynter has lived at 1625 Coal Run Road since August 2002. Without public water service, she has been forced to obtain water from a well.  The water stains the toilet and the sink basins in Baranda Paynter's home.  Because the contaminated water from the well is unfit for drinking, Baranda Paynter purchases a separate supply of drinking water for herself and her family.  Because the well produces only a limited supply of water, Baranda Paynter must purchase supplemental water supplies for any other purpose requiring a significant amount of water.

130.    Plaintiff John Paul Mayle formerly resided at 1665 Coal Run Road.  Because he has been denied public water service, he was forced to maintain a well and/or cistern to obtain water.  The lack of public water has caused John Paul Mayle considerable inconvenience, hardship and expense.

131.    Plaintiff Pamela Smith has lived at 1627 Coal Run Road since approximately 1997.  Her children, Plaintiffs Shawn Krauskoupf and Brittany Smith, have also lived at 1627 Coal Run Road.  Without access to public water service, Pamela Smith, Shawn Krouskoupf and Brittany Smith endured considerable expense to drill a well.  The well produces contaminated water, which causes damage to their clothing and washing machine.

132.   The Martin family, including Plaintiffs Frederick H. Martin, Paul C. Martin, Richard L. Martin, Tommy W. Martin, Jacquelene Norvet, Carolyn Page, Alice Stokes and Kay Turner moved into a house on Coal Run Road in 1935.  The house, which did not have a street number, is no longer standing.  While living in this house, Plaintiffs Frederick H. Martin, Paul C. Martin, Richard L. Martin, Tommy W. Martin, Jacquelene Norvet, Carolyn Page, Alice Stokes and Kay Turner obtained water from a spring.  The spring was an unreliable and insufficient water source.  It would often go dry, which required Plaintiffs Frederick H. Martin, Paul C. Martin, Richard L. Martin, Tommy W. Martin, Jacquelene Norvet, Carolyn Page, Alice Stokes and Kay Turner to haul water or pay to have water hauled to a cistern in their home.  The lack of public water has caused Plaintiffs Frederick H. Martin, Paul C. Martin, Richard L. Martin, Tommy W. Martin, Jacquelene Norvet, Carolyn Page, Alice Stokes and Kay Turner considerable inconvenience, hardship and expense.

133.    The lack of public water service left Plaintiffs and other residents in the Coal Run/Langan Lane neighborhood without an effective fire defense system.  Upon information and belief, as a result, at least some residents have paid, and continue to pay, higher premiums for homeowners insurance.

C.    Defendants' Discriminatory Denial of Water to the Coal Run/Langan Lane Neighborhood

134.     Upon information and belief, Defendants exercise overlapping and concurrent responsibility to provide water service to residents in the Coal Run/Langan Lane neighborhood. Although independent in name, Defendants work in close cooperation with one another.  Upon information and belief, Defendants have regularly collaborated, and continue to collaborate, on public projects, including water projects.

135.     Defendants long have been aware, or should have been aware, that African-American and other residents of the predominantly African-American Coal Run/Langan Lane neighborhood lack public water service to their homes, and that those residents not only desire, but require, such service.  Despite their knowledge, and their authority and/or responsibility to provide water service to this area, Defendants, working together, have intentionally maintained a policy, pattern, and practice of denying African-American and other residents of the Coal Run/Langan Lane neighborhood access to public water service to their homes, while providing the same service to white residents' homes.

1.     *Discriminatory Denial of Water Service by the City of Zanesville*

136.     For almost fifty years and continuing to the present, the City has knowingly, intentionally, and continually provided water service to homes outside the City limits on a selective basis, depending on the race of the residents of the home, or the racial composition of the neighborhood in which the home is located.

137.     The City has maintained, and continues to maintain, a dual system of municipal water service.  The City has continually refused to provide water service to homes occupied by African-American and other residents in the Coal Run/Langan Lane neighborhood, requiring them instead to purchase, haul, and store more expensive water from the City's water treatment

38

plant, or from other retail locations.  At the same time, the City has continually provided water service to white homes in the same area or other areas occupied predominantly by white residents.

138.    On December 27, 1955, the City enacted an ordinance extending water service to select individuals residing in the Township just outside the City boundary, on Adamsville Road and the northern portion of Langan Lane.  The residents to whom the City extended water service were, and are, nearly all white.

