**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **JERRY R. KENNEDY, et al.** | **Case No. C2-03-1047** |
| **Plaintiffs** | **Judge Algenon L. Marbley** |
| **v.** | |
| **CITY OF ZANESVILLE, et al.** | |
| **Defendants** | |

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANT,**
**CITY OF ZANESVILLE WITH MEMORANDUM IN SUPPORT**

: : :                    : : :                    : : :

Defendant, City of Zanesville ("City") moves this Court for summary judgment as to all claims against it, pursuant to Fed. R. Civ. Pro. 56. Even when construing the allegations in favor of plaintiffs, there are no issues of material fact and the City is entitled to judgment as a matter of law. This motion is supported by the testimony in depositions filed separately and the Exhibits attached to this Memorandum.

**BASERMAN LAW OFFICE**
/s/ Mark W. Baserman, Sr. Esq.
Ohio Attorney Regis # 0011387
45 South Monroe Street
Millersburg, OH 44654-1424
Telephone:  (330) 674-4300
Fax:  (330) 674-4818
E-Mail – mwb1953@neohio.twcbc.com

Attorney For Defendant, City Of Zanesville

## <u>TABLE OF CONTENTS</u>

Page

**Table Of Authorities**……………………………………………………………………………  **4**

**Memorandum In Support**……………………………………………………………………  **10**

**Definitions**……………………………………………………………………………………  **10**

**Statement Of The Case – Summary Of Pleading**……………………………………………  **10**

**Summary Of Argument**……………………………………………………………………  **12**

**Statement Of Facts**…………………………………………………………………………  **13**

**Law And Argument**…………………………………………………………………………  **20**

**A.**     **Standard For Summary Judgment**……………………………………………..  **20**

**B.**     **Plaintiff's Claims Are Barred By The Statute Of Limitations**………….................  **20**
       1.     Sec. 1981 Statute Of Limitations Is One Year……………………………… 20
       2.     FHA Statute Of Limitations Is Two Years………………………………...  21
       3.     The State Law Claim Statute Of Limitations Is One Year………………….22
       4.     Sec. 1982 Statute Of Limitations Is Two Years From The Last Act
               Of Defendants Alleged To Be Discriminatory…………………… **22**
       5.     Sec. 1983 Statute Of Limitations Is Two Years…………………………… 23
       6.     Title VI - Sec. 2000 Statute Of Limitations Is One Year………………….. 23
       7.     OCRC Complaint If Barred One Year After Filing Of The
               Discrimination Charge ……………………………………… **23**
       8.     Claims Of Non-Residents Are Barred ……………………………………… 23

       Conclusion/Summary of Statute Of Limitations Argument………………………… 24

**C.**     **No Continuing Violation Is Shown**……………………………………………24
       1.     Discrete Acts v. Continuing Pattern Or Violation ………………………… 24
       2.     Three Part Test For Continuing Violation…………………………………… 28
       3.     Failure To Provide A Public Amenity Does Not Create A Continuing
               Violation………………………………………………………… 30
       4.     Continuing Violation Theory Requires One Act Within The Statute Of
               Limitations ……………………………………………………… 30
       5.     Alleged Discrimination Against Third Parties Cannot Support A
               Continuing Violation Claim…………………………………………...30
       6.     No Proof Of Intentional Discrimination ……………………………………...31

**D.**     **Plaintiffs Have No Cause Of Action As They Did Not Request Water From
The City Of Zanesville**…………………………………………………………31

**E.**     **Plaintiffs Have No Cause Of Action Because They Are Not Members Of
Protected Class, And/Or The City Had No Knowledge Of Plaintiffs' Race**…...32

F.     **Plaintiffs Cannot Show The City Of Zanesville Was Required To Provide Water Or Denied Plaintiffs Water Due To City Policy**............................34

G.     **The Request For Injunction Is Moot And Plaintiffs Have No Standing To Assert A Claim For Injunctive Relief**........................................... 37

H.     **Recovery For Acts Prior To 1982 Is Prohibited**.................................. 37

I.     **Intent To Discriminate Is Not Shown**............................................ 37
    1.     Water Line Locations ...............................................................37
    2.     Historical Context – Ultimate Effect...........................................38

J.     **Punitive Damages Cannot Be Recovered Against A Municipality**............... 39

K.     **The City Has A Legitimate, Non-Discriminatory Reason For Its Actions**.......39

L.     **The City Spent No Federal Funds In Support Of Water Supply Outside The City**............................................................................... 41

M.     **The City Is Immune From State Law Claims**....................................41
    1.     Intentional Acts ................................................................... 42
    2.     Negligent Acts .................................................................... 42
    3.     Liability Imposed By Law ....................................................... 42
    4.     Additional Immunities Applicable .............................................. 43

N.     **Plaintiffs' Claims Are Barred By Laches, Waiver And Estoppel**............... 43

**Conclusion** ....................................................................... 44

**Proof Of Service**................................................................. 45

**Index Of Exhibits Attached In Support Of Motion** ............................... 46,47

**List Of Separately Filed Exhibits** .............................................. 48

## <u>TABLE OF AUTHORITIES</u>

**A.** **Standard For Summary Judgment**…………………………………………… **20**

<u>Authorities Cited</u>

<u>Cases</u>
<u>Anderson v. Liberty Lobby</u>, 477 U.S. 242 (1986)…………………………………………**20**
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) ………………………………………… **20**
<u>Matsushita v. Zenith Radio</u>, 475 U.S. 574 (1980)………………………………………… **20**

**B.** **Plaintiff's Claims Are Barred By The Statute Of Limitations**…………………**21**

**1.** **Sec. 1981 Statute Of Limitations Is One Year**……………………………**21**

<u>Authorities Cited</u>

<u>Cases</u>
<u>Sutton v. Bloom</u>, 710 F. 2d 1188 (6th Cir. 1983), <u>cert. denied</u>, 464 US 1073 (1984) …………....**21**
<u>Rivers v. Roadway Express</u>, 511 US 298 (1994) …………………………………………....**21**
<u>Jones v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369 (2004) …………………………………....**21**

<u>Constitutional Provisions and Statutes</u>
Ohio Rev. Code §4112.02………………………………………………………………… **21**
Ohio Rev. Code §4112.05………………………………………………………………… **21**
Ohio Rev. Code §4112.051………………………………………………………………**21**
28 U.S.C. §1658(a)………………………………………………………………………… **21**
42 U.S.C. 1981……………………………………………………………………………… **21**
42 U.S.C. 1982……………………………………………………………………………… **21**

**2.** **FHA Statute Of Limitations Is Two Years**………………………………**21**

<u>Authorities Cited</u>

<u>Constitutional Provisions and Statutes</u>
42 U.S.C. §3613(a) ……………………………………………………………………….. **21,22**

**3.** **The State Law Claim Statute Of Limitations Is One Year**……………..**22**

<u>Authorities Citied</u>

<u>Cases</u>
<u>Sutton et al. v. Bloom</u>, 710 F.2d 1188, (6th Cir. 1983) ……………………………………….. **22**

<u>Constitutional Provisions and Statutes</u>
Ohio Rev. Code § 4112.051……………………………………………………………...... **22**
Ohio Rev. Code §4112.02………………………………………………………………….**22**
Ohio Rev. Code § 4112.05………………………………………………………………..... **22**
42 U.S.C. §1981…………………………………………………………………………… **22**
42 U.S.C. §1982…………………………………………………………………………… **22**

**4. Sec. 1982 Statute Of Limitations Is Two Years From The Last Act Of Defendants Alleged To Be Discriminatory……………….… 22**

Authorities Cited

Cases

Middlebrook. v. City of Bartlett, 341 F. Supp. 2d 950 (W.D. Tenn. 2003) …………………….. **22**

LRL Properties v. Portage Metro Housing Authority, et al. 55 F.3d 1097 (6th Cir. 1995) ………..**23**

Constitutional Provisions and Statutes

Ohio Rev. Code §2305.10…………………………………………………………………… **22**

42 U.S.C. §1981……………………………………………………………………………… **22**

42 U.S.C. §1982……………………………………………………………………………… **22**

**5. Sec. 1983 Statute Of Limitations Is Two Years………………………… 23**

Authorities Cited

Cases

Browning v. Pendleton, 869 F. 2d 989 (6th Cir. 1989) (en banc), …………………………**23**

Dixon v. Anderson, 928 F. 2d 212 (6th Cir. 1991) …………………………………………… **23**

Cooey v. Strickland, _____ F. 3d _____, 2007 U.S. App. Lexis 4775 (6th Cir. 2007) ……………. **23**

Constitutional Provisions and Statutes

42 U.S.C. §1983………………………………………………………………………………… **23**

**6. Title VI - Sec. 2000 Statute Of Limitations Is One Year……………… 23**

Authorities Cited

Cases

Simmons v. Middle Tennessee State University 1997 U.S. App. Lexis 17751 (6th Cir. 1997) ……**23**

Johnson v. Railway Express Agency, Inc. 421 U.S. 454, 462 (1975). …………………….....…**23**

Constitutional Provisions and Statutes

42 U.S.C. §2000d……………………………………………………………………………...**23**

**7. OCRC Complaint If Barred One Year After Filing Of The Discrimination Charge …………………………………………….... 23**

Authorities Cited

Cases

OCRC v. Countywide Home Loans, Inc., 99 Ohio St. 3d 522, 794 NE 2d 56 (2003) …………… **23**

Constitutional Provisions and Statutes

Ohio Rev. Code § 4112.05……………………………………………………………………… **23**

**8. Claims Of Non-Residents Are Barred ………………………………… 23**

**Conclusion/Summary of Statute Of Limitations Argument…………………….24**

**C.** **No Continuing Violation Is Shown**………………………………………**24**

    **1.** **Discrete Acts v. Continuing Pattern Or Violation**………………………**24**

Authorities Cited

<u>Cases</u>
<u>Nat'l Railroad Passenger Corp. v. Morgan</u>, 536 US 101, 113 (2002) ………………………… **25**
<u>Havens Realty Corp. v. Coleman</u>, 455 US 363 (1982) ……………………………………… **25,28**
<u>Paschel v. Flagstar Bank</u>, 295 F. 3d 565, 573-574 (6th Cir. 2002) <u>cert denied</u> 537 US 1227 (2003) **25**
<u>National Advertising Company v. City of Raleigh</u>, 947 F. 2d 1158 (4th Cir. 1991) ……………… **26**
<u>Ward v. Caulk</u>, 650 F. 2d 1144 (9th Cir. 1981) ……………………………………………… **26**
<u>Ocean Acres Ltd. v. Dare County Bd. Of Health</u>, 707 F. 2d 103 (4th Cir. 1983) ………………… **26**
<u>Perez v. Laredo Junior College</u>, 706 F. 2d 731 (5th Cir. 1983) ……………………………… **26**
<u>Delaware State College v. Ricks</u>, 449 U.S. 250 (1980) ……………………………………… **26**
<u>Poe v. Memphis, Light, Gas & Water Div.</u>, 1999 U.S. App. Lexis 32083 (6th Cir. 1999) …………. **26**
<u>Dixon v. Anderson</u>, 928 F. 2d 212 (6th Cir. 1991) …………………………………………… **26**
<u>Boyd v. Occidental Dev. Ltd.</u>, 1995 US Dist Lexis 13189 (W. Dist., Mich., 1995) ……………… **26**
<u>Sandutch v. Muroski</u>, 684 F. 2d 252 (3rd Cir. 1982) ………………………………………… **27**
<u>Kurzawa v. Mueller</u>, 545 F. Supp. 1254 (S.D. Mich., 1982) ………………………………… **27**
<u>Lindsey, et al. v. Allstate Insurance Co., et al.</u>, 34 F. Supp. 2d 636, (W.D. Tenn. 1999), ……….. **27**
<u>EEOC v. Penton Industrial Publishing Co., Inc</u>. 851 F.2d 835 (6th Cir. 1988), ………………… **27,28**
<u>National Railroad Passenger Corp. v. Morgan</u>, 536 US 101 (2002) ………………………… **27**
<u>Sharpe v. Cureton</u>, 319 F. 3d 259, 268 (6th Cir. 2003), <u>cert. denied</u> 540 US 876 (2003) ………… **27**
<u>Boyd v. Occidental Development Ltd.</u>, 1995 U.S. Dist. Lexis 13189 (W.D. MI, 1995) ………… **28**
<u>Janikowski v. Bendix Corp.</u>, 823 F. 2d 945, 948 (6th Cir. 1987) …………………………………**28**
<u>Haithcock v. Frank</u>, 958 F. 2d 671, 678 (6th Cir. 1992) ………………………………………...**28**
<u>Dixon v. Anderson</u>, 928 F. 2d 212, 217 (6th Cir. 1991) ……………………………………… **28**
<u>Colin v. Blanchard</u>, 890 F. 2d 811, 815 (6th Cir. 1989) …………………………………………**28**
<u>LRL Properties v. Portage Metro Housing Authority, et al.</u> 55 F.3d 1097 (6th Cir. 1995) ………..**28,29**