139.    Since 1955 and continuing to the present, the City has provided water service to homes in this predominantly white area, with knowledge of its racial composition, but has deliberately refused to provide water service to the predominantly African-American Coal Run/Langan Lane neighborhood, portions of which border Adamsville Road.  Many of the white residents whose homes continue to receive water service from the City live on the same streets as African-American residents who still do not receive water service from the City.

140.    Throughout the many years that the City has selectively provided water service outside the City's borders, it has known, or should have known, about the desperate need for potable running water in the Coal Run/Langan Lane neighborhood and the longstanding deprivation suffered by its African-American residents.

141.    Upon information and belief, the City has repeatedly denied requests by African-American residents for water service to the Coal Run/Langan Lane neighborhood, while granting requests by white residents.  For example, Plaintiff Richard Kennedy first requested water service when he built his house on Langan Lane in 1962.  The City denied his request, stating that low water pressure precluded it.  Richard Kennedy repeated his request to the City several

times in subsequent years, and even offered to run his own water line from the City's supply, but the City denied his request each time.  In contrast, in 1969, 1975 and 1991, the City permitted white residents on Langan Lane to tap into the water lines.

142.    Similarly, in approximately 1988, Plaintiff Jerry Kennedy built his house on Langan Lane and requested permission to tap into the water line.  The City denied his request, citing low water pressure.  In 1998, however, the City allowed a white resident who built a house on Circle Drive, approximately 100 yards from Jerry Kennedy's home, to tap into the water line. Mr. Kennedy learned that this had happened when he saw his white neighbor watering his lawn.

143.    Studies conducted by City employees or agents as recently as 2002 have noted the history of requests for water service to the Coal Run/Langan Lane neighborhood, and the inadequacy of wells in the area.  At least one of these studies specifically acknowledged that for years, many Coal Run/Langan Lane neighborhood residents had been storing water hauled from the Zanesville water treatment plant in cisterns, leading to ineffective fire defense and poor and unsanitary water distribution.  Upon information and belief, even after being presented with the findings from these studies, City officials deliberately refused to take the steps necessary to provide clean, safe water to African American residents in the Coal Run/Langan Lane neighborhood.

144.    On July 16, 2002, the FHAA sent the City a letter raising concerns about the lack of water service in the Coal Run/Langan Lane neighborhood.  The FHAA requested that the City take action to provide the area with water service and ensure that its services and programs were provided to residents on an equal basis.

145.    On July 26, 2002, after pressure from Plaintiffs' counsel and the FHAA, City representatives attended a meeting with African-American residents and representatives from the County and Washington Township, to discuss the need for public water service in the Coal Run/Langan Lane neighborhood.

146.    Notwithstanding this meeting, the City continued to deny, and to this day continues to deny, water service to African-American and other residents in the Coal Run/Langan Lane neighborhood.

147.    The City's actions during and after the July 26, 2002 meeting are consistent with a long history of attempting to placate residents of the Coal Run/Langan Lane neighborhood with false assurances that they would gain access to public water service.  For example, in approximately the early 1990's, the City used documentation of Coal Run/Langan Lane neighborhood residents' income levels to secure grant money to install a water pumping station on Adamsville Road.  An official went door-to-door conducting income surveys and soliciting signatures from Jerry Kennedy and other residents.  Jerry Kennedy was told that this information would be used to extend water service to him.  Only after the pump station was installed and he inquired about obtaining water did the City tell him the truth: the pump station, which is located approximately ¼ mile from Jerry Kennedy's home, was built to improve the water pressure for residents with pre-existing taps and would not be used to extend water to new customers.

148.    The foregoing constitutes a continuing policy, pattern, and practice of discrimination by the City on the basis of race in the provision of municipal services.

    2.    *Discriminatory Denial of Water Service by Washington Township and Washington Township Trustees*

41

149.     For many years, the Township and the Trustees have been involved in the initiation or provision of water service to areas of the Township outside City limits.

150.     Upon information and belief, in the late 1980's, residents of the Coal Run/Langan Lane neighborhood met with the Trustees and the East Muskingum Water Authority and requested water service.   Their request was denied and they were told that running water lines to their neighborhood was not feasible.