    **2.** **Three Part Test For Continuing Violation**………………………………… **29**

Authorities Cited

<u>Cases</u>
<u>Tolbert v. ODOT</u>, 172 F. 3d 934 (6th Cir. 1999) ……………………………………………… **29**
<u>Kuhnle Brothers, Inc. v. County of Geauga</u>, 103 F. 3d 516 (6th Cir. 1997) ……………………… **29**
<u>Sevier v. Turner</u>, 742 F. 2d 262 (6th Cir. 1984) ……………………………………………… **29**
<u>National Advertising Co. v. City of Raleigh</u>, 947 F. 2d 1158 (4th Cir. 1991)………… …………. **30**
<u>Ward v. Caulk</u> 650 F. 2d 1144 (9th Cir. 1981) ………………………………………………**30**

    **3.** **Failure To Provide A Public Amenity Does Not Create A Continuing Violation** ………………………………………………………….. **30**

Authorities Cited

<u>Cases</u>
<u>Tolbert v. ODOT</u>, 172 F. 3d 934 (6th Cir. 1999) ……………………………………………… **30**
<u>Middlebrook v. City of Bartlett</u>, 103 Fed. Appx. 560 (6th Cir. 2004) …………………………… **30**

4. **Continuing Violation Theory Requires One Act Within The Statute Of Limitations**……………………………………………………………….. 30

Authorities Cited

Cases

National Railroad Passenger Corp. v. Morgan, 536 US 101 (2002) …………………………….30

5. **Alleged Discrimination Against Third Parties Cannot Support A Continuing Violation Claim** …………………………………………...31

Authorities Cited

Cases

Havens Realty Corp., et al. v. Coleman et al. 455 U.S. 363 (1982) ……………………………… 31

Boyd v. Occidental Development Ltd., 1995 US Dist. Lexis 13189 (W.D. Mich., 1995) ……… 31

6. **No Proof Of Intentional Discrimination** ………………………………… 31

Authorities Cited

Cases

Sharpe v. Cureton, 319 F. 3d 259, (6th Cir. 2003), cert. denied 540 US 876 (2003) …………… 31

Burzynski v. Cohen, 264 F. 3d 611 (6th Cir. 2001) …………………………………………… 31

EEOC v. Penton Indus Publishing Co., 851 F. 2d 835 (6th Cir.) 1988) …………………………31

D. **Plaintiffs Have No Cause Of Action As They Did Not Request Water From The City Of Zanesville**………………………………………………… 31

Authorities Cited

Cases

McDonnell Douglas v. Green, 411 U.S. 792 (1973) …………………………………………... 32

Sanghvi v. City of Claremont, 328 F. 3d 532 (9th Cir. 2003) …………………………………… 32

Middlebrook v. City of Bartlett, 341 F. Supp. 2d 950 (W.D. Tenn. 2003) ……………………… 32

Pollitt v. Bramel, 669 F. Supp. 172 (N.D. Ohio 1987) …………………………………………… 32

Constitutional Provisions and Statutes

42 U.S.C. §1981……………………………………………………………………………………….32,33

42 U.S.C. §1982……………………………………………………………………………………….32,33

42 U.S.C. §1983……………………………………………………………………………………….33

42 U.S.C. §3601……………………………………………………………………………………….32

E. **Plaintiffs Have No Cause Of Action Because They Are Not Members Of Protected Class, And/Or The City Had No Knowledge Of Plaintiffs' Race**….. 33

Authorities Cited

Cases

Jackson. v. Whitehouse (E.D. Mich.), 1993 U.S. Dist. Lexis 18766………………………………. 33

Robinson v. Adams 847 F.2d 1315 (9th Cir, 1987), …………………………………………… 33

Green v. Westgate Village Mobile Home Park, 2000 U.S. Dist. Lexis 6444 (N.D. Ohio, 2000),… 33

Shaare Tefila Congregation v. Cobb, 481 U.S. 615 (1987) ……………………………………… 33

Alexander v. Sandoval, 532 U.S. 275 (2001); ……………………………………………………… 33

Almendares v. Palmer 284 F. Supp. 2d 799, (N.D. Ohio, 2003) ........................................ **33**
Sharpe v. Cureton, 319 F. 3d 259, (6th Cir. 2003), cert. denied 540 US 876 (2003) .............. **34**
Burzynski v. Cohen, 264 F. 3d 611 (6th Cir. 2001) ...................................................... **34**
EEOC v. Penton Industrial Publishing Co., Inc. 851 F.2d 835, (6th Cir. 1988) .................... **34**
McDonnell Douglas v. Green, 411 U.S. 792 (1973) ...................................................... **34**
Havens Realty Corp. v. Coleman, 455 US 363 (1982) .................................................... **34**

Constitutional Provisions and Statutes
42 U.S.C. §1981......................................................................................... **34**
42 U.S.C. §1983......................................................................................... **34**
42 U.S.C. §2000d......................................................................................... **34**

      **F.**     **Plaintiffs Cannot Show The City Of Zanesville Was Required To Provide Water Or Denied Plaintiffs Water Due To City Policy**............................ **34**

Authorities Cited
Cases
Bakies v. Perrysburg, 108 Ohio St. 3d 361, 843 NE 2d 1182 (2006) ................................. **34**
State ex rel. McCann v City of Defiance 167 Ohio St. 313, 148 NE 2d 221 (1959) .................**34,35**
Monell v. Department of Social Services, 436 U.S. 658 (1978) ....................................... **35**
Oklahoma City v. Tuttle, 471 U.S. 808 (1985). ........................................................ **35**
Sproul v. Wooster 840 F.2d 1267 (6 Cir. 1988) ......................................................... **36**
Bakies, v. City of Perrysburg, 2004 Ohio 5231 (6th Dist. 2004) ..................................... **34,36**
United Farmworkers of Fl. Housing Project, Inc. v. Delray Beach, 493 F.2d 799 (5 Cir. 1974) ... **36**
Milkotin v. City of Los Angeles, 643 F.2d 652 (9th Cir. 1981) ......................................... **37**

Constitutional Provisions and Statutes
Ohio Rev. Code §743.12................................................................................. **36**
Ohio Consti., Art. XVIII, § 6......................................................................... **36**
Ohio Rev. Code §743.15................................................................................. **34-36**

      **G.**     **The Request For Injunctive Is Moot And Plaintiffs Have No Standing To Assert A Claim For Injunctive Relief**............................... **37**

Authorities Cited
Cases
City of Los Angeles v. Lyons, 461 US 95 (1983) ........................................................ **37**
Kallstrom v. City of Columbus, 136 F. 3d 1055 (6th Cir. 1998) .......................................**37**

      **H.**     **Recovery For Acts Prior To 1983 Is Prohibited**..................................... **37**

Authorities Cited
Cases
Dayton v. Pease, 4 Ohio St. 80 (1854) .................................................................. **37**
Haverlock v. Portage Homes, Inc., 2 Ohio St. 3d 36, 442 NE 2d 749 (1982) ........................ **38**

      **I**     **Intent To Discriminate Is Not Shown**................................................... **38**

Constitutional Provisions and Statutes

Ohio Rev. Code § 715.69 - .78...........................................................................  **39**

     **J.**    **Punitive Damages Cannot Be Recovered Against A Municipality**...............  **39**

Authorities Cited

Cases
City of Newport v. Fact Concerts, 453 U.S. 247, 271 (1981) ...................................39
Monell v Dept. of Social Services, 436 U.S.658 (1978), ..................................39

Constitutional Provisions and Statutes
Ohio Rev. Code § 2744.09..............................................................................  **39**
Ohio Rev. Code § 2744.05 ..............................................................................**39**
Ohio Rev. Code § 2744.01.............................................................................  **39**
42 U.S.C. §1983...........................................................................................  **39**

     **K.**    **The City Has A Legitimate, Non-Discriminatory Reason For Its Actions**......  **39**

Authorities Cited

Cases
McDonnell Douglas v. Green, 411 US 792 (973) .........................................  **40**
Texas Dept. of County Affairs v. Burdine, 450 US 248 (1981) .........................................40

     **L.**    **The City Spent No Federal Funds In Support Of Water Supply Outside The City**.......................................................................................  **41**

     **M.**    **The City Is Immune From State Law Claims**......................................  **42**

Authorities Cited

Cases
Fabrey v. McDonald Village Police Dept., 70 Ohio St. 3d 351, 639 NE 2d 31 (1994) .............  **42**
Whitehall ex rel. Wolfe v. OCRC, 74 Ohio St. 3d 120, 656 NE 2d 684 (1995) ....................  **42**
Butler v. Jordan, 92 Ohio St. 3d 354, 2001 Ohio 204, 750 NE 2d 544 (2001) ......................  **43**
Coleman v. Cleveland School Dist. Bd. Of Ed., 2004 Ohio 5854, __ NE 2d __ (8th Dist. 2004)...  **42**
Weigold v. ABC Appliance Co., 105 Fd. Appx. 702 (6th Cir. 2004)..................................  **42**

Constitutional Provisions and Statutes
Ohio Rev. Code § 2744.01..............................................................................  **42,43**
Ohio Rev. Code § 2744.02..............................................................................  **42,43**
Ohio Rev. Code § 2744.09..............................................................................  **42**

     **N.**    **Plaintiffs' Claims Are Barred By Laches, Waiver, Estoppel And Equitable Tolling**...................................................................................  **43**

Authorities Cited

Cases
National Railroad Passenger Corporation v. Morgan, 536 US 101 (2002) .........................  **44**
Kansas v. Colorado, 514 U.S. 673 (1995) ..........................................................  **44**
Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975) .................................................  **44**

<u>MEMORANDUM IN SUPPORT</u>

<u>DEFINITIONS</u>

As used in this Memorandum, the following definitions and abbreviations will be used.

1. "City" - City of Zanesville

2. "County" - County of Muskingum

3. "Twp." - Township of Washington

4. "EMWA"  - East Muskingum Water Authority

5. "WRWA-P " - Washington Rural Water Association – private group providing water to its' members from 1955 until 21 December 1984 and again after 16 April 1998.  During interim period, WRWA-L (see below) was a legally recognized water authority per Ohio law and provided water service to its' members.

6. "WRWA-L" -  Washington Rural Water Authority – public entity that was legally recognized as a water authority per Ohio law from 21 December 1984 to 16 April 1998.

7. "PWS"  - Public water service

8. "Coal Run area" – The area outside the City of Zanesville identified as the residence area of minority persons per Plaintiffs' <u>Complaint</u>, on the streets of Coal Run Road, Langan Lane, Circle Lane and Adamsville Road in Washington Township, Muskingum County, Ohio.  A map of the area is attached as City SJ Ex. X for reference purposes.  North is to the top of the exhibit.  The Coal Run area is north of I-70, east of SR-666, and west of SR-93.  The small dotted line shows the eastern boundary of the City of Zanesville.  The City is shown in the lighter color.  The dash-dot-dash line through the middle of the page running east and west is the division between Washington and Wayne Townships.

9. " City SJ Ex. __ " The exhibits referred to in this motion as "City SJ Ex. ___" will be filed with this motion.

10. "Depositions" – All deposition referred to in this motion will be filed as separate "Discovery" documents in the ECF system.  A separate nootice will be filed by listing the documents filed by "Doc. __" number.  A listing of the depositions to be filed is also attached to this motion.

<u>STATEMENT OF THE CASE – SUMMARY OF PLEADINGS</u>

Sixty-eight[1] individual plaintiffs and the Fair Housing Advocates Association ("FHAA") have filed a complaint against (1) the City of Zanesville ("City"), (2) Muskingum County ("County"),

---

[1]Sixty-nine are listed, but Martha Kennedy was voluntarily dismissed after filing of the <u>Fourth Amended Complaint</u> (Doc. 114)

(3) Washington Township ("Township") and elected officials from the county and the township. The plaintiffs have brought suit against the named Ohio political subdivisions for allegedly denying public water service since 1955. The original Complaint was filed on November 13, 2003 (Doc.1).

The operative pleading is the Fourth Amended Complaint (Doc 114). As to the City,[2] the allegations are that after denial of requests for PWS by minority persons, the City authorized PWS for non-minority persons in 1969, 1975, 1991[3] and finally 1998.[4] Plaintiffs plead six causes of action, as follows:

(1) The Fair Housing Act of 1968, 42 U.S.C. §3601, et seq.; (hereinafter "FHA")[5]

(2) 42 U.S.C. §1981; (hereinafter "§1981 Claim") – Right To Contract[6]

(3) 42 U.S.C. §1982; (hereinafter ""§1982 Claim") – Right To Hold Property[7]

(4) 42 U.S.C. §1983; (hereinafter ""§1983 Claim ") – Racial Discrimination[8]

(5) Title VI of The Civil Rights Act, 42. U.S.C. §2000d; (hereinafter ""Title VI"),[9] and

(6) Ohio Rev. Code §4112.02(H). (hereinafter " State Law Claim ")[10]

Twenty-five persons, including many of these plaintiffs filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") on 26 July 2002. FHAA filed a charge with OCRC on 31 July 2002. OCRC found probable cause on 12 June 2003. Plaintiffs and The Fair Housing Advocates Association filed their original complaint with this Court on November 13, 2003.[11] This court permitted the Ohio Civil Rights Commission ("OCRC") to be joined as a party plaintiff in this matter.[12] The OCRC filed their Joined Plaintiffs Complaint (Doc. 50) on 11 August 2004. OCRC had earlier filed an action in state court that was voluntarily dismissed after the Joined Plaintiffs Complaint

---

[2]Doc. 114, paragraphs 135-147
[3]Doc. 114, paragraph 141
[4]Doc. 114, paragraph 140
[5]See Fourth Amended Complaint, (Doc. 114) Count 1, paragraph 181
[6]See Fourth Amended Complaint, (Doc. 114) Count II, paragraph 187
[7]See Fourth Amended Complaint, (Doc. 114) Count III, paragraph 191
[8]See Fourth Amended Complaint, (Doc. 114) Count IV, paragraph 198
[9]See Fourth Amended Complaint, (Doc. 114) Count V, paragraph 203
[10]See Fourth Amended Complaint, ( Doc. 114) Count VI, paragraph 205
[11] Complaint, (Doc. 1)
[12]Order granting Motion To Join A Necessary Party, (Doc. 31).

was filed in this case.