151.     In May 2001, the Trustees passed an emergency resolution requesting that the East Muskingum Water Authority reinstate portions of its jurisdiction as an "emergency measure necessary for the immediate preservation of the public health, safety, and welfare because of the residents' immediate need for safe drinking water and fire suppression."  Comm Order at 5 (Ex. A).  At that time, the East Muskingum Water Authority lacked jurisdiction to provide water service to the Township.  Upon information and belief, the Trustees made this request specifically for the purpose of developing a water project to provide water to the predominantly white portions of the Township.

152.     The Trustees submitted to the East Muskingum Water Authority a reincorporation plan that deliberately excluded the Coal Run/Langan Lane neighborhood.  Upon information and belief, the Trustees intentionally limited the area for a new water project to portions of Adamsville Road, Pleasant Grove, and Lovers Lane, with the knowledge that this area was virtually 100% white, and that the homes there already had access to potable well water.  Upon information and belief, the Trustees devised the boundaries of the proposed emergency water project specifically to exclude areas and/or residences that it knew were occupied by African

42

Americans and specifically to include areas and/or residences that it knew were occupied by whites.

153.    Upon information and belief, following the reincorporation, the Township and the Trustees worked closely with both the County and the East Muskingum Water Authority to ensure that the water project would be carried out in the discriminatory manner in which it was planned, and to complete the water project in November 2002.

154.    Of the eighty-two Washington Township residents who receive public water service as a result of the reincorporation, only one is African American.

155.    The foregoing constitutes a continuing policy, pattern, and practice of discrimination by the Township and its Trustees on the basis of race in the provision of municipal services.

> 3.    *Discriminatory Denial of Water Service by Muskingum County and Muskingum County Commissioners*

156.    In December 2000, the County entered into a cooperative agreement with the East Muskingum Water Authority to provide water service to County residents.  Pursuant to this agreement, the County initiated a series of water projects to extend water lines to overwhelmingly white areas of the County.  At the time it initiated these projects, the County knew of the pressing need for running water in the Coal Run/Langan Lane neighborhood. Despite this knowledge, the County and the County Commissioners deliberately chose to proceed with the scheduled water projects in areas they knew were predominantly white.

157.    While commencing and developing water projects in white neighborhoods, the County and the County Commissioners denied requests for water service made by residents of the Coal Run/Langan Lane neighborhood.  For example, when Plaintiff Cynthia Hairston moved

into her home in late 2000, a Muskingum County official expressly denied her request for water service, stating that she would have to dig a well.

158.    In July 2001, however, the County authorized preliminary engineering plans for three separate water projects to extend public water service to Adamsville Road, Chandlersville Road, and Gaysport, which are all-white, or nearly all-white, areas.  Upon information and belief, the County was aware that residents in these areas were all white or nearly all white, and that they already had access to potable water from wells.  Notwithstanding this fact, the County chose to provide water to these white areas while intentionally omitting from consideration the Coal Run/Langan Lane neighborhood, with its highly contaminated ground water and predominantly African American population.

159.    On December 13, 2001, at a County hearing to discuss federal Community Development Block Grant funding for the Chandlersville water project, Jerry Kennedy publicly reiterated the need for water service in the Coal Run/Langan Lane neighborhood.  Jerry Kennedy explained that his mother had lived on Coal Run Road for almost seventy years and that he would like her to have public water service in her lifetime.

160.    County Commissioner Dorothy Montgomery flatly denied his request, stating that there would be no water there "until President Bush drops spiral bombs in the holler," and emphasizing that even Kennedy's "grandchildren's grandchildren would not have water."  White citizens in attendance laughed at these remarks.

161.    At the same hearing, the County approved a water project for the nearly all-white neighborhood of Chandlersville Road.  In January 2002, the County approved the Gaysport water project, for an area that is 100% white.

44

162.    On July 16, 2002, the FHAA sent the County Commissioners a letter raising concerns about the lack of water service in the Coal Run/Langan Lane neighborhood.  The FHAA requested that the County take action to provide the area with water service and ensure that its services and programs were provided to residents on an equal basis.

163.    At the July 26, 2002 meeting described in paragraph 51 above, the County Commissioners were specifically informed of the need for water service in the Coal Run/Langan Lane neighborhood.  In response, County Commissioner Don Madden asserted that the County would consider providing water to the Coal Run/Langan Lane neighborhood if grant money could be found to pay for it.  Commissioner Madden further asserted that the County did not know how to apply for grants.  Upon information and belief, the County and the County Commissioners never told the predominantly white communities for which they approved water service that the County would consider making water available only if residents could find grant money to pay for it.