## SUMMARY OF ARGUMENT

The City is entitled to summary judgment as to the individual Plaintiffs, the FHAA and the OCRC actions for the following reasons:

**Argument B -** Plaintiffs failed to file suit within the statute of limitations for any of the claims brought against the defendants. Although the plaintiffs have brought six causes of action, the longest statute of limitations of any of the claims is two years. Plaintiffs allege separate events occurring between 1955 to 1998. This is clearly beyond the two-year statute from the date of filing of the earliest OCRC charge on 26 July 2002 and this lawsuit on 13 November 2003 (Doc. 1).

**Argument C -** Plaintiffs cannot satisfy the statute of limitations based upon a continuing violation theory for a variety of reasons including

> (A)  there was no continuing violation as the case law defines this theory of liability;
> (B)  certain plaintiffs did not reside in the area within the statute of limitations;
> (C)  certain plaintiffs did not make a request for water;
> (D)   certain plaintiffs did not make a request for water within the statute of limitations
> (E)  certain plaintiffs are not a member of a protected class.[13]

**Argument D -** Fifty-six plaintiffs never requested PWS from the City, an element of the McDonnell Douglas test for the prima facie case of discrimination.

**Argument E -** Plaintiffs who (1) are not a minority, (2) never made a request for PWS, or (3) did not make a request in such a way as disclosing their race, cannot establish a denial of PWS based on race, an element of the prima facie case of discrimination

**Argument F -** No discriminatory "official policy" has been established; and Plaintiff can not show a right to PWS.

**Argument G -**  The injunctive relief request is moot, Plaintiffs' lack standing, and no future injury or lack of remedy is present.

**Argument H -** The City was immune for its actions through a 1982 decision of the Ohio Supreme overturning Ohio municipalities  sovereign immunity.

**Argument I -**        Plaintiffs cannot show intent to discriminate, an element of the <u>prima facie</u> case of discrimination.

**Argument J -**        The City is entitled to summary judgment on the issue of punitive damages because an Ohio municipality cannot be liable for punitive damages per statute and case law.

**Argument K -**        The City has legitimate, non-discriminatory reasons for its actions.

**Argument L -**        There is no evidence the City received federal funding for the purpose of providing public water to the plaintiffs' area of residence.

**Argument M -**        The City is entitled to immunity provided by state law on the pendant jurisdiction state law discrimination violation claim.

For these reasons and as outlined below, the City is entitled to summary judgment in this matter.

## STATEMENT OF FACTS

This case involves the claim of entitlement to public water services ("PWS"). Plaintiffs lived at various times in the Coal Run area in Washington Township ("Twp."), Muskingum County ("County"). It is undisputed that no plaintiff's claim arose while living within the geographic limits of the City of Zanesville  ("City"), as the Coal Run area is outside of the Zanesville corporate limits.  Prior to all Plaintiffs receiving PWS from Muskingum County (in early January 2004, at the latest), Plaintiffs used wells, hauled water or had their water delivered to their homes.

It should be noted that the requirement of hauling water for personal use is not unusual in predominately rural Muskingum County, large areas of which have been subjected to underground and strip mining.[14]  Even 33 year employee Robert Pletcher, Superintendent of the Water Plant for the City of Zanesville, hauled water to his residence, as no source of PWS is available to him.[15]

The census data available, while limited, indicates that nearly 28% of housing units

---

[13] See City SJ Ex. D – List of non-minority Plaintiffs
[14] City SJ Ex. M, see listing of number or mines and strip mines in a portion of Washington Township alone
[15] Pletcher deposition, page 12, line 22, page 37, line 17 and page 58, line 19

receive water by means other than public water systems or from private water companies,[16] and over 3.5% of the housing units in the county received water by means, other than a public water system, private water company, or well.

Historical context is needed to explain this situation. In 1955, the City passed Zanesville Ord. 5435 permitting "the extension of a water line outside the corporate limits of the City of Zanesville, along the Adamsville Road and Langan Lane."[17] All municipal corporations in Ohio (such as Zanesville) were and are expressly authorized, but not required by Ohio law to extend water pipes outside the city limits.[18]

The group seeking PWS from the City was a private non-governmental group. The private group was referred to by a number of names, all a variation of the names Adamsville Road Water Authority or Association or the Washington Rural Water Authority or Association (collectively referred to in this memo as "WRWA-P", i.e. WRWA - private group). WRWA-P paid for installation of the mains with private money and no City funds were used. WRWA-P had no connection to any named defendant in this case, as it was a private non-governmental group. WRWA-P was led by a board of citizens. Permission to extend the water line was based upon the six conditions in Zanesville Ord. 5435, including that the residents be responsible for the costs of construction and the residents agreeing to pursue annexation.[19] Annexation is a valid pre-condition of the extension of City services.[20]

No Plaintiff ever agreed to these conditions of water services or agreed to annexation or signed a pre-annexation agreement, as did other persons who were located physically outside the City that sought City services, despite being told pre-annexation or annexation was a pre-condition to receiving water service.[21]

---

[16]City SJ Ex. K – 1990 Muskingum County data from U.S. Census Bureau
[17] Zanesville Ordinance No. 5435, (City SJ Ex. E)
[18] Ohio Rev. Code Sec 743.12. This code section was also part of the General Code of Ohio, Sec 3966, dating back prior to the late 1920's. Suburban Real Estate Co. v. Village of Silverton, 31 Ohio App. 452, 167 N.E. 474 (1st Dist., 1929)
[19]City SJ Ex. E
[20] Bakies v. Perrysburg, 108 Ohio St. 3d 361, 2006-Ohio-1190, 843 NE 2d 1182 (2006)
[21] Robert Earl Kennedy deposition, page 42/line 20

14

John Michel, a board member of WRWA-P since the late 1960's/early 1970's[22] described the initial installation of water mains as approximately 1 mile along Adamsville Road and 1000' along Langan Lane.[23] This installation took place in approximately 1956.[24] The original work was paid for by WRWA-P,[25] no City funds being used.

Because the project was initiated by and for the benefit of residential users, the main line locations reflect the higher density of homes along Adamsville Road, and the portion of Langan Lane, north of Circle Drive,[26] there being less homes south of Circle Drive on Langan Lane and on Coal Run Road.

The WRWA-P received requests for water service.[27] The issues were decided by majority vote of the board members.[28] One board member from the inception of WRWA-L was Melvin Hill,[29] a resident in the area whose race was African American. The WRWA-P policy for persons seeking water from WRWA-P required an application, money to be paid up front,[30] and that the location of the property seeking water service had to be close to or join the original water mains on Adamsville Road and Langan Lane.[31] WRWA-P did not extend mains beyond those initial main lines. WRWA-P evaluated whether the proposed service location was near enough to the existing main lines. If they were close enough, the new person could tap in. If not, WRWA-P was not willing to extend the original lines.[32]

Mr. Michel indicated when an application was approved, it was only then that the information would be passed onto the City of Zanesville.[33] The decision about allowing persons to

---

[22] John Michel deposition, page 19, lines 3-16
[23] John Michel deposition, page 17, lines 8-10
[24] John Michel deposition, page 16, line 23
[25] John Michel deposition, page 131, lines 10-16
[26] See attached topographical map – City SJ Ex. M (created prior to March 1985)
[27] John Michel deposition, page 20, lines 19 to page 21, line 1
[28] John Michel deposition, page 20, line 7
[29] See page 2 of City SJ Ex. G, Mr. Hill was a board member from the inception of WRWA-L per this exhibit
[30] John Michel deposition, page 21, lines 5-6
[31] John Michel deposition, page 21, lines 11-15
[32] John Michel deposition, page 21, line 21 to page 22, line 1
[33] John Michel deposition, page 127, lines 5-13

receive water, to "come on the lines," was made by the WRWA-P board,[34] not the City.

No decisions of the WRWA-P board were based on the race of the person asking for water, to join the line;[35] nor did anyone ever indicate to Mr. Michel that race was a factor in the decision; nor did he overhear conversation indicating an individual was denied because of their race;[36] nor, in the association was there any racist conversation, e.g. no persons indicating they did not want anyone but white persons to get water.[37]

Denials of service were made  by WRWA-P because of a lack of proximity to the line, and because of lack of pressure in the lines,[38] but the City of Zanesville did not do anything to prevent or restrict persons from receiving water through WRWA.[39]  Fifty-six of the sixty-eight plaintiffs in this case did not make requests of the City for PWS.[40]

No mains were ever constructed by the City in 1955 or at any point thereafter.[41]  Over time the water demands on the lines exceeded the line capacity, and persons in the higher elevations (at end of 4" main) began to experience water outages and low pressure problems.[42]  In an attempt to remedy the situation, WRWA-L and the County funded the installation of a booster pump station on the WRWA-L Adamsville Road water line.[43]  This was completed by October 1996.[44]

The City did not own the water mains as they were installed by and paid for by the WRWA-P.[45]  Any requests for water from this water line was directed to the WRWA-P board. The decision to extend additional service was that of the WRWA-P and not the City.[46]

On 28 April 1967 the East Muskingum Water Authority ("EMWA") was established by

---

[34]John Michel deposition, page 127, lines 14-19
[35]John Michel deposition, page 128, line 3
[36]John Michel deposition, page 128, line 7
[37]John Michel deposition, page 135, lines 18 to page 136, line 3
[38]John Michel deposition, page 128, line 8 to page 129, line 5
[39]John Michel deposition, page 135, lines 12-17
[40]City SJ Ex. A
[41]Deposition of Robert Pletcher
[42]Pletcher deposition, page 158, lines 2-19, page 313, lines 10-20 and page 149, page 21
[43]City SJ Ex. V
[44]City SJ Ex. U
[45]Ohio Rev. Code § 743.15
[46]Bennett deposition, page 70, line 16

order of the Muskingum County Common Pleas Court pursuant to state law.[47]  The EMWA territory (aka, service area) was established by Court order and included the Coal Run area where all Plaintiffs resided. EMWA was a water authority and thereby given exclusive authority in it's designated geographic area over provision of new water services, including new water service to plaintiff's residences.

In recognition of this authority, the City signed an agreement in July of 1974 agreeing not to extend additional water service in areas under the jurisdiction of EMWA.[48]

EMWA could not profitably extend water line to the Coal Run area. The private group WRWA-P requested and received authority to create a separate water district out of a portion of the EMWA territory.

On 21 December 1984,[49] the Washington Rural Water Authority (Referred to as WRWA-L," i.e. WRWA – legally organized water authority) was established creating a legal entity recognized as a water authority per Ohio law.[50]  As such WRWA-L was given exclusive authority in it's geographic region over provision of water services, including new water service in the geographic area in which all Plaintiffs resided.

From 1984 to 1998, WRWA-L attempted to secure funding and otherwise promote the establishment of water services in it's geographic area, that included all the Coal Run area where all Plaintiffs reside or resided.  WRWA-L attempted to secure funding at least from (1) the Ohio Water Development Authority ("OWDA"), (2) OMEGA,[51] and (3) the United States Department of Agriculture – Farmers Home Administration ("USDA-FHA") for purposes of expanding, improving the water system,[52] but were never able to do so.[53]  The City of Zanesville was not eligible for these loans.[54]

---

[47]Ohio Rev. Code 6119.01, et. Seq., see also City SJ Ex. R
[48]City SJ Ex. T, paragraph 7
[49]City SJ Ex. G
[50] Ohio Rev. Code 6119.01 et seq.
[51]John Michel deposition, page 134, lines 12-19
[52]John Michel deposition, page 129, lines 6-12
[53]John Michel deposition, page 129, line 16
[54]John Michael deposition, page 134, line 24 to page 135, line 11

On 16 April 1998, WRWA-L was dissolved by the Muskingum Common Pleas Court.[55] After the April of 1998 dissolution of WRWA-L, no requests for extension of water service or separate tap requests were received by the City in the Coal Run area.[56]  In fact, no residential water line extension had been constructed outside the City since 1996.[57]

In the Court order dissolving WRWA-L, the City assumed the responsibility for provision of water to the area serviced by the WRWA when it dissolved.[58]  Therefore, the City had no responsibility to provide public water outside of its corporate limits to the Langan Lane/Coal Run Rd. area until April 16, 1998 at the earliest.  At that point, the City's responsibility was to maintain the service to the locations of the existing customers of WRWA-L and not any additional areas. The City has never had a legal responsibility to provide public water to the remainder of Langan Lane or Coal Run Rd.