164.    Upon information and belief, in November 2002, the County, in collaboration with the Township and the East Muskingum Water Authority, completed the Adamsville Road project.  The project was financed by federal Community Development Block Grant funds.  The new water lines installed as part of the project stopped just north of African American residences on Coal Run Road.  Rather than extending the lines less than one mile south to include African American residents, the County extended an 18-inch main to a Dollar General distribution center located approximately ten miles to the north.  The County also ran smaller "tributary" lines a mile down small side streets where as few as two or four white homes were located, in order to provide water service to these residents.

45

165.    In May 2003, the County commenced the Chandlersville water project, which also was financed in part through federal Community Development Block Grant funds.

166.    Upon information and belief, the County has also considered water projects for Vrooms Road (100% white), Dresden (99.9% white), and the Nashport Frazeysburg area (98.9% white).

167.    The foregoing constitutes a continuing policy, pattern, and practice of discrimination by the County and the County Commissioners on the basis of race in the provision of municipal services.

D.    Ohio Civil Rights Commission Proceedings

168.    On July 26, 2002, twenty-five residents of Washington Township, including Plaintiffs Jerry Kennedy, Richard Kennedy, and Cynthia Hairston, filed a complaint with the Ohio Civil Rights Commission ("Commission") alleging that Defendants had denied, and were continuing to deny, public water service to African-American and other residents in the Township.  On August 5, 2002, Plaintiff FHAA filed a complaint with the Commission, asserting similar allegations.

169.    The Commission conducted an investigation, and on June 12, 2003, issued an order finding probable cause that Defendants had denied, and were continuing to deny, the complainants water service on the basis of race and neighborhood racial composition. Specifically, the Commission concluded:

> For almost five decades Black residents of Coal Run Road [and] Langan Lane . . . waited to obtain access to the water lines extended by the City of Zanesville.  Their white neighbors, residing in the very same area, and on the same streets, have been provided water service by the City. . . .
>
> The Washington Township Trustees' request to reincorporate a portion of the area previously deleted from the [East Muskingum Water] Authority … selectively failed to

46

include the complainants[,] foreclosing their ability to obtain water services offered by the Authority.  The Authority reincorporated a nearly 100% White area, but failed to include the complainants' area where 20% of the population is black.

Nearly one and a half years after the Kennedys made the need for water in the Langan Lane/Coal Run Road area known to the Muskingum County Commissioners, no action has been taken to remedy the request, and the need for public water service continues to exist.  Nonetheless, the County Commissioners have completed, or are in the process of completing, water projects for several other areas in the county, all of which have nearly 100% White populations.

Taken together, all of these factors give rise to the inference that the [Respondents] failed to provide the complainants with access to public water because of their race, Black[,] and the racial composition of their neighborhood.

Comm. Order at 7 (Ex. A).

170.    Since filing their complaint with the Commission, African-American residents of the Coal Run/Langan Lane neighborhood have endured racial harassment and intimidation.  For example, on December 2, 2002, the day of the first public hearing held by County Commissioners regarding a water project for the Coal Run/Langan Lane neighborhood, Plaintiff Cynthia Hairston found a severed pig's head in her driveway.  On or about June 28, 2003, a co-worker of Cynthia Hairston warned her that "you people out on Coal Run act like the Klan don't exist out here any more."

171.    More than a year after the filing of the complaint with the Commission, and months after the Commission's finding of probable cause, African-American and other residents in the Coal Run/Langan Lane neighborhood still do not have public water service.

172.    Well after the filing of the complaint with the Commission, and in response to pressure from Plaintiffs' counsel and the FHAA, the County approved plans to commence a project to provide water service to the Coal Run/Langan Lane neighborhood.  The County failed to implement any plan to compensate residents in the affected area for the longstanding

deprivation of water service to their homes or for the significant costs they have incurred over the years as a result of this deprivation.  To the contrary, even after the water project is completed, at least some Coal Run/Langan Lane residents still will have to pay between $500-$1,000 in tap fees, in addition to the cost of running water lines from the main line to their individual homes.  In contrast, residents of Adamsville Road, who are predominantly white and will also benefit from the project, are not being charged.

E.    Injury Caused by Defendants' Discriminatory Practices

1.    *Injury to Individual Plaintiffs*

173.    The pattern and practice of discrimination by Defendants, described above, constitutes a continuing violation of the rights of Plaintiffs.