The City performed no water line extension projects[59] from April 1996,[60] to June 2001,[61] Public Service Director, Jay Bennett's term of appointment.

The East Muskingum Water Authority was legally dissolved on February 28, 2003.[62] Much of Plaintiffs' confusion about water services arose as a result of the creation of EMWA and WRWA-L, their existence at the same time and that WRWA-P was operating prior to the creation of WRWA-L.  In addition, the regulations for Community Development Block Grants ("CDBG"), (a frequent source of funding for water projects) required a minimum of two public hearings per grant to seek public comment.[63]  Finally, while having no connection to the Washington Township trustees or the County, these groups did meet at the township fire station, the County Courthouse, etc. These

---

[55]City SJ Ex. L

[56]Sims deposition page 84, line 11 and page 84, line 14

[57]Sims deposition page 35, line 21 and Bennett deposition page 32, line 13. Bennett became Zanesville Public Service director in April 1996, (Bennett deposition page 20, line 7), and was immediately followed in that position by Sims, (Sims deposition, page 16, line 13)

[58]City SJ Ex. L

[59]Bennett deposition, page 32, line 13

[60]Bennett deposition, page 20, line 7

[61]Bennett deposition, page 10, lines 8 and 14

[62]City SJ Ex. S

organizations commissioned numerous studies of water service extensions over the years, including surveys, public meetings to judge interest in water services as well as regular meetings at which person attended to discuss extension of water service.

Of the 68 individual plaintiffs, 56 did not make a request to the City of Zanesville for PWS.[64]  Of the remaining 12, 11 did not make a request for PWS within 2 years from the date of filing of the OCRC charge.[65]  The remaining plaintiff, Judy Newman discussed PWS with City employee, Robert Pletcher, in telephone conversations.[66]

The record of plaintiffs requesting PWS from the City is summarized in City SJ Ex. C attached. These requests were for the individual's homes, not a system or main line extension, and not for all plaintiffs. The balance of the Plaintiff's either did not make a request for service from the City (See City SJ Ex. A) or the requests were not within the two statute of limitations period (See City SJ Ex. C – Part 2).  Only one plaintiff, Judy Newman inquired about water service in the two-year limitation period.

There is no evidence of requests for PWS to the City of Zanesville (beyond those summarized) while some plaintiffs testified in their depositions that they attended meetings regarding the provision of water, however, these meetings were not City meetings.  Therefore, the City cannot be liable for any of the causes of actions, because absent a request for water, there was no denial of water.

Questions were asked of the City's Fair Housing/Contract Compliance officers,[67] and neither had received complaints of discrimination concerning the Coal Run area water situation.[68]  Both indicating, November 1999 was the first time the Coal Run area water situation was raised with them, and they were unaware of any claim or information suggesting there was discrimination in the provision

---

[63]Connie Quarles deposition, page 25, line 1
[64]City SJ Ex. A
[65]City SJ Ex. B
[66]Judy Newman deposition, page 30, line 9 through page 32, line 12
[67]Connie Quarles deposition, page 21, line 17 (from 2000 to date) – city employee since 1990, page 21, line 17, and Joyce Hill deposition page 27, line 13 (from 1991-1955), page 28, lines 7-11
[68]Connie Quarles deposition, page 47, line 19 and Joyce Hill deposition, page 54, line 2

of water.[69]  The racial makeup of the Coal Run area was not discussed between officials or employees of the City,[70] no water decisions were based on race,[71] and no documents were found suggesting decisions were based on race.[72]

All Plaintiffs received access to PWS in December 2003/January 2004 as a result of a PWS project undertaken by Muskingum County.[73]

## III.    LAW AND ARGUMENT

## A.    STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. The United States Supreme Court[74] emphasized that a party opposing a motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." The court also specifically indicated:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defense to demonstrate in the manner provided by the rule prior to trial, that the claims and defenses has no factual basis[75]

When the moving party has carried its burden under Rule 56(C), the opponent must do more than simply show there is some doubt as to material facts.[76]

---

[69]Connie Quarles deposition, page 299, line 11, page 300, line 8 and Joyce Hill deposition, page 54, line 2
[70]Quarles deposition, page 237, line 11
[71]Quarles deposition, page 299, line 11
[72]Quarles deposition, page 300, line 8
[73]City SJ Ex. F
[74]Anderson vs. Liberty Lobby, 477 U.S. 242 (1986 )
[75]Celotex Corp. v. Catrett  477 U.S. 317 (1986).
[76]Matsushita Electric Industrial Co., v. Zenith Radio, 475 U.S. 574 (1980)

**B.      PLAINTIFF'S CLAIMS ARE BARRED BY THE  STATUTE OF LIMITATIONS**

**1.       SEC 1981 STATUTE OF LIMITATIONS IS ONE YEAR**

In Sutton v. Bloom[77], plaintiff alleged a violation of Ohio Rev. Code § 4112.02(H), 42 U.S.C. §1981 and § 1982. Plaintiffs alleged that defendant and neighbors prevented them from purchasing a home to keep minority persons out of the neighborhood. The court held that 42 U.S.C. §1981 does not contain a statute of limitations and therefore the applicable statute was that of the most analogous state law. In Sutton, the court found that "the essence of their [§1981] claim is racial discrimination in housing. . . this falls squarely within the purpose and reach of Ohio's fair housing laws"[78] and applied the statute of limitations contained in Ohio Rev. Code §. 4112.05, then 180 days, now one year per Ohio Rev. Code §. 4112.051.

While the provision of 42 U.S.C. § 1981 were amended to increase its coverage over post contract formation issues; the U.S. Supreme Court expressly held that those provisions are not retroactive, did not apply to existing cases, and could not be applied to reach conduct preceding the amendment.[79]  In 28 U.S.C. § 1658(a) Congress specified a 4 year statue of limitations for actions arising under federal statutes that were enacted after 1 December 1990, and did not specify there own limitations period. Since 42 U.S.C. § 1981 was in existence prior to the enactment of 28 U.S.C. § 1658(a) and since the pre-December 1, 1990 version of § 1981 allowed recovery under the theory of the alleged violation in this case, the causes of action here are not governed by 4 year statute of limitation in 28 U.S.C. § 1658(a).[80]

**2.       FHA STATUTE OF LIMITATIONS IS TWO YEARS**

The statute of limitations for a Fair Housing Act ("FHA") violation is two years.[81] The

---

[77] Sutton v. Bloom, 710 F. 2d 1188 (6th Cir., 1983), cert. denied, 464 US 1073 (1984), see
[78] Sutton at 1191. 20
[79] Rivers v. Roadway Express, 511 US 298 (1994)
[80] Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004)
[81] 42 U.S.C. §3613(a)(1)(A)

statute is tolled when an administrative action is pending.[82]  Therefore, plaintiffs are barred from proceeding on claims for alleged acts of discrimination that occurred (at a minimum before July 26, 2000), two years before the date the OCRC charge was filed.  Additional statute of limitations time ran after the OCRC probable cause decision (12 June 2003) until filing of this matter (13 November 2003), because the tolling provision applies only when the administrative proceeding is pending.

Calculating the two-year period set forth in the statute and removing the period tolled (between the date of OCRC charge was filed until the probable cause determination), claims for acts before 26 December 2000 are barred[83] by the two-year statute of limitations.

### 3.  THE STATE LAW CLAIM STATUTE OF LIMITATIONS IS ONE YEAR

The pendant jurisdiction state law claim brought pursuant to Ohio Rev. Code § 4112.02(H) has a one-year statute of limitations.[84]  In Sutton plaintiff alleged a violation of Ohio Rev. Code § 4112.02(H) and 42 U.S.C. §1981 and § 1982.  The Sutton Court applied the statute of limitation contained in Ohio Rev. Code § 4112.05(A), then 180 days, now one year per Ohio Rev. Code § 4112.051(A), running from the date the alleged unlawful discriminatory practice occurred.[85]

### 4.  SEC 1982 STATUTE OF LIMITATIONS IS TWO YEARS FROM THE LAST ACT OF DEFENDANTS ALLEGED TO BE DISCRIMINATORY

For the civil rights violations alleged pursuant to 42 U.S.C. §§1982 and 1983, the statute of limitations is also two years. The statute of limitations for these federal claims borrows the state statute of limitations for personal injury claims,[86] in Ohio a two year statute.[87] Therefore, plaintiffs are barred from bringing a 42 U.S.C. §1982 or a 42 U.S.C. §1983 for a civil rights violation that occurred two years after the last alleged act of the defendants that led to the cause of action.  The Sixth Circuit held that the appropriate statute of limitations for a §1983 claim arising in Ohio requires that actions be

---

[82]42 U.S.C. §3613(a)(1)(B)
[83]13 June 2003 to 12 November 2003 is 152 days.  The period from the charge filing (7/26/02) to 26 December 2000 is 578 days.  The combined total is 2 years (730 days/365 x2)
[84]Sutton et al. v. Bloom, 710 F.2d 1188, (6th Cir. 1983), Ohio Rev. Code § 4112.05(B)(1) and Ohio Rev. Code § 4112.051
[85]Ohio Rev. Code § 4112.05(B)(1) and § 4112.051(A)(1)
[86]Middlebrook. v. City of Bartlett, 341 F. Supp. 2d  950 (W.D. Tenn. 2003),

filed within two years after their accrual.[88] In this case, plaintiffs are barred from bringing a civil rights action. Proceeding on the last request made to the City for water where the request was denied, the statute expired in 2000. This assumes that plaintiffs even have standing. Defendant asserts that all plaintiffs do not have standing based upon the request for water for a home that is not plaintiffs, (See argument C-5 herein)

### 5. SEC 1983 STATUTE OF LIMITATIONS IS TWO YEARS

The statute of limitation for 42 U.S.C. § 1983 actions in Ohio is two years.[89]

### 6. TITLE VI - SEC 2000 STATUTE OF LIMITATIONS IS ONE YEAR

Lastly, the statute of limitations has also expired on the 42 U.S.C. §2000d claim. Because the statute does not contain a statute of limitations, the applicable statute is again borrowed from state law.[90] As discussed above the statute of limitations is one year.

### 7. OCRC COMPLAINT IS BARRED ONE YEAR AFTER FILING OF THE DISCRIMINATION CHARGE

As noted above, the two filings of charges of discrimination occurred earlier on 26 and 31 July 2002. The OCRC filed their Joined Plaintiffs Complaint[91] on 11 August 2004. OCRC initially filed a Complaint in the Muskingum Common Pleas Court on 19 December 2003,[92] more than 1 year after the filing of either charge.

The Ohio Supreme Court[93] previously held that Ohio law[94] requires suit be filed within 1 year of the filing of the charge with OCRC.

### 8. CLAIMS OF NON-RESIDENTS ARE BARRED

Assuming arguendo the claims of those plaintiffs residing outside the Coal Run area

---

[87]Ohio Rev. Code §2305.10
[88]LRL Properties v. Portage Metro Housing Authority, et al. 55 F.3d 1097 (6th Cir. 1995),
[89]Browning v. Pendleton, 869 F. 2d 989 (6th Cir. 1989) (en banc), and Dixon v. Anderson, 928 F. 2d 212 (6th Cir. 1991), and Cooey v. Strickland, _____ F. 3d _____, 2007 U.S. App. Lexis 4775 (6th Cir., 2007)
[90] Simmons v. Middle Tennessee State University 1997 U.S. App. Lexis 17751 (6th Cir. 1997), citing Johnson v. Railway Express Agency, Inc. 421 U.S. 454, 462 (1975).
[91]Doc. 50
[92]City SJ Ex. N
[93]OCRC v. Countywide Home Loans, Inc., 99 Ohio St. 3d 522, 794 NE 2d 56 (2003)

when the statute of limitations was running (City SJ Ex. B) survive the earlier analysis, they are additionally subject to dismissal because of lack of residence, i.e. they were not discriminated against, and suffered no damages within the statute of limitations.

<strong>Conclusion / Summary of Statute of Limitations Argument</strong>

In summary, plaintiffs' claims are barred as follows:

> (1) 42 U.S.C. § 1981, and Title VI (42 U.S.C. § 2000d), one year
> (2) 42 U.S.C. § 1982 and § 1983, two years from the alleged act creating the violation;
> (3) FHA (42 U.S.C. 3601), two years prior (i.e., 26 July 2000) to the filing of the OCRC charge on 26 July 2002; and
> (4) Ohio Rev. Code § 4112.02(H), one year after the alleged act creating the violation.
> (5) OCRC Complaint is barred one year after the filing of a charge with OCRC  (31 July 2003)
> (6) Those persons listed in City SJ Ex. B are barred from recovery as they were not discriminated against, and suffered no damages within the statute of limitations.

City's motion for summary judgment should be granted based upon the statute of limitations as the plaintiffs listed on the attached (1) City SJ Ex. A - as they did not make requests for water services; (2) City SJ Ex. B – as they did not reside in the Coal Run area within the statute of limitations period and (3) City SJ  Ex. C – as they did not make requests within two years prior to the OCRC filing

### C.  NO CONTINUING VIOLATION IS SHOWN

It is anticipated Plaintiff will claim the statute of limitations is extended by the continuing violation theory.