174.    As a proximate result of Defendants' actions described above, Plaintiffs have suffered and are continuing to suffer injuries including, but not limited to, deprivation of their constitutional and statutory rights, economic loss, lack of fire suppression, humiliation, embarrassment, and emotional distress.

2.    *Injury to the FHAA*

175.    The FHAA has provided and continues to provide an array of programs and services designed to eliminate housing discrimination through counseling, education, advocacy, research, and enforcement of fair housing laws.

176.    The FHAA has engaged in and continues to engage in the following activities, services, and programs, among others:

(a)    assisting victims of housing discrimination;

(b)    providing counseling and referral services to the public regarding housing discrimination;

48

    (c)    educating the public about housing discrimination laws, discriminatory housing practices, and the remedies available for discriminatory housing practices;

    (d)    working with tenant, landlord, and community groups to expand and promote equal housing opportunities through counseling and education;

    (e)    assisting governmental entities in meeting their fair housing obligations;

    (f)    informing the public about housing opportunities and assisting them in taking advantage of these opportunities;

    (g)    expanding equal housing opportunities; and

    (h)    serving on various community and governmental boards designed to promote and ensure compliance with fair housing laws.

177.    As a proximate result of Defendants' discriminatory policies and practices, as alleged above, the FHAA has been damaged by having to divert scarce resources to identify and counteract such discriminatory policies and practices – resources that instead could have been used to provide the activities and services identified in paragraphs 136-37 above.

178.    To offset the effect of Defendants' discriminatory policies and practices, the FHAA has been required to devote time, resources, and money toward efforts to educate individuals adversely affected by Defendants' discriminatory practices, regarding their rights to equal housing opportunities and equal access to municipal services and the remedies available to address the deprivation of those rights.   The FHAA also has been required to devote time, resources, and money toward efforts to educate governmental entities and officials regarding their legal responsibilities to provide public utilities and services in a non-discriminatory manner.

179.    In August 2002, the FHAA filed a charge with the Commission alleging that Defendants failed to provide water service to the area where Plaintiffs reside due to the racial

composition of that area.  On June 12, 2003, the Commission ruled that there was probable cause to believe that Defendants' actions constituted illegal racial discrimination.

180.    As a proximate result of Defendants' discriminatory policies and practices, the FHAA has been substantially injured and frustrated in its mission to eradicate discrimination in housing, and in its efforts to carry out the programs and services it provides, including providing counseling and referral services to the public regarding housing discrimination, educating the public about housing discrimination laws, discriminatory housing practices, and the remedies available for discriminatory housing practices, assisting governmental entities in meeting their fair housing obligations, expanding equal housing opportunities, and eliminating discriminatory housing practices.

## CAUSES OF ACTION

### COUNT I

### <u>Unlawful Discrimination Under the Fair Housing Act</u>
**(All Plaintiffs against All Defendants)**

181.    Plaintiffs reallege and incorporate by reference paragraphs 1-141 above, as if fully set forth herein.

182.    By the actions described above, Defendants have violated, and/or continue to violate, the rights of Plaintiffs and the FHAA, under the federal Fair Housing Act, 42 U.S.C. §3601 *et seq.* and implementing regulations, by:

    (a)    Making unavailable or denying dwellings to persons because of race, in violation of 42 U.S.C. § 3604(a) and implementing regulations; and

    (b)    Discriminating on the basis of race in the terms, conditions, or privileges of the provision of services or facilities in connection with the sale or rental of a dwelling, in violation of  42 U.S.C. § 3604(b) and implementing regulations.

183. By the actions described above, Defendants have engaged in, and continue to engage in, a policy, pattern, and practice of discrimination against African-American and other residents of the Coal Run/Langan Lane neighborhood due to their race, or the racial composition of their neighborhood, in violation of the Fair Housing Act.

184. The past and continuing acts and conduct of the individual Defendants, described above, were and are intentional, and have been carried out with malice and/or reckless indifference to the federally protected rights of Plaintiffs and the FHAA.

185. Defendants have intentionally, knowingly, and continuously engaged in the practices described above, with the intent of denying equal housing opportunities to Plaintiffs and individuals served by the FHAA.

## COUNT II

### Unlawful Discrimination Under 42 U.S.C. § 1981
(Individual Plaintiffs against All Defendants)

186. Plaintiffs reallege and incorporate by reference paragraphs 1-146 above, as if fully set forth herein.

187. By the actions described above, Defendants have continually denied Plaintiffs the same right to make and enforce contracts as is enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1981.