#### 1.  Discrete Acts v. Continuing Pattern Or Violation

The initial issue is the characterization of the claims alleged as (1) separate discrete acts of discrimination or (2) a continuing pattern, practices and policy claim of discrimination.  Drawing from Title VII cases, the Supreme Court has indicated "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete

---

[94]Ohio Rev. Code 4112.05(B)(7)

discriminatory act starts a new clock for filing . . ."[95]

The Supreme Court has ruled, as to FHA claims, that the statute of limitations of "continuing violation" discrimination claims should be treated differently than "discrete acts" of discrimination claims.[96]  Thus, where Plaintiffs assert unlawful practice  claims, the complaint is timely filed if the last asserted occurrence of the challenged practice occurred within the statute of limitations.[97]

It is not sufficient to establish a "continuing violation" that the acts are "serial violations."   The Supreme Court rejected the "serial violation" theory as a way of establishing a continuing violation.  The Court reversed a Circuit decision that attempted to link one act within the filing period to others outside the filing period.  The Circuit Court had indicated:

> "discriminatory . . . acts that are plausibly or sufficiently related to the act [within the filing period] may also be considered for the purposes of liability" . . .

> The Supreme Court indicated "with respect to this holding, therefore, we reverse."[98]

A continuing course of contact is also not sufficient to establish a continuing violation. The triggering event (e.g. a loan denied) is not turned into a continuing violation by post-denial written contact, additional denials, additional contact with a loan officer, etc.[99]

It is not sufficient to establish a continuing violation to prove that related discrete acts occur.[100]  It is not the relationship of the acts.  It is not "mere continuity, but on whether any present violation existed,"[101] that determines the existence of a discrete act.

The following have been determined not to be continuing violation claims:

1.    Sign ordinance adoption date triggers running of the statute of limitation even though

---

[95] <u>Nat'l Railroad Passenger Corp. v. Morgan</u>, 536 US 101, 113 (2002)

[96] <u>Havens Realty Corp. v. Coleman</u>, 455 US 363 (1982), at 380-381 (a unanimous decision of the Court)

[97] <u>Havens</u> at 381

[98] <u>Morgan</u> at 114

[99] <u>Paschel v. Flagstar Bank</u>, 295 F. 3d 565, 573-574 (6th Cir., 2002) cert den. 537 US 1227 (2003).

[100] <u>Morgan</u> at 111

[101] <u>Morgan</u> at 112

statute remains in effect everyday through the date of filing.[102]

2. Failure to promote date triggers running of the statute of limitations. Later conversation indicating intent to prevent Plaintiff from securing another job does not create a continuing violation.[103]

3. Initial application of regulating prohibition (ban on septic tanks on certain properties) triggered running of the statute of limitations, even though ban remaining in effect everyday through the date of filing of lawsuit.[104]

4. In an employment claim, denial of additional pay, denied of pay in retaliation for exercise of First Amendment rights, breach of contract and violation of <u>expo facto</u> constitutional provision were all triggered by specific events and are not continuing violations, but continuing effects of violations.[105]

5. Later contract date of termination of a teaching position was the effect of earlier alleged discriminatory tenure denial, not a new or continuing violation. Tenure denial was the statute of limitations trigger.[106]

6. Four denials of promotion and retaliation claims were distinct acts, not a continuing violation. Each event was a statute of limitations trigger.[107]

7. Denial of participation is retirement system is not a continuing violation, even if light of multiple denials over time and ongoing monthly pension loss. Initial denial is the trigger for statute of limitations.[108]

8. Earlier apartment rental denial not a continuing violation based on latter "tester" rental requests by persons who are not the plaintiffs. Denial date of rental was the trigger for the statute of limitations.[109]

9. Continued imprisonment is an effect of alleged unconstitutional act, not a continuing

---

[102]<u>National Advertising Company v. City of Raleigh</u>, 947 F. 2d 1158 (4th Cir., 1991)

[103]<u>Ward v. Caulk</u>, 650 F. 2d 1144 (9th Cir., 1981)

[104]<u>Ocean Acres Ltd. v. Dare County Bd. Of Health</u>, 707 F. 2d 103, 106 (4th Cir. 1983)

[105]<u>Perez v. Laredo Junior College</u>, 706 F/ 2d 731 (5th Cir. 1983)

[106]<u>Delaware State College v. Ricks</u>, 449 U.S. 250 (1980)

[107]<u>Poe v. Memphis, Light, Gas & Water Div.</u>, 1999 U.S. App. Lexis 32083 (6th Cir. 1999) – Publication limit, copy attached as City SJ Ex. Q

[108]<u>Dixon v. Anderson</u>, 928 F. 2d 212 (6th Cir. 1991)

act.[110]

10. The date of termination of parental rights, not the date the child returned to parents after reversal of termination order, was the trigger for the statute of limitations. Neither continued litigation including reversal of the termination order, nor lack of custody were continuing violations.[111]

Here the separate denials alleged for PWS are each discrete acts that have their own statute of limitations trigger, and are not a continuing violation. As such, each discrete act is subject to dismissal for failure to file within the statute of limitations.

The Sixth Circuit earlier recognize two categories of continuing violations:

(1) where there is some evidence of present discriminatory activity giving rise to a claim of

continuing violation and

(2) where there has been a long-standing and demonstrable policy of discrimination. [112]

As to the first category, the so-called "serial violations" theory, the Sixth Circuit in 2002 interpreting the Supreme Court decision in the National Railroad Passenger Corp. v. Morgan,[113] overturned all prior Sixth Circuit case law[114] addressing the serial violation theory, holding "plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitation period."[115]

Case law indicated this approach before and after the Sharpe decision, e.g. denial of a request for rental housing is a discrete act, such facts do not support a cause of action in the first category of continuing violations, i.e. they are not evidence of present discriminatory activity giving rise

[109]Boyd v. Occidental Dev. Ltd., 1995 US Dist Lexis 13189 (W. Dist., Mich., 1995)
[110]Sandutch v. Muroski, 684 F. 2d 252 (3rd Cir., 1982)
[111]Kurzawa v. Mueller, 545 F. Supp. 1254 (S.D. Mich., 1982)
[112]Lindsey, et al. v. Allstate Insurance Co., et al. (W.D. Tenn. 1999), 34 F. Supp. 2d 636 citing EEOC v. Penton Industrial Publishing Co., Inc. (6th Cir. 1988), 851 F.2d 835
[113]National Railroad Passenger Corp. v. Morgan, 536 US 101 (2002)
[114]Sharpe v. Cureton, 319 F. 3d 259, 268 (6th Cir. 2003), cert. denied 540 US 876 (2003)
[115]Sharpe at 268

to a claim of continuing violation[116] (absent one being within the limitation period).  Because the events are (1) final and complete act as of the date of denial and (2) the party is immediately aware of it,[117] both are additional reasons for holding that they are not a continuing violation.

For there be a continuing violation, plaintiffs must allege at least one specific discriminatory act which took place within the relevant statute of limitations.[118] There has been no discriminatory act alleged within two years filing of the original complaint (Doc. 1) in 2003, i.e. an act in 2001.

To establish the second category of continuing violations, Plaintiff "must demonstrate something more than the existence of discriminatory treatment in his case."[119]  There must be a "longstanding and demonstrable policy of discrimination"[120] in addition, proof is required of an "over-arching policy of discrimination,[121] "unrelated incidents of discrimination will not suffice to invoke"[122] this theory of continuing violation.

In the second category of continuing violation, and especially for that group of plaintiffs that never made a request for water services,[123] "without a specific, allegedly discriminatory act against . . . [the Plaintiff] . . . within the limitations period, mere existence of an alleged policy . . . will not toll the running of the statute of limitations."[124]

In LRL Properties reviewing a ruling on a Fed. R. Civ. Pro. 12(b)(6) motion, the Court held that even if faced with well plead allegations of intentional acts in support of a campaign against and a continuing conspiracy against Plaintiffs, the statute of limitations was not extended by the continuing violation theory as the defendants' decisions while having continuing effects "are a series of

---

[116]Boyd v. Occidental Development Ltd., 1995 U.S. Dist. Lexis 13189 (W.D. MI, 1995) at p. 13-14
[117]Boyd at 19
[118] EEOC v. Penton Industrial Publishing Co., Inc. (6th Cir. 1988), 851 F.2d 835.
Lindsey at 644. See also Havens Realty Corp., et al. v. Coleman et al. 455 U.S. 363 (1982)
[119]Haithcock, 958 F. 2d at 679
[120]Penton, supra at 838, quoted in LRL Properties at 1106
[121]Janikowski v. Bendix Corp., 823 F. 2d 945, 948 (6th Cir. 1987) quoted in LRL Properties at 1106.
[122]Haithcock v. Frank, 958 F. 2d 671, 678 (6th Cir. 1992) quoted in LRL Properties at 1106
[123]Those listed at City SJ Ex. A
[124]Dixon v. Anderson, 928 F. 2d 212, 217 (6th Cir. 1991) citing Colin v. Blanchard, 890 F. 2d 811, 815 (6th Cir. 1989)

discrete and separate acts that, at best, are separate incidents of discrimination, and are not sufficient, even when the plaintiffs' pleadings are liberally construed, to establish an over-arching policy of discrimination."[125]

**2.** <u>**Three Part Test For Continuing Violation**</u>

The Sixth Circuit has adopted a three-part inquiry in evaluating whether a continuing violation exists.[126]

1. The wrongful conduct must continue after the precipitating event that began the pattern,
2. Injury to Plaintiff must continue after the precipitating event, and
3. Further injury to Plaintiffs must have been avoidable, if the Defendant any time ceased wrongful conduct.

While state law provides the actual statute of limitations, federal law governs the question of when period begins to run.[127] The Circuit has also determined that a cause of action does not accrue until (1) minority Plaintiffs' request for service was made and denied, and (2) Plaintiff knew or had reason to know the Defendant was providing services to similarly situated non-minority persons.[128] This is a reasonable diligence standard.[129] It is this latter point that is most significant. Plaintiffs' <u>Complaint</u> alleges the last minority person's request for PWS was made and denied in 1988[130] (denial of request for service), and the last extension of service to a non-minority person was in 1998.[131] Yet, an OCRC charge and suit was not filed until 2002 and 2003 respectively. Plaintiffs knew or had reason to know in 1988 (and at least by 1998) that the extension of services was made. The longest statute began to run at that time and expired in 1990 (or 2000).

Here Plaintiffs' case fails the first test in <u>Tolbert</u>, because the alleged denial of water service, (the precipitating event), was a discrete event and time determinable.

Plaintiff's case fails the second part of the <u>Tolbert</u> test as well, i.e. as the alleged City

---

[125] <u>LRL Properties</u> at 1106
[126] <u>Tolbert v. ODOT</u>, 172 F. 3d 934 at 940 (6th Cir., 1999), <u>Kuhnle Brothers, Inc. v. County of Geauga</u>, 103 F. 3d 516, 522 (6th Cir. 1997)
[127] <u>Sevier v. Turner</u>, 742 F. 2d 262 (6th Cir. 1984)
[128] <u>Tolbert</u>, 172 F. 3d at 936
[129] <u>Sevier</u> at 273
[130] <u>Complaint</u> (Doc. 114) at paragraph 141.

conduct, (refusal of extension of new water service), as to each person was a single act, not a continual act.[132]  The Plaintiffs complaints are of a continuing <u>effect</u>, not the result of continuing allegedly unlawful <u>acts</u>,[133] (emphasis added).

More specifically stated a "continuing violation is occasioned by continual unlawful <u>acts</u>, not continual ill affects from an original violation."[134]

### 3. Failure To Provide A Public Amenity Does Not Create A Continuing Violation

Finally, Plaintiffs' claim fails the third <u>Tolbert</u> requirement, i.e. the City decision is not a continuing course of conduct.  As noted by the <u>Tolbert</u> court, the failure to provide a public amenity does not satisfy the continuing conduct theory indicating "Passive inaction, however, does not support a continuing violation theory."[135]  The Sixth Circuit has previously dealt with alleged discrimination by a City in provision of water services, and held that such denials may be time barred by the statute of limitations,[136] i.e. they are not continuing violations.

### 4. Continuing Violation Theory Requires One Act Within The Statute Of Limitations

Even if it is conceded <u>arguendo</u> that the claims here are properly considered a "continuing violation," dismissal is still appropriate.  There is no act of alleged discrimination within the statute of limitations, i.e. the last act of alleged discrimination, extending PWS to non-minority person was in 1998[137] (after denial to a minority person in 1988), beyond the longest statute of limitations. Absent one act within the statute, a violation is not made out.[138]

---

[131]<u>Complaint</u> (Doc. 114) at paragraph 141.
[132]<u>National Advertising Co. v. City of Raleigh</u>, 947 F. 2d 1158, 1161 (4th Cir., 1991)
[133]<u>National Advertising</u>, <u>supra</u>.
[134]<u>Ward v. Caulk</u> 650 F. 2d 1144 (9th Cir. 1981)
[135]<u>Tolbert</u> at 940
[136]<u>Middlebrook v. City of Bartlett</u>, 103 Fed. Appx. 560 (6th Cir. 2004) (copy attached – City SJ Ex. O)
[137]Doc. 114 at paragraph 141
[138]<u>Morgan</u> at 104

5. **Alleged Discrimination Against Third Parties Cannot Support A Continuing Violation Claim**

As to those Plaintiffs that made no request for PWS,[139] and the individual plaintiffs that made no request or PWS within the statute of limitations,[140] they must have standing to assert claims of discrimination allegedly committed against third persons.  Such claims ordinarily arise in "tester" cases, but a "tester" claim cannot take advantage of the continuing violation theory.[141]  As such, plaintiffs are left to assert the alleged specific denials of PWS only, all of which are outside the statute of limitations.