188. By the actions described above, Defendants have engaged in, and continue to engage in, a policy, pattern, and practice of discrimination against African-American and other residents of the Coal Run/Langan Lane neighborhood due to their race, or the racial composition of their neighborhood, in violation of 42 U.S.C. § 1981.

51

189.     The acts and conduct of the individual Defendants, described above, were and are intentional, and have been carried out with malice and/or reckless indifference to the federally protected rights of Plaintiffs.

190.     Defendants have intentionally, knowingly, and continuously engaged in the practices described above, with the intent of denying equal housing opportunities to Plaintiffs.

## COUNT III

### Unlawful Discrimination Under 42 U.S.C. § 1982
(Individual Plaintiffs against All Defendants)

191.     Plaintiffs reallege and incorporate by reference paragraphs 1-151 above, as if fully set forth herein.

192.     By the actions described above, Defendants have continually denied Plaintiffs the same right to hold property as is enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1982.

193.     By the actions described above, Defendants have engaged in, and continue to engage in, a policy, pattern, and practice of discrimination against African-American and other residents of the Coal Run/Langan Lane neighborhood due to their race, or the racial composition of their neighborhood, in violation of 42 U.S.C. § 1982.

194.     The past and continuing acts and conduct of the individual Defendants, described above, were and are intentional, and have been carried out with malice and/or reckless indifference to the federally protected rights of Plaintiffs.

195.     Defendants have intentionally, knowingly, and continuously engaged in the practices described above, with the intent of denying equal housing opportunities to Plaintiffs.

## COUNT IV

### Unlawful Discrimination Under 42 U.S.C. § 1983
### (Individual Plaintiffs against All Defendants)

196.    Plaintiffs reallege and incorporate by reference paragraphs 1-156 above, as if fully set forth herein.

197.    The above conduct of the Defendants has been taken under color of state and local law.

198.    By the actions described above, Defendants have deprived, and continue to deprive, Plaintiffs of the rights, privileges, and immunities secured by the United States Constitution and other laws.

199.    By the actions described above, Defendants have engaged in, and continue to engage in, a policy, pattern, and practice of discrimination against African-American and other residents of the Coal Run/Langan Lane neighborhood due to their race, or the racial composition of their neighborhood, in violation of 42 U.S.C. § 1983.

200.    The past and continuing acts and conduct of the individual Defendants, described above, were and are intentional, and have been carried out with malice and/or reckless indifference to the federally protected rights of Plaintiffs.

201.    Defendants have intentionally, knowingly, and continuously engaged in the practices described above, with the intent of denying equal housing opportunities to Plaintiffs.

## COUNT V

### Unlawful Discrimination Under Title VI of the Civil Rights Act
**(Individual Plaintiffs against Defendants City of Zanesville, Washington Township, and Muskingum County)**

202.     Plaintiffs reallege and incorporate by reference paragraphs 1-162 above, as if fully set forth herein.

203.     Defendants City of Zanesville, Washington Township, and Muskingum County, have been, and are, recipients of federal financial assistance, and are thus covered by Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d).  Defendants City of Zanesville, Washington Township, and Muskingum County have utilized federal financial assistance in the course of the actions described above.  Title VI and its implementing regulations prohibit recipients of federal monies from discriminating on the basis of race.

204.     By the actions described above, these Defendants have intentionally discriminated against Plaintiffs and/or have exhibited deliberate indifference to the rights of Plaintiffs in violation of Title VI and implementing regulations.

## COUNT VI

### Unlawful Discrimination Under Ohio Revised Code § 4112.02(H)
**(All Plaintiffs against All Defendants)**

205.     Plaintiffs reallege and incorporate by reference paragraphs 1-165 above, as if fully set forth herein.

206.     By the actions described above, Defendants have violated the rights of Plaintiffs and the FHAA by discriminating on the basis of race in the furnishing of facilities, services, or privileges in connection with the ownership, occupancy, or use of any housing accommodations, in violation of Ohio Revised Code § 4112.02(H).

207.    By the actions described above, Defendants have engaged in, and continue to engage in, a policy, pattern, and practice of discrimination against African-American and other residents of the Coal Run/Langan Lane neighborhood due to their race, or the racial composition of their neighborhood, in violation of Ohio Revised Code § 4112.02(H).