6. **No Proof Of Intentional Discrimination**

Moreover, the evidence must show some form of intentional discrimination (versus disparate impact) against the protected class of which Plaintiff is a member[142] to satisfy the continuing violation theory.  No intentional discrimination is shown here.

D. **PLAINTIFF HAVE NO CAUSE OF ACTION AS THEY DID NOT REQUEST WATER FROM THE CITY OF ZANESVILLE**

The plaintiffs were deposed and asked whether they made a request for public water from the City of Zanesville.  Fifty-six of the sixty-eight individual plaintiffs responded they did not make requests.[143]  Absent requests for PWS, the City cannot have discriminated against these individual plaintiffs.

---

[139]See City SJ Ex. A

[140]See City SJ Ex. C

[141]Havens at 381, Boyd v. Occidental Development Ltd., 1995 US Dist. Lexis 13189 (W.D. Mich., 1995) at page 10

[142]Sharpe at 266-267, see also Burzynski v. Cohen, 264 F. 3d 611, 618 (6th Cir. 2001) EEOC v. Penton Indus Publishing Co., 851 F. 2d  835, 838 (6th Cir.) 1988)

[143]See City SJ Exh. A – One person was not deposed and their denial is taken from City SJ Ex. P (Evelyn Kennedy)

For FHA violation claims, the Sixth Circuit follows the <u>McDonnell Douglas</u>[144] test. That test, as applied to the facts here, requires that plaintiff prove that

>    (1)     Plaintiff is a member of a protected class;
>    (2)     Plaintiff applied for PWS and was qualified to receive it;
>    (3)     PWS was denied despite being qualified to receive it; and
>    (4)     The City approved a PWS connection for a similarly situated non-protected class individual during a period relatively near the time Plaintiff was denied PWS.[145]

The prima facie case is not made out here as:

(1)     Plaintiffs did not make a request,

(2)     Plaintiffs were not denied, and

(3)     There is no showing that the last denial of service to a minority Plaintiff (in 1988) is close in time to the approval of water service for a non-minority person (in 1999), i.e. 10 years separation between the requests.

In <u>Middlebrook</u>,[146] plaintiffs alleged a violation of the FHA for not being able to obtain a building permit for water and sewer service. The court applied the <u>McDonnell Douglas</u> test in determining whether there was a violation.[147] Additionally, in alleging a FHA violation when plaintiffs were denied the rental of a trailer due to race, the court held that plaintiff established a prima facie case of a 42 U.S.C. §1981, 42 U.S.C. §1982, or a 42 U.S.C. §3601 claim must prove:

(1) plaintiff is a member of a protected class;

(2) plaintiff applied for and was qualified to rent or purchase the property;

(3) plaintiff was rejected; and

(4) the property remained available.[148]

Plaintiffs have not taken any action to satisfy the requirement of making a timely request. Plaintiffs were asked if they attended any meetings regarding water. They either responded they had

---

[144]<u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973)
[145]<u>McDonnell Douglas</u>, <u>supra</u> and <u>Sanghvi v. City of Claremont</u>, 328 F. 3d 532 (9th Cir., 2003)
[146] See <u>Middlebrook v. City of Bartlett</u>, 341 F. Supp. 2d 950 (W.D. Tenn. 2003); <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973)
[147]<u>Middlebrook</u>, <u>supra</u>.

not, or if they did attend a public meeting regarding water, plaintiffs could not testify that the meeting

was held by the City or that any City employees or officials were present.[149]  Finding that the specified

plaintiffs made no request for water, they do not satisfy the prima facie elements of a 42 U.S.C. §1981,

42 U.S.C. §1982, and a 42 U.S.C. §1983 claim. Therefore, the City is entitled to summary judgment.

E.    **PLAINTIFFS HAVE NO CAUSE OF ACTION BECAUSE THEY ARE NOT MEMBERS OF A PROTECTED CLASS AND/OR THE CITY HAD NO KNOWLEDGE OF PLAINTIFF'S RACE**

Some Plaintiffs cannot establish that they are a member of a protected class. This

argument extends also to those persons who the City could not have had knowledge of their race. Thus,

there are three groups of plaintiffs that cannot maintain their claims.

1.    Non-minority plaintiffs[150]

2.    Plaintiffs that made no requests for PWS[151]

3.    Plaintiffs that made a request, but did not do so face-to-face, i.e. the City could not have known their race.[152]

There are eleven plaintiffs that are not minorities,[153] three that had no personal contact with City

officials[154], and fifty-six who made no PWS requests.[155]  There is no reason for the City to have

knowledge of their race of any of these persons. All those persons are unable to establish the City denial

of requests based on race, as the City had no knowledge of their race.

The City cannot have discriminated against the plaintiffs on the basis of race, if the City

had no knowledge of or reason to know their race of any of these persons.[156] In Jackson, plaintiffs were

---

[148] Pollitt v. Bramel, 669 F. Supp. 172 (N.D. Ohio 1987)
[149] City SJ Ex. A  and C
[150] City Summary Judgment Exhibit D
[151] City Summary Judgment Exhibit A
[152] City Summary Judgment Exhibit C  - Part B
[153] See City SJ Exh. D attached
[154] City SJ Ex. C – Part B
[155] City SJ Ex. A
[156] Jackson. v. Whitehouse (E.D. Mich.), 1993 U.S. Dist. Lexis 18766, Robinson v. Adams (9 Cir, 1987), 847 F.2d 1315 Green v. Westgate Village Mobile Home Park (N.D. Ohio), 2000 U.S. Dist. Lexis 6444, citing Shaare Tefila Congregation v. Cobb, 481 U.S. 615 (1987); Alexander v. Sandoval, 532 U.S. 275 (2001); Almendares v. Palmer 284 F. Supp. 2d 799, (N.D. Ohio 2003),

an interracial couple, and brought a FHA claim when their offer to purchase a home was rejected. The court found that a prima facie case could not be established because the plaintiffs had never met the defendant and he had no knowledge of their race.

Additionally, knowledge of race is required to establish a 42 U.S.C. §1981 claim as that section of law requires a finding of intentional discrimination. In <u>Robinson</u>, plaintiff could not establish a 42 U.S.C. §1981 claim because they could not show the defendant had knowledge of plaintiff's race. This argument also applies to claims for a 42 U.S.C. §1983 violation and a 42 U.S.C. §2000(d) violation as in proving such claims, plaintiff must show intentional discrimination or a deprivation of rights due to race.[157]

Non-minority Plaintiffs[158] cannot maintain their cause of action under the FHA as the fundamental requirement is that the person be a member of a protected class,[159] absent being a member of a protected class, the Plaintiffs do not have standing.[160]

F.    **PLAINTIFFS CANNOT SHOW THE CITY OF ZANESVILLE WAS REQUIRED TO PROVIDE WATER OR DENIED PLAINTIFFS WATER DUE TO CITY POLICY**

It is not disputed that all Plaintiffs at the times they are claiming discrimination relevant to their claims herein, resided outside of the City.

Ohio law is clear that the City has not obligation to provide water or other City services outside its geographic boundaries.[161]  Ohio Rev. Code § 743.13 to the extent it requires a municipality to furnish water to noninhabitants, is unconstitutional.[162]

It is significant that <u>McCann</u> has a somewhat similar fact pattern as this case.  In that case, a private company installed a four mile water main extension from a City line, the new main being

---

[157]<u>Sharpe, Cohen</u> and <u>Penton Indus. Publishing</u>, <u>supra</u>
[158]See City SJ Ex. D.
[159]<u>McDonnell Douglas</u>, <u>supra</u>.
[160]<u>Havens Realty Corp. v. Coleman</u>, 455 US 363 (1982)
[161]<u>Bakies v. Perrysburg</u>, 108 Ohio St. 3d 361, 843 NE 2d  1182 (2006)
[162] <u>State ex rel McCann v City of Defiance</u> 167 Ohio St. 313, 319, 148 NE 2d  221 (1959)

located outside the City limits.  The party seeking water owned property adjoining the new main.  This is a stronger position than any plaintiff in this case, as to serve plaintiffs in this case would require at a minimum, extension of current water mains in order to serve plaintiffs, if not complete replacement of the entire water main system, as it is too small to serve the additional customers.  The Court held that the Ohio Rev. Code § 743.13 can not be read to require the City to furnish water, holding that it is unconstitutional and void as in conflict  with provisions of the Ohio constitution.[163]

Plaintiffs are unable to show that they were denied water due to an official City policy, as access to the lines was controlled by WRWA-P and WRWA-L.  Plaintiffs must establish that the City acted pursuant to official policy and that the policy is causally connected to a particular unconstitutional violation.[164]No official policy that the City acted in accordance with can be established as the cause of any violation of plaintiffs rights.

Plaintiffs responded to the interrogatories in part as follows;

**Interrogatory No. 16:**
**Please list each and every act that you claim the City of Zanesville engaged in to deny African-American neighborhoods access to public water service.**
**Response to Interrogatory No. 16:**
**Defendant City of Zanesville further refused to pursue a project to provide water to the Coal Run/Langan Lane neighborhood even after  being compelled to study such a project after a former official informed City officials that the refusal to provide water service was having a deleterious discriminatory effect on the predominantly African-American residents of the Coal Run/Langan Lane neighborhood.**

When asked about the alleged study and the identity of the former city official, plaintiffs had no knowledge of the information contained within the response, e.g. when asked to review her response, plaintiff Jessica Mirgon testified: "I don't even understand this"[165]

Even, if plaintiffs could establish a discriminatory official policy of the City that allegedly denied plaintiffs PWS, plaintiffs cannot establish a causal connection of this phantom policy to the denial of a constitutional right, because there is no requirement for the City to provide municipal

---

[163]McCann, at 319
[164]Monell v. Department of Social Services, 436 U.S. 658 (1978); Oklahoma City v. Tuttle, 471 U.S. 808 (1985).
[165]Jessica Mirgon depo., p. 45

services, specifically water, outside of its municipal boundaries.[166]   In <u>Bakies</u>, plaintiffs were extraterritorial users of the city's water and sewer services. When the city gave notice that the plaintiffs would have to agree to annexation in order to maintain the use of the city's services, plaintiffs sued. The court found that if there is no contractual obligation, a city is entitled to determine the conditions upon which it will sell water outside of its territory. In <u>Sproul</u>, although not a discrimination case, plaintiff brought suit against the city when he could not obtain extraterritorial expansion of water and sewer service for his proposed development. The court held that under Ohio law, a city has wide discretion over its services and has no obligation to provide extraterritorial services[167].

Ohio law provides that a City <u>may</u> sell water to customers outside the municipal limits,[168] but the City does not own the lines, until the property is annexed to the City and the City pays compensation for the lines.[169]  The lines are required to be repaired by the City.[170]

In this instance, the water system was overburdened and could not supply water to the existing base of customers.  This was the reason for denial of extension of service by WRWA-P and WRWA-L.  Even after improvements to the line service, i.e. the addition of a booster station in October 1996,[171] this was only to bring the existing customer base up to adequate service, not to expand service. This improvement, a booster pump station was not funded by the City,[172] and the pumping and equipment was returned to the purchaser when the booster pump  station ceased to be used.[173]

Even if we assume <u>arguendo</u>, the City ever had control over the water system sufficient to establish City liability, that control arose (if at all) at the point WRWA-L ceased to exist on 16 April

---

[166]<u>Bakies</u> supra.

[167] <u>Sproul v. Wooster</u> 840 F.2d 1267 (6 Cir. 1988); <u>Bakies, v. City of Perrysburg</u>, 2004 Ohio 5231 (6th Dist. 2004). See also <u>United Farmworkers of Fl. Housing Project, Inc. v. Delray Beach</u>, 493 F.2d 799 (5 Cir. 1974) (While a city may have no obligation to provide services outside of its territorial limits, once it does, it must do so in a nondiscriminatory manner).

[168]Ohio Rev. Code §743.12 and Ohio Consti., Art. XVIII, § 6

[169]Ohio Rev. Code §743.15

[170]Ohio Rev. Code §743.15

[171]City SJ Ex. U

[172]City SJ Ex. V

[173]<u>Sims</u> deposition  page 88,  line 6

1998.[174]  Up to that point in time, WRWA-P and WRWA-L made decisions concerning it's members and their access to water.  No liability exists for actions before that date.  From that date forward, no extension of mains was completed, and no denials of service occurred, the last being in 1988.[175]

In Milkotin, Plaintiffs alleged the [poor] neighborhood received inadequate municipal services over the years, which had the effect of lowering property values.  While Plaintiffs did not allege that the inadequate level of services was the result of race, they claimed that services were not distributed on an equal basis. In citing several cases, the court found that the Constitution does not provide an explicit right to municipal services.[176]

Plaintiffs cannot establish an official policy of the City or that they were constitutionally entitled to water. Therefore, the City is entitled to summary judgment on the 42 U.S.C. §1983 claim.