208.    The past and continuing acts and conduct of the individual Defendants, described above, were and are intentional, and have been carried out with malice and/or reckless indifference to the federally protected rights of Plaintiffs and the FHAA.

209.    Defendants have intentionally, knowingly, and continuously engaged in the practices described above, with the intent of denying equal housing opportunities to Plaintiffs and individuals served by the FHAA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant the following relief:

(a)    Declare that the actions of Defendants described above constitute discrimination on the basis of race in violation of the Fair Housing Act of 1968, Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, 1982, 1983, and Ohio Revised Code §4112.02(H);

(b)    Enter a permanent injunction prohibiting Defendants from engaging in the illegal discriminatory conduct described herein and requiring all Defendants to take all steps necessary to remedy the effects of such conduct and prevent similar occurrences in the future;

(c)    Award Individual Plaintiffs compensatory damages, in an amount to be determined at trial, to fully compensate them for injuries including, but not limited to, monetary loss, humiliation, embarrassment, emotional distress, the deprivation of statutory and

constitutional rights, and other damages they have suffered as a result of Defendants' actions described above;

(d)     Award Plaintiff FHAA compensatory damages, in an amount to be determined at trial, to fully compensate it for its diversion of resources, frustration of mission, and other damages it has suffered as a result of Defendants' actions described above;

(e)     Award Individual Plaintiffs and the FHAA punitive damages in an amount to be determined at trial that would punish individual Defendants for their intentional, malicious, willful, callous, wanton, and reckless disregard for Plaintiffs' rights, and would effectively deter individual Defendants from engaging in similar conduct in the future;

(f)     Award Plaintiffs their reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and 3613(c)(2), and O.R.C. § 4112.051(D);

(g)     Award Plaintiffs prejudgment interest; and

(h)     Award such other relief as the Court deems appropriate and just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


Dated: April 25, 2005

Respectfully submitted,

| | |
|---|---|
| /s/ Reed N. Colfax | /s/ Rachel K. Robinson per auth. |
| John P. Relman | Kimberly M. Skaggs (Bar No. 0061572) |
| Stephen M. Dane* (Bar No. 0013057) | Rachel K. Robinson* (Bar No. 0067518) |
| Reed N. Colfax | EQUAL JUSTICE FOUNDATION |
| Jennifer I. Klar | 88 East Broad Street, Suite 1590 |
| Carlie A. Ware | Columbus, OH 43215 |
| RELMAN & ASSOCIATES, PLLC | (614) 221-9800 |
| 1225 19th Street, N.W., Suite 600 | kms@equaljusticefoundation.com |
| Washington, D.C.  20036-2456 | rkr@equaljusticefoundation.com |
| (202) 728-1888 | |

jrelman@relmanlaw.com
sdane@relmanlaw.com
rcolfax@relmanlaw.com
jklar@relmanlaw.com
cware@relmanlaw.com

*Trial Attorney for Plaintiff Fair Housing
Advocates Association

**Counsel for Individual Plaintiffs and
Plaintiff Fair Housing
Advocates Association**

*Trial Attorney for Individual Plaintiffs

**Counsel for Individual Plaintiffs
and Plaintiff Fair Housing
Advocates Association**

/s/ Eliza Platts-Mills per auth._____
Eliza Platts-Mills (Bar No. 4442)
WASHINGTON LAWYER'S COMMITTEE
FOR CIVIL RIGHTS & URBAN AFFAIRS
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
(202) 319-1000
eliza_platts-mills@washlaw.org

**Counsel for Individual Plaintiffs and
Plaintiff Fair Housing
Advocates Association**

/s/ Beth A. Wilson per auth._____
Beth A. Wilson (Bar No. 0068766)
Jennifer W. Steves (Bar No. 0074804)
COOPER & WALINSKI, L.P.A.
900 Adams Street
Toledo, OH 43624-1505
(419) 241-1200
wilson@cooperwalinski.com
steves@cooperwalinski.com

**Counsel for Individual Plaintiffs
and Plaintiff Fair Housing
Advocates Association**

57

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on April 25, 2005, the foregoing was filed electronically.  Notice of this filing will be sent to all other counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


           /s/ Reed N. Colfax_____

           Relman & Associates, P.L.L.C.

           Counsel for Individual Plaintiffs and Plaintiff Fair

           Housing Advocates Association