## G.    THE REQUEST FOR INJUNCTION IS MOOT AND PLAINTIFFS HAVE NO STANDING TO ASSERT A CLAIM FOR INJUNCTIVE RELIEF

Water service was extended to all plaintiffs still living in the Coal Run area by January 2004.[177]  No other allegations of alleged discrimination are present in the Complaint.  Plaintiffs have no remaining case or controversy with the City of Zanesville that would justify the equitable relief sought. Standing to seek injunctive relief depends on the likelihood of future injury to the Plaintiff.[178]  Absent a showing of continuing irreparable injury and a lack of adequate remedy at law, injunctive relief is not available.[179]  The City provides no services in the Plaintiff's locations,  as all Plaintiffs reside outside the City and do not receive any City services.

## H.    RECOVERY FOR ACTS PRIOR TO 1982 IS PROHIBITED

Beginning in 1840[180] through the 1982 decision of Ohio Supreme Court in Haverlock v.

---

[174]Judgment Entry dated 16 April 1998 In Re: Washington Rural Water Association Muskingum County Common Pleas Court, case #84-1039, City SJ Ex. L
[175]Doc. 114, paragraph 141
[176]Milkotin v. City of Los Angeles, 643 F.2d 652 (9th Cir. 1981)
[177]City SJ Ex. F (AG Doc. 00908)
[178]City of Los Angeles v. Lyons, 461 US 95 at 107-109 (1983)
[179]Kallstrom v. City of Columbus, 136 F. 3d 1055, 1068 (6th Cir. 1998)
[180]Dayton v. Pease, 4 Ohio St. 80 (1854)

<u>Portage Homes, Inc.</u>,[181] municipal corporations were immune for their actions.  As such, assuming <u>arguendo</u> the Court rules a continuing violation is established, any claims predating 1982 are extinguished.

## I.     <u>INTENT TO DISCRIMINATE IS NOT SHOWN</u>

The <u>prima facie</u> case of discrimination requires proof that the alleged denial of services resulted from discrimination.

### 1.     <u>Water Line Location</u>

James Wyles, a certified geographic information systems professional[182] examined water line development data and population makeup for five decades, based upon each census starting in 1960.[183]  He compared the water line locations and the racial makeup of the population and determined there was no relationship between race and available water service.[184]  For example, he determined there are areas of higher percentage African-American population both with and without PWS in the County as compared to the Coal Run area.[185]  There are areas in the county with a larger total number of people without PWS, then areas with lower population totals with PWS.[186]

In addition to there being no racial relationship, he determined there is no relationship between total population and water line location.[187]

This is not surprising as residential development alone is not the sole factor driving PWS.  Frequently, for example, the City will undertake economic development projects, including water projects solely or primarily for business development, as it expands the number of jobs for City residents and the income base generating more tax revenue to permit the City to provide further services,

---

[181]<u>Haverlock v. Portage Homes, Inc.</u>, 2 Ohio St. 3d 36, 442 NE 2d 749 (1982)
[182]<u>Wyles</u> deposition p. 144, line 9
[183]<u>Wyles</u> deposition page 17, line 18, page 18, line 4
[184]<u>Wyles</u> deposition page 49, lines 7-17, page 36, lines 12-19
[185]<u>Wyles</u> deposition, page 32, line 6-23
[186]James Wyles Deposition, page 8, line 8, page 29, lines 2-23
[187]Wyles deposition page 36, lines 21-24

examples given in testimony were JEDDs, Joint Economic Development Districts,[188] a development tool authorized by Ohio law.[189]

### 2.    Historical Context – Ultimate Effect

None of the residents within the City boundaries are without PWS, including 3,710 persons (14.5% of the City population) that indicates they are non-white.[190]

The percentage of minority-owned firms in the City exceed the state average of minority owned firms.[191]  The City is the most racially diverse area in Muskingum County in both number and percentage.

Connie Quarles, the City's Fair Housing and Contract Compliance administrator since 2000,[192] reports no complaints during that time concerning the Coal Run area.

Joyce Hill who held the same job, reports the same for the period 1991 to 1995 that she was employed.[193]

### J.  PUNITIVE DAMAGES CANNOT BE RECOVERED AGAINST A MUNICIPALITY

The United States Supreme Court has ruled punitive damages cannot be recovered against municipalities, even in Sec. 1983 actions.[194] For non-constitutional claims[195], Ohio law bars recovery of punitive damages against political subdivisions of the State, including municipalities.[196]

### K.    THE CITY HAS A LEGITIMATE, NON-DISCRIMINATORY REASON FOR ITS ACTIONS

Assuming arguendo, Plaintiff can make out a prima facie case, a rebuttable inference (only) of discriminatory conduct is all that is established.  Establishing a prima facie case means

---

[188]Michael Sims deposition, page 91/line 22
[189]Ohio Rev. Code § 715.69  - . 78
[190]City SJ. Ex. I, page 1, 2000 Census Quick Facts, calculated as 2000 population of 25,586 persons less 85.5% identified as "white person" = 3,710 non-white residents in the City of Zanesville
[191]City SJ Ex. I, page 2
[192]Quarles deposition, page 21, line 17
[193]Joyce Hill deposition, page 54, line 2, page 27, line 13, and page 28, lines 7-11
[194]City of Newport v. Fact Concerts, 453 U.S. 247, 271 (1981) and Monell v Dept. of Social Services, 436 U.S.658 (1978),
[195] Ohio Rev. Code Sec. 2744.09(E)

Plaintiff has met the burden of production, not persuasion.

If the Plaintiff makes out the prima facie case, the City must articulate legitimate, non-discriminatory reasons for taking the actions it did.  The City's burden is production, not persuasion. The ultimate burden of persuasion is always with the plaintiff, as upon proof of legitimate non-discriminatory reasons, plaintiff must prove those reasons are a pretext for discrimination.[197]

To satisfy its burden in this middle section of the three step process, the City "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the . . . decision had not been motivated by discriminatory animus.[198]  The City has legitimate, non-discriminatory reasons for its actions, a complete defense.

In light of this standard, the City's inability to provide PWS to the residences of the Plaintiff was caused by:

1.      City lack of ownership of the water lines in the Coal Run area

2.      Ownership control of the waterlines by WRWA-P and WRWA-L

3.      Insufficient infrastructure existed to provide services to all PWS users

   A.      No mains served the area of proposed growth of service, i.e. south of Circle Lane, Coal Run Road, etc.
   B.      The existing mains were insufficient to carry the additional water needed to serve area of proposed growth of service.

4.      City could not extend lines into other water district service areas.

5.      The City conducted no review of new applicants for PWS until termination of WRWA-L in April of 1998,[199] and as a result, did not deny anyone PWS.

6.      Significant and telling differences exist between the initial request for extension of water service in 1956 by WRWA-P and the later requests by the Plaintiffs in this case.  As indicated earlier, WRWA-P paid all expense to install water mains, water services lines to the homes, metering, etc.

---

[196] Ohio Rev. Code Sec. 2744.05, Political subdivision is a defined term per Ohio Rev. Code 2744.01(F) and includes municipal corporations.
[197] See McDonnell Douglas v. Green, 411 US 792 (973) Texas Dept. of County Affairs v. Burdine, 450 US 248 (1981)
[198] Texas Dept. of Comm. Affairs v. Burdine, 450 US 248, at 257 (1981)
[199] City SJ Ex. L

Plaintiffs did not agree to pay the expenses of any main extensions, or offer payment of them.

7.      Of the requests made, all requests for PWS were made on an individual basis, that is, not as a system extension or upgrade, as was done by WRWA-P originally.

8.      Plaintiffs (with the exception of Jerry Kennedy) were not located adjacent to the original water. Extension of service would require installation to new mains, and/or new main extensions.  Jerry Kennedy, after making requests in 1974 and 1979, indicates the sole reason he was not permitted to join the system was water pressure.[200]  His requests in 1974 and 1979 pre-dated the installation of a booster pump station for the line in question in October 1996.[201]

9.      Because of the time from original construction (1955-1956) to the plaintiffs' requests, the initial main lines were unable to provide sufficient water to serve the number of customers sought to be added, caused by the increase in water consumption per customer, not new customers being added, and the deposits that form on pipes, decreasing their size and correspondingly the volume of water they are able to carry.

10.     After City policy requiring annexation agreements or pre-annexation agreements be executed before extension of services were established, no Plaintiff requesting PWS sought annexation or sought a pre-annexation agreement.

**L.      THE CITY SPENT NO FEDERAL FUNDS IN SUPPORT OF WATER SUPPLY OUTSIDE THE CITY**

Count V of the Complaint alleges the City utilized federal financial assistance and intentionally discriminated against Plaintiffs[202] in the Coal Run area.

The only claimed project related to water service in the Coal Run area using federal funds has been described as a pumping or booster station installed on the Adamsville Road water line.[203]  This

---

[200]Jerry Kennedy deposition, page 175, line 1
[201]Jerry Kennedy's requests began in 1974 (Jerry Kennedy deposition page 184, line 19), and a meeting in 1979 (Jerry Kennedy deposition p. 86, line 19). Booster station was installed in 1996, (City SJ Ex. U)
[202]Complaint, paragraphs 202-203 (Doc. 114)
[203]Paragraph 146 of (Doc. 114)

project was not funded by the City,[204] and the equipment used was returned to the purchaser after the station was no longer used,[205] i.e. was not retained by the City.

### M.      THE CITY IS IMMUNE FROM STATE LAW CLAIMS

The City of Zanesville is a political subdivision.[206]  As such, Ohio law provides the City immunity for all activities,[207] subject to certain exceptions.  The Ohio Supreme Court has determined this immunity is constitutionally sound in challenges on both due process and equal protection grounds under both the Ohio and United States Constitution.[208]  While this immunity is not available in defense of claims based upon alleged U.S. constitutional or federal statutory violations,[209] it has not been ruled to be unavailable to discrimination claims outside the employment context.

The Ohio Supreme Court has indicated that OCRC has jurisdiction over employment discrimination claims related to employees of political subdivisions.  This is based upon the statutory exemption in the immunity statute contained in Ohio Rev. Code §2744.09(B) and (C)[210] related to employment and terms of employment.  The Court has not ruled that to other discrimination claims against a political subdivision, are subject to an immunity waiver.

### 1.      Intentional Acts

To the extent these allegations are considered intentional tort, they do not fall into any category of the statutory immunity waiver,[211] and the City is entitled to immunity and dismissal of this claim.[212]

### 2.      Negligent Acts

Negligent acts do not support discrimination complaints.[213]

---

[204]See City SJ Ex. V
[205]Sims deposition, page 88, line 6
[206]R.C. 2744.01(F)
[207]Ohio Rev. Code §2744.02(A)
[208]Fabrey v. McDonald Village Police Dept., 70 Ohio St. 3d 351, 639 NE 2d 31 (1994)
[209]Ohio Rev. Code 2744.09(E)
[210]Whitehall ex rel Wolfe v. OCRC, 74 Ohio St. 3d 120, 656 NE 2d 684 (1995)
[211]Ohio Rev. Code § 2744.02(B),(1)-(5)
[212]Coleman v. Cleveland School District Board Of Education, 2004 Ohio 5854, h/n 16 (8th Dist., 2004)
[213]Weigold v. ABC Appliance Co., 105 Fed. Appx. 702 (6th Cir. 2004)

### 3.　Liability Imposed By Law

Ohio law provides a complete grant of immunity for all political subdivisions and all functions,[214] except for five exceptions.[215] Of those five, four do not apply here.[216]

The sole remaining exception indicates:

"(5). . . a political subdivision is liable for . . .loss to person. . . when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code. . ."[217]

The requirements of this theory are that the liability be imposed "in direct or unmistakable terms, in an express manner."[218] The Ohio Supreme Court has held that even a statute requiring that a political subdivision "shall inspect," does not impose liability under this section.[219] Here liability for alleged Ohio Rev. Code Chap. 4112 violations is not specifically directed to political subdivisions, but is a general statute, not meeting the "expressly imposed upon the political subdivision" requirement of the immunity waiver.　As a result, no exception to the immunity is demonstrated.

### 4.　Additional Immunities Applicable

The City has further immunity[220] for actions required by law; authorized by law; necessary or essential to exercise powers of subdivision; acts within employee discretion with respect to policy making and planning by virtue of the dates and responsibilities of the office or position of the employee making the decision; and from the exercise of judgment or discretion in how to use equipment, materials, personal and other resources.

### N.　PLAINTIFFS CLAIMS ARE BARRED BY LACHES, WAIVER, ESTOPPEL AND EQUITABLE TOLLING

---

[214] R.C. § 2744.02 (A), (1)
[215] R.C. 2744.02 (B), (1)-(5)
[216] R.C. 2744.02 (B), (1) – vehicle operation
　　R.C. 2744.02(B),(2) – negligence with respect to proprietary functions
　　R.C. 2744.02(B), (3) – public roads
　　R.C. 2744.02(B), (4) – negligence on grounds and buildings of City
[217] R.C. 2744.02(B), (5) – liability imposed by statute
[218] See R.C. 2744.02(B)(5) and Butler, supra. at 357.
[219] Butler v. Jordan, 92 Ohio St. 3d  354 at 355 and 357, 2001 Ohio 204, 750 NE 2d 544 (2001)
[220] R.C. 2744.01(A)(2),(3) & (5)

The United States Supreme Court has indicated laches, waiver and estoppel may be defenses to a discrimination charge.[221] Laches requires (1) proof of lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.[222] Waiting from 1955, 1962, 1969 or 1975 until 2003 demonstrates a lack of diligence and the delay works prejudice to the defendant.

The Supreme Court has determined, that a party's actions that "improperly and substantially prejudiced the other party"[223] may bar recovery, i.e. where actual prejudice and the opposing party's conduct was not excusable.  As suggested in the concurring opinion of Mr. Justice Marshall in Albemarle, laches on the ground of passage of time putting "beyond reach evidence or testimony necessary to his case,"[224] is particularly compelling here, given facts dating back to 1955 and the intervening unavailability and death of numerous witnesses.

This is further made evident by review of the operative Complaint[225] that indicates the alleged events providing the basis for Plaintiff's claims occurring in 1962 or 1969, or 1975, with suit not being filed until November 13, 2003.[226]

None of the original City decision makers at the time of the 1955 ordinance (Council members, Mayor, etc.) are still alive, and the City's Public Service Directors for significant periods of time are deceased as well.[227]

Homeowners in the area of where lines ended who would have been able to assist in locating water line instillations and times of these activities are deceased, i.e. Stolls,[228] Roberts,[229] etc.

---

[221] National Railroad Passenger Corporation v. Morgan, 536 US 101 (2002) (employment discrimination claims per Title VII)
[222] Kansas v. Colorado, 514 U.S. 673, 687 (1995)
[223] Albemarle Paper Co. v. Moody, 422 U.S. 405, 424 (1975)
[224] Albemarle at 440-441
[225] Doc. 114
[226] Doc. 1
[227] Pletcher deposition, page 164, lines 22-25
[228] Pletcher deposition, page 159, line 5
[229] Pletcher deposition, page 159, line 6

The persons forming the original WRWA-P that approached the City of Zanesville for service extension are now deceased,[230] including board members Stewart Hoover,[231] William Knicley,[232] Ronald E. Smith,[233] Floyd Ethel,[234] and Melvin Hill.[235]

## CONCLUSION

For the reasons stated above, the City of Zanesville is entitled to summary judgment as a matter of law as to all claims against it by the individual Plaintiffs, the FHAA and the OCRC. If the court does not grant the City's motion for summary judgment in its entirety, the City respectfully requests the court grant the motion for summary judgment as to those persons listed in City Summary Judgment Exhibits A, B, C and D, as argued herein and for the City on the issue of punitive damages.

BASERMAN LAW OFFICE
/s/Mark W. Baserman, Sr., Esq.
Ohio Attorney Regis # 0011387
45 South Monroe Street
Millersburg, OH 44654-1307
Telephone:  (330) 674-4300
Fax:  (330) 674-4818
E-Mail: mwb1953@neohio.twcbc.com

Attorney for Defendant, City of Zanesville

### Proof of Service

I hereby certify that on the 14th day of March 2007, a copy of the foregoing pleading entitled Motion For Summary Judgment Of Defendant, City Of Zanesville With Memorandum In Support was filed electronically with the Clerk of this Court.  Notice of this filing will be sent to all parties by operation of his Court's electronic filing system.  Parties may access this filing through the Court's system.

BASERMAN LAW OFFICE
/s/ Mark W. Baserman, Sr. Esq.
Ohio Attorney Regis # 0011387
Attorney for Defendant, City of Zanesville

---

[230]John Michel deposition, page 16, line 21 to page 17, line 22
[231]John Michel deposition, page 17, line 18
[232]John Michel deposition, page 17, line 19
[233]John Michel deposition, page 221, lines 7, 13
[234]City SJ Ex. J
[235]City SJ Ex. H

<u>**Index Of Exhibits Attached In Support Of Motion**</u>

**City of Zanesville – Summary Judgment Exhibits attached to this pleading**

**City SJ Ex. A** – List of Plaintiffs that did not make requests to the City of Zanesville for water service, extracted from deposition transcripts.

**City SJ Ex. B** – List of Plaintiffs that did not reside in the Coal Run area within the two-year period (immediately before filing of the OCRC charge on 26 July 2002) 26 July 2000 – 26 July 2002, extracted from deposition transcripts.

**City SJ Ex. C** – List of Plaintiffs that made requests for water service to the County of Zanesville, but not within the two year period (immediately before filing of the OCRC charge on 26 July 2002), 26 July 2000 – 26 July 2002, extracted from deposition transcripts.

**City SJ Ex. D** - List of Plaintiffs that identify their race as non-minority extracted from deposition transcript or birth certificates.

**City SJ Ex. E** – City of Zanesville, Ordinance 5435

**City SJ Ex. F** – E-mail Joyce Hill to Rachel Robinson, et al. (AG Doc. 00908) – 7 January 2004

**City SJ Ex. G** – <u>Journal Entry</u> (WRWA-L established and Melvin Hill appointed trustee), filed 21 December 1984, <u>In Re: Application of the Board of County Commissioners of Muskingum County, Ohio for the Establishment of the Washington Rural Water Association</u>, Muskingum County Common Pleas Court, Case No. 84-1039

**City SJ Ex. H** – <u>Journal Entry</u> (Melvin Hill deceased), filed 2 March 1995, <u>In Re: Application of the Board of County Commissioners of Muskingum County, Ohio for the Establishment of the Washington Rural Water Association</u>, Muskingum County Common Pleas Court, Case No. 84-1039

**City SJ Ex. I** – United States Census Bureau, State and County Quick Facts – Zanesville, Ohio

**City SJ Ex. J** – Statement of Clinton Wey Cameron

**City SJ Ex. K** – United States Census Bureau, American Fact Finder, <u>DP-5 Housing Characteristics: 1990</u>, Muskingum County, Ohio (p. 1 of 3 only)

**City SJ Ex. L** – Judgment Entry (WRWA-L dissolved), filed 16 April 1998, <u>In Re: Application of the Board of County Commissioners of Muskingum County, Ohio for the Establishment of the Washington Rural Water Association</u>, Muskingum County Common Pleas Court, Case No. 84-1039

**City SJ Ex. M** – Topographical Map (created prior to March 1985) and cover letter of March 1985.

**City SJ Ex. N** – <u>Complaint</u>, filed 19 December 2003, OCRC v. City of Zanesville, et al., Muskingum County Common Pleas Court, Case No. CH2003-0696

**City SJ Ex. O** – <u>Middlebrook v. City of Bartlett</u>

**City SJ Ex. P** – <u>Plaintiffs' Corrections To Third Stipulations Regarding Plaintiff, Evelyn Kennedy's Personal Requests For Water</u> (re: Evelyn Kennedy, no personal requests for water to City representatives)

**City SJ Ex. Q** – <u>Poe v. Memphis, Light, Gas and Water Div</u>.

**City SJ Ex. R** – (establishment of EMWA) <u>Journal Entry</u>, dated 28 April 1967, <u>In Re: Application of the Board of County Commissioners of Muskingum County, Ohio for the establishment of the East Muskingum Water Authority</u>, Case No. 45463

**City SJ Ex. S** – (dissolution of EMWA) <u>Judgment Entry</u>, dated 28 February 2003, <u>In Re: Application of the Board of County Commissioners of Muskingum County, Ohio for the establishment of the East Muskingum Water Authority</u>, Case No. 45463

**City SJ Ex. T** - <u>Agreement</u>, dated 17 July 1974, EMWA/City of Zanesville (Para 7 - City agrees not to extend water services into EMWA jurisdiction)

**City SJ Ex. U** - (Deposition Ex. 325) <u>Memo</u>, 3 October 1996, Adamsville Road Booster Pump Station (in operation)

**City SJ Ex. V** - (Deposition Ex. 43) <u>Letter</u>, 20 November 1995, funding for Adamsville Road Booster Pump Station

**City SJ Ex. W** – (Deposition Ex. 36) Board of Trustees, Washington Township, Resolution 2001-4

**City SJ Ex. X** – Map, Coal Run area, Hampton Publishing Co. portion of <u>Zanesville & Muskingum County 2002 Map</u>

**City SJ Ex. Y** - (Deposition Ex. 33) <u>Defendant Washington Township's Answers To Plaintiffs' First Set Of Interrogatories</u> (answers begin on page 19)

**City SJ Ex. Z** – <u>Simmons v. Middle Tenn. St. Univ</u>.

**List Of Seperately Filed Exhibits**

Depositions of

| Filing # | # | Witness name |
|---|---|---|
| Doc__ | 14 | Jay Bennett |
| Doc__ | 4 | Paul Bunting - Washington Twp. Trustees |
| Doc__ | 10 | Clint Cameron - Washington Twp. Trustees |
| Doc__ | 7 | Doug Culbertson - Washington Twp. Trustees |
| Doc__ | 17 | The Honorable Joseph A. Gormley |
| Doc__ | 36 | Joyce Hill |
| Doc__ | 1 | Gerald "Red" Howard |
| Doc__ | 11 | Ed Kenily - Muskingum Cty Comm |
| Doc__ | 15 | David Kreis |
| Doc__ | 16 | James Krischak |
| Doc__ | 13 | Don Madden - Muskingum Cty Comm |
| Doc__ | 3 | John Michel |
| Doc__ | 12 | Dorothy Montgomery - Muskingum Cty Comm |
| Doc__ | 83 | Robert Pletcher |
| Doc__ | 6 | Mike Sims |
| Doc__ | 79 | Connie Quarles |
| Doc__ | 97 | James Wyles |

Plaintiffs Depositions

| Filing # | # | Witness name |
|---|---|---|
| Doc. ___ | 2. | Jerry R. Kennedy |
| Doc | 8. | Richard Kennedy, Sr. |
| Doc | 5. | Cynthia Hairston |
| Doc | 42. | Barbara Chapman |
| Doc | 57. | Audrey Ford |
| Doc | 56. | Thomas Ford |
| Doc | 89. | Karen Gilbert |
| Doc | 43. | Lynn Hairston |
| Doc | 52. | Doretta Hale |
| Doc | 58. | Mark Hale |
| Doc | 66. | Regina Hale |
| Doc | 23. | Theodore Rodney Hale |
| Doc | 65. | Ellen Harvey |
| Doc | 26. | James Hill |
| Doc | 76. | Jeff Hill |
| Doc | 53. | John Hill |
| Doc | 28. | Kathleen Hill |
| Doc | 30. | Dennis Kennedy |
| Doc | 50. | Jeanene Kennedy |
| Doc | 78. | Marcus Kennedy |
| Doc | 59. | Marsha Kennedy |
| Doc | 29. | Marvin Kennedy, Sr. |
| Doc | 44. | Mary Kennedy |
| Doc | 27. | Michael Kennedy |

| Doc | 71. | Nancy Kennedy |
|-----|-----|---------------|
| Doc | 61. | Rebecca Kennedy |
| Doc | 24. | Richard Kennedy, Jr. |
| Doc | 41. | Robert Kennedy |
| Doc | 68. | Shawn Kennedy |
| Doc | 72. | Thomas Levi King |
| Doc | 25. | Julia Landkrohn |
| Doc | 38. | Donna Lewis |
| Doc | 62. | John Paul Mayle |
| Doc | 64. | Glenna McConnell |
| Doc | 74. | James McCuen |
| Doc | 48. | Sondra McCuen |
| Doc | 67. | Jessica Mirgon |
| Doc | 73. | Bryan Newman |
| Doc | 33. | Goldie Newman |
| Doc | 32. | Judy Newman |
| Doc | 69. | Baranda Paynter |
| Doc | 40. | Erin Thompson-Walker |
| Doc | 77. | Coty Tomson |
| Doc | 37. | Mark Walker, Sr. |
| Doc | 70. | Nora Walker |
| Doc | 35. | Lorena Hill |
| Doc | 47. | Robert Hill |
| Doc | 75. | Roger Hill |
| Doc | 49. | Bernard Kennedy |
| Doc | 46. | Donald Kennedy |
| Doc | 51. | Ricky Lee Kennedy |
| Doc | 22. | Frederick H. Martin |
| Doc | 60. | Paul C. Martin |
| Doc | 45. | Richard L. Martin |
| Doc | 54. | Tommy W. Martin |
| Doc | 31. | John McCuen |
| Doc | 55. | Jacquelene Norvet |
| Doc | 39. | Carolyn Page |
| Doc | 63. | Tammy Scott |
| Doc | 90. | Alice Stokes |
| Doc | 91. | Kay Turner |
| Doc | 86. | Christine Kennedy |
| Doc | 84. | Joshua Kennedy |
| Doc | 93. | Gary Mayle |
| Doc | 87. | Julie Hill-Mayle |
| Doc | 85. | Violet Tomson |
| Doc | 34. | Helen McCuen |