**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JERRY R. KENNEDY, et al.,** | : | **Case No. C2-03-1047** |
| **Plaintiffs** | : | **Judge Algenon L. Marbley** |
| | : | **Magistrate Mark R. Abel** |
| **CITY OF ZANESVILLE, et al.,** | : | |
| **Defendants.** | : | |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS WASHINGTON TOWNSHIP, CLINT W. CAMERON, PAUL R. BUNTING AND DOUGLAS CULBERTSON

Defendants Washington Township (hereinafter "Township"), Clint W. Cameron, Paul R. Bunting and Douglas Culbertson, respectfully move this Court for summary judgment pursuant to Fed. R. Civ. Pro. 56. Even when construing the allegations in favor of Plaintiffs, there are no genuine issues of material fact in dispute and these moving Defendants are entitled to judgment as a matter of law.

The basis for this Motion is more fully set forth in the attached Memorandum in Support.

Respectfully submitted,

*/s/ Michael J. Valentine*
Michael J. Valentine, Esq. (#0038806)
Paul-Michael La Fayette (#0067031)
Counsel for Defendants,
***Washington Township, Paul Bunting,
Doug Culbertson, and Clint Cameron***
**REMINGER & REMINGER CO., L.P.A.**
Capitol Square
65 E. State St., Ste. 400
Columbus, Ohio 43215
614.228.1311 / Fax: 614.232-2410
E-Mail: mvalentine@reminger.com
            plafayette@reminger.com

## **TABLE OF CONTENTS**

Page

Table of Authorities ............................................................................................. 4-5

Statutes ..................................................................................................................... 5

Memorandum In Support ......................................................................................... 6

Definitions ................................................................................................................ 6

Statement Of The Case – Summary Of Pleadings ............................................... 6-7

Summary Of Argument ......................................................................................... 7-9

Brief Statement Of Facts ..................................................................................... 9-17

    A.    Washington Township and Trustees ........................................................ 9

    B.    History ..................................................................................................... 11

Law And Argument ........................................................................................... 17-28

    A.    Summary Judgment Standard ................................................................. 17

    B.    Plaintiffs Have Failed To Establish A Prima Facie Case For Discrimination Claims Brought Pursuant to 42 U.S.C. §§ 1981, 1982 and 3601 .......................... 18

    C.    Plaintiffs Have Failed To Establish A Prima Facie Case For Discrimination Claims Brought Pursuant to 42 U.S.C. § 1983 ....................................... 20

    D.    Plaintiffs Have Failed to Establish A Prima Facie Case For Discrimination Claims Brought Pursuant to Title VI of the Civil Rights Act ............................ 21

    E.    Plaintiffs Have To Establish Unlawful Discrimination Under R.C. 4112.02(H) ..23

    F.    The Trustees Were Not Public Officials At All Times Pertinent to Plaintiffs' Claims ..................................................................................................... 23

        i.    Doug Culbertson ........................................................................ 23

        ii.    Clint Cameron ............................................................................ 24

        iii.    Paul Bunting ............................................................................... 24

    G.    Plaintiffs' Claims Are Barred By the Respective Statutes of Limitation .............. 24

    i. 42 U.S.C. § 1981, 42 U.S.C. § 1982 and R.C. 4112.02(H) ......................24

    ii. 42 U.S.C. § 2000d......................................................................................26

    iii. 42 U.S.C. § 1983 and 42 U.S.C.§ 3601 ...................................................26

  H. The Request for Injunction is Moot .......................................................................27

  I. Punitive Damages Cannot Be Recovered Against A Municipality........................27

Conclusion ...........................................................................................................................28

Proof Of Service ..................................................................................................................28

## TABLE OF AUTHORITIES

*Anderson vs. Liberty Lobby*, 477 U.S. 242 (1986)..........................................................17

*Buchanan v. City of Bolivar,* 99 F.3d 1352, 1356 (6th Cir. 1996)..................................22

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ...............................................................15

*City of Newport v. Fact Concerts,* 453 U.S. 247, 271 (1981).........................................17

*Cleveland v. Ibrahim,* 2003 WL 24010953, (N.D. Ohio 2003) .......................................23

*Bakies v. Perrysurg,* 108 Ohio St. 3d 361, 2006-Ohio-1191, 843 NE 2d 1182 (2006) .................12

*Havens Ralty Corp. v. Colemen,* 455 U.S. 363, 381 (1982) ...........................................27

*Johnson v. Railway Express Agency,* 421 U.S. 454, 462 (1975) ....................................26

*Lambert v. Hartmann,* 2006 WL 3833529, slip copy (S.D. Ohio 2006), citing *Parrett v. Taylor,*
    451 U.S. 527, 535 (1981) overruled on other grounds by
    *Daniel v. Williams,* 474 U.S. 327 (1986) .....................................................................20

*Lindsay v. Yates,* 2006 WL 2988222, slip copy, (N.D. Ohio 2006) ...............................23

*Matsushita Electric Industrial Co., v. Zenith Radio,* 475 U.S. 574 (1980) ...................18

*McDonnell Douglas v. Green,* 411 U.S. 792 (1973)................................................8, 18

*Middlebrook v. City of Bartlett,* 341 F.Supp.2d 950, 959 (W.D. Tenn.2003) ...........19, 20

*Mitchell v. Toledo Hosp.* 964 F.2d 577, 580-581 (6th Cir. 1992) ..................................22

*Monell v. Dept. of Social Services,* 436 U.S. 658 (1978)...............................................27

*Runyon v. McCrary,* 427 U.S. 160, 180 (1976) .............................................................25

*Seldon v. U.S. Dept. of Housing and Urban Dev.* 785 F.2d 152, 159 (6th Cir. 1986)..................18

*Simmons v. Middle Tennessee State Univ.,* 117 F.3d 1421, (6th Cir. 1997)..................26

*Smith v. Chrysler Corp.* 155 F3d 799, 805 (6th Cir. 1998) ...........................................23

*Suburban Real Estate Co. v. Village of Silverton,* 31 Ohio App. 452, 167 N.E. 474 (1st Dist.,
    1929) ..............................................................................................................................11

*Sutton v. Bloom,* 710 F.2d 1188 (6th Cir. 1983) ............................................................24

*Tolbert v. State of Ohio Dept. of Transp.*, 172 F.3d 934, 939 (6th Cir. 1999)...............27

4

*Warner v. Perrino,* 585 F.2d 171, 173 (1978) .............................................................25

*West v. Atkins,* 487 U.S. 42, 49 (1988).................................................................8, 20

*Wilson v. Garcia,* 471 U.S. 261, 276-280 (1980) ........................................................26

## **STATUTES**

OHIO CONSTITUTION, ARTICLE XVIII ................................................................10

42 U.S.C. §§ 1981, 1982, 1983, 3601 2000d......................................................... passim

42 U.S.C. § 3613..........................................................................................................27

O.R.C. CHAPTER 743 ...........................................................................................10, 11

O.R.C. § 4112.02(H).................................................................................................. passim

O.R.C. § 4112 ............................................................................................................ passim

O.R.C. § 4112.05(B)(1) ............................................................................................ passim

O.R.C. § 2305.10(A)...............................................................................................26, 27

O.R.C. § 2744 ............................................................................................................ passim

O.R.C. § 6119.01, et seq. ........................................................................................13, 14

O.R.C. § 505.263 ....................................................................................................10, 20

RULE 56(C)  ..............................................................................................................17

## MEMORANDUM IN SUPPORT

### DEFINITIONS

As used in this Memorandum, the following definitions and abbreviations will be used.

1. "City" - City of Zanesville –

2. "County" - County of Muskingum

3. "Township" - Township of Washington

4. "EMWA" - East Muskingum Water Authority

5. "WRWA-P " - Washington Rural Water Authority – private group providing water to its members from 1955 until December 21, 1984 and again after April 16, 1998. During interim period, WRWA-L (see below) was a legally recognized water authority per Ohio law and provided water service to its members.

6. "WRWA-L" - Washington Rural Water Authority – public entity that was legally recognized as a water authority per Ohio law from December 21, 1984 to April 16, 1998.

7. "PWS" - Public water service

8. "Coal Run area" – The area outside the City of Zanesville identified as the residence area of minority persons per Plaintiffs' Complaint, or the streets of Coal Run Road, Langan Lane, Circle Lane and Adamsville Road in Washington Township, Muskingum County, Ohio.

9. "Trustees" - Paul R. Bunting, Clint W. Cameron and Douglas Culbertson, collectively.

## I. STATEMENT OF THE CASE – SUMMARY OF PLEADINGS

Sixty-eight individual Plaintiffs and the Fair Housing Advocates Association ("FHAA") have filed a complaint against the City of Zanesville ("City"), Muskingum County ("County"), Washington Township ("Township") and elected officials from the county and the township. The Plaintiffs have brought suit against the named Ohio political subdivisions for allegedly denying public water service since 1955. The original Complaint was filed on November 13, 2003

(Doc.1).

The operative pleading is the <u>Fourth Amended Complaint</u> (Doc 114). Plaintiffs have sued alleging six causes of action in the <u>Fourth Amended Complaint</u> as follows:

(1) The Fair Housing Act of 1968, 42 U.S.C. §3601, et seq.; (hereinafter "FHA")[1]

(2) 42 U.S.C. §1981; (hereinafter "§1981 Claim") – Right To Contract [2]

(3) 42 U.S.C. §1982; (hereinafter "§1982 Claim") – Right To Hold Property [3]

(4) 42 U.S.C. §1983; (hereinafter "§1983 Claim") – Racial Discrimination [4]

(5) Title VI of The Civil Rights Act, 42. U.S.C. §2000d; (hereinafter "Title VI"),[5] and

(6) R.C. §4112.02(H). (hereinafter " State Law Claim")[6]

Twenty-five of these Plaintiffs filed a charge of discrimination with the Ohio Civil Rights Commission on July 26, 2002. Plaintiffs and The Fair Housing Advocates Association filed a separate Complaint on November 13, 2003.[7] This Court joined the Ohio Civil Rights Commission ("OCRC") as a party Plaintiff in this matter.[8] All arguments contained in this Motion pertain to individual Plaintiffs, Fair Housing Advocates and OCRC.

## II.  **SUMMARY OF ARGUMENT**

As set forth above, the gravamen of Plaintiffs' Complaint, against these moving Defendants, is that the Township and Trustees denied them public water service on the basis of their race. However, for the purposes of Plaintiffs' 42 U.S.C. §§ 1981, 1982, 3601 and 2000d (Title VI) claims, it is incumbent upon Plaintiffs to establish, among other things, that (1) they were entitled to receive water service, (2) water service was denied, and (3) that similarly situated

---

[1]See <u>Fourth Amended Complaint</u>, (Doc. 114)  Count 1, paragraph 181
[2]See <u>Fourth Amended Complaint</u>, (Doc. 114)  Count II, paragraph 187
[3]See <u>Fourth Amended Complaint</u>, (Doc. 114)  Count III, paragraph 191
[4]See <u>Fourth Amended Complaint</u>, (Doc. 114)  Count IV, paragraph 198
[5]See <u>Fourth Amended Complaint</u>, (Doc. 114)  Count V, paragraph 203
[6]See <u>Fourth Amended Complaint</u>, ( Doc. 114)  Count VI, paragraph 205
[7] <u>Complaint</u>, (Doc. 1)
[8]<u>Order</u> granting Motion To Join A Necessary Party, (Doc. 31).

7

non-protected applicants were treated more favorably.[9]  Additionally, in order to succeed on their

42 U.S.C. § 1983 claims, Plaintiffs must establish that the Township and Trustees exercised

power possessed by virtue of state law.[10]

However, the facts reveal that Plaintiffs cannot sustain their burden of proof with respect

to the above claims for the following reasons:

(1)     The Township and Trustees have no statutory authority to construct, maintain or operate a public water supply improvement;

(2)     The Township and Trustees never, in their history, have constructed, maintained or operated a public water supply improvement or offered the same to residents of the Township;

(3)     The Township and Trustees have no legal duty to construct, maintain or operate a public water supply improvement;

(4)     The Township and Trustees did not treat non-protected individuals more favorably as they never constructed, maintained or operated a public water supply or offered public water services to non-protected individuals;

(5)     Plaintiffs never requested the Township or Trustees to   provide public water or public water services;

(6)     The Township and Trustees never denied Plaintiffs access to any public water supply or service.

In addition to the above, Plaintiffs failed to file suit within the statute of limitations for

any of the claims brought against the Defendants.   Although the Plaintiffs have brought six

causes of action, the longest statute of limitations of any of the claims is two years. Plaintiffs

allege violations which occurred in 1955.  This is clearly beyond the two year statute from the

date of filing of the OCRC Complaint on July 26, 2002.

Plaintiffs cannot satisfy the statute of limitations based upon a continuing violation theory

for a variety of reasons including:

---

As will be set forth in the arguments below, these claims require this Court to apply the burden shifting test set forth in McDonald  Douglas Corp. v. Green, 411 U.S. 792 (1973).

[10] See West v. Atkins, 487 U.S. 42, 49 (1988).

(1) there was no continuing violation;

(2) certain Plaintiffs did not reside in the area within the statute of limitations;

(3) certain Plaintiffs are not a member of a protected class.[11]

The Township and Trustees are also entitled to summary judgment on the pendant state housing violation claim as they are entitled to immunity. Lastly, the Township and Trustees are entitled to summary judgment on the issue of punitive damages, pursuant to R.C. 2744.05, as punitive damages are not recoverable against political subdivisions.

For these reasons and as outlined below, the Township and Trustees are entitled to summary judgment in this matter.

## III.  BRIEF STATEMENT OF FACTS

### A.  Washington Township and Trustees

This case involves the claim of entitlement to public water services ("PWS"). Plaintiffs lived at various times on Langan Lane or Coal Run Road in Washington Township, Muskingum County.[12] Doug Culbertson is a Township Trustee and has served in that capacity since 1986.[13] Clint Cameron is a Township Trustee and has served in that capacity since 1992.[14] Paul Bunting is a Township Trustee and has served in that capacity from 1963-1964, 1967-1968 and 1999 to present.[15]

There is no dispute that Washington Township is an unincorporated political subdivision of the state of Ohio.[16] There is no dispute that Washington Township is not a "home rule" township within the meaning of R.C. Chapter 504 and has never sought that form of self-

---

[11] See City SJ Ex.D
[12] Fourth Amended Complaint (Doc. 114), paragraphs 8-77
[13] See City SJ Ex. Y
[14] Id.
[15] Id.
[16] Deposition of Paul Bunting, page 18, line 4-6

government.[17]  No provision of the Ohio Constitution or Ohio Revised Code provides authority for a township to own, construct or operate a public waterworks.[18]  Washington Township does not have the statutory authority to run its own water lines.[19]  The Township had no way to furnish water to Plaintiffs or any of its residents at anytime.[20]

The only provision of the Ohio Revised Code that remotely related to a township's authority with regard to public water is R.C. 505.263 which provides that a township may enter into contract with a board of county commissioners under which the township agrees to pay all or any part of the cost of constructing, maintaining, repairing, or operating a water supply improvement.

In the case at bar, Washington Township has never engaged in the business of providing water to any residents of the Township.[21]  It is axiomatic that the Township never treated a non-protected class more favorably with respect to water service as, indeed, the Township never engaged in the business of providing water to any of its residents.  The Township has never sought to obtain water service from any other entity.[22]  Washington Township provides services with respect to maintenance of roads and cemeteries and has never sought to provide additional services beyond roads and cemeteries.[23]  The Township has and continues to provide road maintainance for Coal Run Road and Langan Lane – where Plaintiffs live.[24]

The most interesting point of this case is that 67 of the 68 individual Plaintiffs were

---

[17] Township Response to OCRC Request for Information at 2
[18] In contrast, Ohio Constitution, Article XVIII, Section 4, specifically delegates such authority to municipal corporations and such activities are regulated pursuant to R.C. Chapter 743.

[19] Deposition of James Krischak, pages 156-157
[20] Doug Culbertson Deposition at page 45, lines 14-19
[21] Doug Culbertson Deposition, page 25, line 10, page 32 lines 3-10, page 60 lines 1-3; Paul Bunting Deposition page 24, lines 18-20, page 30, lines 4-7, page 37, lines 1-8; Clint Cameron Deposition at page 25, lines 15-18, pages 31-32, pages 60-61; James Krischak Deposition at page 156
Doug Culbertson Deposition page 25, line 10, page 60 lines 1-3; Paul Bunting Deposition at page 24, lines 14-17, page 37
[23] Paul Bunting Deposition page 21, lines 18-25; Clint Cameron Deposition pages 31-32
[24] Paul Bunting Deposition at page 72

deposed and none of them ever made a request to the Township or Trustees for water service.[25]

The only Plaintiff that was not deposed entered a stipulation pertaining to her personal requests for public water indicating that she merely attended some meetings but did not identify any specific request for water that she ever made.[26] This is consistent to the extent that the Township never received any complaints from any residents relative to anything but roads and cemeteries and received no requests for water service.[27]

### B.    History

In order to assist the Court in understanding the facts of this case, the following is a brief history of water service in the Zanesville area.

In 1955, the City passed a Zanesville Ordinance 5435 permitting "the extension of a water line outside the corporate limits of the City of Zanesville, along Adamsville Road and Langan Lane."[28]  All municipal corporations in Ohio (such as the City of Zanesville) were and are expressly authorized by Ohio law to extend water pipes outside the city limits.[29]

At that time, the group seeking PWS from the City was called the Washington Rural Water Association, a private non-governmental group ("WRWA-P).  The private group was referred to by a number of names, all a variation of the names Adamsville Road Water Authority or Association or the Washington Rural Water Authority or Association (hereinafter collectively referred to as "WRWA-P", i.e. WRWA - private group). The WRWA-P had no connection to any named defendant in this case, as it was a private non-governmental group.[30] The WRWA-P was led by a board of citizens, including Melvin Hill, an African-American resident living on

---

[25] See attached Township Summary Judgment Ex. "A" and pertinent references to Plaintiffs' Depositions

[26] See City SJ Ex. P

[27] Paul Bunting Deposition at page 38, lines 5-8; Clint Cameron Deposition at page 24, lines 14-17; Doug Culbertson Deposition page 94, lines 1-17

[28] Zanesville Ordinance No. 5435,  (City SJ Ex. E)

[29] Ohio Rev. Code Sec 743.12. This code section was also part of the General Code of Ohio, Sec 3966, dating back prior to the late 1920's. Suburban Real Estate Co. v. Village of Silverton, 31 Ohio App. 452, 167 N.E. 474 (1st Dist., 1929)

[30] With respect to Township, see Deposition of Paul Bunting, page 64, lines 11-13

Langan Lane.[31]

Passage of Zanesville Ordinance 5435 permitted the extension of the water line based upon six (6) conditions including that the residents be responsible for the costs of construction and the residents agreeing to pursue annexation.[32] Annexation is a valid pre-condition of the extension of City services.[33] However, no Plaintiff ever agreed to these conditions of water services or agreed to annexation or signed a pre-annexation agreement, as did other persons who were located physically outside the City that sought City services, despite being told it was a pre-condition to receiving water service.[34]

John Michel, a board member of the WRWA-P since the late 1960's/early 1970's[35] described the initial installation of water mains as approximately 1 mile along Adamsville Road and 1000' along Langan Lane.[36] This installation took place in approximately 1956.[37] The original work was paid for by WRWA-P,[38] no City funds were used.

Because the project was initiated by and for the benefit of residential users, the main line locations reflect the higher density homes along Adamsville Road, and the portion of Langan Lane, north of Circle Drive,[39] there being less homes south of Circle Drive on Langan Lane and on Coal Run Road.

The WRWA-P received requests for water service.[40] The issues were decided by majority vote of the board members.[41] Melvin Hill was a board member of the WRWA-L from

---

[31]Mr. Hill is deceased , City SJ Ex. H
[32] Zanesville Ordinance No. 5435, (City SJ Ex. E)
[33] Bakies v. Perrysburg, 108 Ohio St. 3d 361, 2006-Ohio-1191, 843 NE 2d 1182 (2006)
[34] Robert Earl Kennedy deposition, page 42/line 20
[35]John Michel deposition, page 19, lines 3-16
[36]John Michel deposition, page 17, lines 8-10
[37]John Michel deposition, page 16, line 23
[38]John Michel deposition, page 131, lines 10-16
[39]See attached topographical map – City SJ Ex. M (created prior to March 1985)
[40]John Michel deposition, page 20, lines 19 to page 21, line 1
[41]John Michel deposition, page 20, line 7

its inception,[42] and was a resident in the area whose race was African American. The WRWA-P policy for persons seeking water from the WRWA-P required an application, money to be paid up front,[43] and that the location of the property seeking water service had to be close to or join the original water mains on Adamsville Road and Langan Lane.[44] The WRWA-P did not extend mains beyond those initial main lines. The WRWA-P evaluated whether the proposed service location was near enough to the existing main lines. If they were close enough, the new person could tap in. If not, the WRWA-P was not willing to extend the original lines.[45]

Mr. Michel indicated when an application was approved, it was only then that the information would be passed onto the City of Zanesville.[46] The decision about allowing persons to receive water, to "come on the lines," was made by the WRWA-P board,[47] not the City.

No decisions of the WRWA-P board were based on the race of the person asking for water, to join the line;[48] nor did anyone ever indicate to Mr. Michel that race was a factor in the decision; nor did he overhear any conversation indicating an individual was denied because of their race;[49] nor, in the Association, was there any racist conversation, e.g. persons indicating they did not want anyone but white persons to get water.[50]

On April 28, 1967, the East Muskingum Water Authority ("EMWA") was established by order of the Muskingum County Common Pleas Court pursuant to state law.[51] The EMWA territory (aka, service area) was established by Court order and included the area in which all Plaintiffs resided. The EMWA was a water authority and thereby given exclusive authority in its designated geographic area over provision of new water services, including new water service to

---

[42]See page 2 of City SJ Ex. G, Mr. Hill was a board member from the inception of WRWA-L
[43]John Michel deposition, page 21, lines 5-6
[44]John Michel deposition, page 21, lines 11-15
[45]John Michel deposition, page 21, line 21 to page 22, line 1
[46]John Michel deposition, page 127, lines 5-13
[47]John Michel deposition, page 127, lines 14-19
[48]John Michel deposition, page 128, line 3
[49]John Michel deposition, page 128, line 7
[50]John Michel deposition, page 135, lines 18 to page 136, line 3

Plaintiffs' residences.

On December 21, 1984,[52] the Muskingum County Common Pleas Court established, the Washington Rural Water Authority (Referred to as "WRWA-L," i.e. WRWA – legally organized [water authority]) creating a legal entity recognized as a water authority per Ohio law.[53] As such the WRWA-L was given exclusive authority in its geographic region over the provision of water services, including new water service in the geographic area in which all Plaintiffs resided. In 1984, the EMWA determined that it had overlapping service with the WRWA-L in particular areas of Zanesville and petitioned to delete those areas from its service.[54] The Township and Trustees had nothing to do with the 1984 EMWA petition to exclude those areas from the EMWA territory.[55]

From 1984 to 1998, the WRWA-L attempted to secure funding and otherwise promote the establishment of water services in its geographic area to include all the area where all Plaintiffs reside or resided. WRWA-L attempted to secure funding at least from (1) the Ohio Water Development Authority ("OWDA"), (2) OMEGA,[56] and (3) the United States Department of Agriculture – Farmers Home Administration ("USDA-FHA") for purposes of expanding, improving the water system,[57] but were never able to do so.[58] As late as 1995, there were considerations with regard to a proposed extension of water service along Adamsville Road (running perpendicular to Coal Run Road and Langan Lane), however, the EMWA never received any type of request or notification from anybody in the Coal Run Road or Langan Lane area seeking water service.[59] Ultimately, the project was turned down because they did not have

---

[51]Ohio Rev. Code 6119.01, et seq., see also City SJ Ex. R
[52]City SJ Ex. G
[53] Ohio Rev. Code 6119.01, et seq.
[54] James Krischak deposition at pages 98-99
[55] Id. at page 140
[56]John Michel deposition, page 134, lines 12-19
[57]John Michel deposition, page 129, lines 6-12
[58]John Michel deposition, page 129, line 16
[59] James Krischak deposition page 146

14

enough individuals to pay tap fees to make the project feasible.[60]

On April 16, 1998, the WRWA-L was dissolved by the Muskingum County Common Pleas Court.[61]  Subsequently, the EMWA and the County engaged in a joint effort for development of Adamsville Road whereby the EMWA would extend its lines as far as it could within its jurisdiction and connect with County lines for the County's future development of Pleasant Grove Road.[62]  It was absolutely necessary for the County to connect to the EMWA lines as the County could place their pipes but, without the EMWA, there was no water to run through the lines.[63]  Essentially, portions of Adamsville Road were the middle ground between the two jurisdictions and were part of Washington Township.  However, after it was decided to undertake the Adamsville Road project, it was determined that a portion of Adamsville Road was not within the EMWA jurisdiction as a result of the 1984 deletion of that area from its service.[64]

Accordingly, the EMWA needed to have the previously deleted portion of Adamsville Road reincorporated into the EMWA jurisdiction so that the project could go forward.[65]  The Township and Trustees did not go to the EMWA seeking this portion of Adamsville Road to be part of the project.[66]  The EMWA, through its legal counsel, James Krischak, prepared a resolution for the Washington Township Trustees to sign which would return this portion of Adamsville Road back to the EMWA.[67]  Mr. Krischak testified in his deposition, that the Township and Trustees had no input, whatsoever, in the language of the resolution or determining where the waterline, for the Adamsville Road Project, would be run.[68]  The language for the resolution was taken directly from the Ohio Revised Code and was language that was

---

[60] Id. at page 151
[61] City SJ Ex. L
[62] James Krischak deposition at pages 38-39
[63] Id. at page 93
[64] Id. at pages 151-152
[65] Id.
[66] Id.
[67] City SJ Ex Y

required to be included in the resolution in order to reincorporate that portion of the Township into the EMWA.[69] The Township and Trustees had no input as to where the waterline would run as that was a determination made through an engineering study back in 1995.[70]

On April 19, 2001, the Trustees signed the resolution reincorporating that portion of the Township into the EMWA.[71] The Trustees signed off on the resolution because the project would provide water to the Washington Township Firehouse.[72] Previously, the Washington Township Volunteer Fire Department had to go to a local school to fill their tanks in the event of a fire.[73] Essentially, the Trustees signed off on the resolution to get water to the firehouse.[74]

Plaintiffs suggest that the Township and Trustees favored the resolution because it also provided water, incidental to the project, to other non-protected residents of Washington Township. However, the fact that some homes would be receiving water off of the line that also served the firehouse was not relevant to the Trustees decision.[75] If the Trustees had chosen not to sign the resolution then the project could not go forward and the Township would not have water provided to the firehouse. The decision to sign the resolution was for the benefit of all Township residents to the extent that it improved the Township Fire Department's ability to serve the community.

The East Muskingum Water Authority was legally dissolved on February 28, 2003 after the Adamsville Road Project was complete.[76] Much of Plaintiffs' confusion about water services arose as a result of the creation of the EMWA and the WRWA-L, their existence at the same

---

[68] Id. at pages 153-154; Doug Culbertson deposition at page 81; Clint Cameron deposition at page 69, lines 1-4; Paul Bunting deposition at page 45, lines 21-25
[69] James Krischak deposition at page 154
[70] Id. at 155
[71] City SJ Ex. Y
[72] Doug Culbertson deposition page 89, lines 19-22; Paul Bunting deposition page 56, lines 16-21; Clint Cameron deposition page 71, lines 19-22
[73] Paul Bunting deposition at pp. 44-45.
[74] Clint Cameron deposition page 68, lines 24-25
[75] Paul Bunting deposition page 58, lines 15-18
[76] See City SJ Ex. S

16

time and that the WRWA-P was operating prior to the creation of the WRWA-L. In addition, while having no connection to the Township, Trustees or the County, these groups did meet at the township fire station, the County Courthouse, etc. These organizations commissioned numerous studies of water service extensions, including surveys, public meetings to judge interest in water services as well as regular meetings at which persons attended to discuss extension of water service.

All Plaintiffs received access to PWS in December 2003/January 2004 as a result of a PWS project undertaken by Muskingum County.[77]

## IV. LAW AND ARGUMENT

### A. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. The United States Supreme Court[78] emphasized tha a party opposing a motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." The court also specifically indicated:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the rule prior to trial, that the claims and defenses have no factual basis.[79]

When the moving party has carried its burden under Rule 56(c), the opponent

---

[77]City SJ Ex. F
[78] Anderson vs. Liberty Lobby, 477 U.S. 242(1986 )
[79]Celotex Corp. v. Catrett  477 U.S. 317 (1986).

must do more than simply show there is some doubt as to material facts.[80]

**B.    PLAINTIFFS HAVE FAILED TO ESTABLISH A PRIMA FACIE CASE FOR DISCRIMINATION CLAIMS BROUGHT PURSUANT TO 42 U.S.C. §§ 1981, 1982 AND 3601**

Plaintiffs assert that the Township and Trustees engaged in discriminatory practices, in violation of 42 U.S.C. §§ 1981, 1982 and 3601.[81]  However, the evidence in this case quite clearly demonstrates that the Township and Trustees did not engage in such activities.  Moreover, Plaintiffs fail to establish the prima facie case for such claims and, accordingly, the Township and Trustees are entitled to summary judgment as to these claims.

In Seldon[82], the Sixth Circuit Court of Appeals recognized that claims asserting violations of 42 U.S.C. §§ 1981, 1982 and 3601 require the same standard of proof as set forth in the three-part test of McDonnell Douglas.[83]

The Seldon decision in its application of McDonnell Douglas, was more recently followed in Middlebrook[84] where the court considered plaintiffs' claims that they were unable/not permitted to obtain a permit for water and sewer service.  In Middlebrook, the court held, applying McDonnell Douglas to the facts of that case, that the plaintiffs established a prima facie case of 42 U.S.C. §§ 1981, 1982 and 3601, violations, with respect to water service, by proving:

(1)    plaintiffs are a member of a protected class;

(2)    plaintiffs applied for and were qualified to receive water service;

(3)    water service was denied; and

(4)    defendant provided similarly situated individuals outside the protected class with

---

[80] Matsushita Electric Industrial Co., v. Zenith Radio, 475 U.S. 574 (1980)
[81] See Fourth Amended Complaint at Counts I, II and III
[82] Seldon v. U.S. Dept. of Housing and Urban Dev., 785 F.2d 152, 159 (6th Cir. 1986)
[83] McDonnell Douglas v. Green, 411 U.S. 792 (1973)

water service.[85]

In the case at bar, the evidence reflects that not all of the Plaintiffs are a member of a protected class.[86] Thus, those Plaintiffs' claims fail immediately. However, even assuming that all Plaintiffs are members of a protected class, the evidence clearly reflects that not a single Plaintiff ever requested, i.e., applied for, water service from the Township or Trustees.[87] For this reason alone, Plaintiffs' claims must fail.

Even further indulging the analysis, Plaintiffs must establish that the Township and Trustees denied their request/application for water service. Yet, the evidence demonstrates that the neither the Township nor the Trustees ever denied any request for water service as no such requests were ever made. Furthermore, the Township and Trustees did not and do not, to this day, engage in the business of providing water to Township residents.[88] Indeed, there is no statutory duty imposed upon the Township or Trustees to construct, maintain or operate a public water supply.

Finally, even if this Court were to ignore Plaintiffs' failure to establish the above elements of the McDonnell Douglas test, the Plaintiffs must establish that the Township and Trustees provided similarly situated individuals outside the protected class with water service. However, as reflected in the facts presented, neither the Township nor the Trustees ever engaged in the business of providing water to any of the residents of Washington Township. Thus, even if this Court were to assume that Plaintiffs have presented any probative evidence in support of the preceding elements to the prima facie case, to include the denial of water service, the evidence reflects that the Township and Trustees denied water to every resident – regardless of race. There is simply no evidence to support the contention that the Township or Trustees treated non-

---

[84] Middlebrook v. City of Bartlett, 341 F.Supp. 2d 950, 959 (W.D. Tenn. 2003)
[85] Id.
[86] See City SJ Ex. D
[87] Township Summary Judgment Ex. A

protected residents more favorably.

Plaintiffs have also alleged claims against the individual Trustees. Qualified immunity is an available defense to Plaintiffs' claims.[88] In order to overcome the qualified immunity defense, Plaintiffs must establish that (1) a clearly established right has been violated, and (2) the official should have known that their conduct violates that right. Given that Plaintiffs have failed to establish a violation of a clearly established right, the Trustees are entitled to qualified immunity.

For the foregoing reasons, Plaintiffs have failed to establish a prima facie case for racial discrimination under 42 U.S.C. §§ 1981, 1982 and 3601. Accordingly, the Township and Trustees are entitled to summary judgment in their favor as a matter of law.

### C. PLAINTIFFS HAVE FAILED TO ESTABLISH A PRIMA FACIE CASE FOR DISCRIMINATION CLAIMS BROUGHT PURSUANT TO 42 U.S.C. § 1983

42 U.S.C. § 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws."[90] In order to establish a prima facie case for discrimination, pursuant to 42 U.S.C. § 1983, a plaintiff must prove; (1) that the action occurred under color of state law, and (2) that the action was a deprivation of a constitutional right or a federal statutory right.[91] It is incumbent upon Plaintiffs to establish that the Township and Trustees exercised power "possessed by virtue of state law" and made possible only because the Township and Trustees are clothed with the authority of state law.[92] Moreover, "the deprivation must be caused by the exercise of some right or privilege created by the State...or by a person for whom the State is responsible."[93]

The Township and Trustees had no constitutional or statutory authority to construct,

---

[88] See fn. 18 and 19 supra
[89] See Middlebrook, supra
[90] 42 U.S.C. § 1983
[91] Lambert v. Hartmann, 2006 WL 3833529, slip copy (S.D. Ohio 2006), citing Parrett v. Taylor, 451 U.S. 527, 535, (1981) overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)
[92] West v. Atkins, 487 U.S. 42, 49, (1988)
[93] Id.

maintain or operate a public water supply improvement. The only statutory provision having any relevance to a township's ability to supply water to its residents is found in R.C. 505.263 which provides that a township may enter into contract with a board of county commissioners under which the township agrees to pay all or any part of the cost of constructing, maintaining, repairing, or operating a water supply improvement. However, as demonstrated by the facts in this case, the Township and Trustees never entered into any contract with the County Commissioners to pay for the costs of constructing, maintaining, repairing or operating a water supply improvement.

As the Township and Trustees had no authority, right or privilege, and exercised no authority to provide water to the residents of the Township, there is no deprivation of any constitutionally protected right held by the Plaintiffs. For these reasons, the Township and Trustees are entitled to summary judgment in their favor as a matter of law.

### D. PLAINTIFFS HAVE FAILED TO ESTABLISH A PRIMA FACIE CASE FOR THEIR DISCRIMINATION CLAIMS BROUGHT PURSUANT TO TITLE VI OF THE CIVIL RIGHTS ACT

Title VI of the Civil Rights Act is codified in 42 U.S.C. § 2000d which provides:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

Based upon a plain reading of 42 U.S.C. § 2000d, Plaintiffs bear the burden of establishing that the Township received federal financial assistance for the provision of water supply services. However, there is absolutely no evidence to support this contention. The Township has never received any federal funding to support water supply services for the residents of the Township. Indeed, the Township never provided any water service to the residents of the Township. Even assuming that such federal funds were provided and that the

21

Township had the statutory authority to provide such services, given the fact that the Township did not provide such services to <u>any</u> residents reflects that neither the Township nor the Trustees made any decision based upon race.

However, assuming arguendo that the Township did receive Federal funding, Plaintiffs are required to establish that the decision not to provide them with water was motivated by race and that their race was a determining factor in the exclusion.[94] Plaintiffs can establish their case through direct evidence or a prima facie case.[95] In order to establish their claim through direct evidence, Plaintiffs must present unmistakable verbal assertions that they were treated adversely because of their race.[96]

There is no evidence in the record to support that the Township made any verbal assertions to support that Plaintiffs were treated adversely because of their race. Accordingly, Plaintiffs have not presented any direct evidence in support of their claim. Thus, in the absence of such direct evidence, Plaintiffs can only succeed on their 42 U.S.C. 2000d violation claim if they can support their burden of proof under a prima facie case of discrimination.

The prima facie case for discrimination involves the application of the <u>McDonnell Douglas</u> test set forth in the preceding arguments. As more thoroughly addressed above, Plaintiffs have failed to satisfy the elements of the prima facie case pursuant to the <u>McDonnell Douglas</u> analysis as they have failed to support their claims with evidence that (1) they requested or applied for water service, (2) the Township denied their request or application for water service, and (3) that the Township treated non-protected residents more favorably than Plaintiffs. Absent a showing of such evidence, Plaintiffs fail to establish a prima facie case of discrimination.

For the foregoing reasons, Plaintiffs 42 U.S.C. § 2000d claims must fail and the

---

[94] <u>Buchanan v. City of Bolivar</u>, 99 F.3d 1352, 1356 (6th Cir.1996)
[95] <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 580-581 (6th Cir.1992)

Township and Trustees are entitled to summary judgment, in their favor, as a matter of law.

### E. PLAINTIFFS HAVE FAILED TO ESTABLISH UNLAWFUL DISCRIMINATION UNDER R.C. 4112.02(H)

The standards set forth in R.C. 4112.02(H) mirrors the Federal Fair Housing Act - 42 U.S.C. § 1981. Accordingly, courts have universally applied the test set forth in <u>McDonnell Douglas</u> as the same evidentiary framework that applies to federal claims applies to Ohio claims in determining whether violations of R.C. Chapter 4112 have occurred.[97] As Plaintiffs have failed to establish their burden of proof for their 42 U.S.C. § 1981 claims as addressed above, their R.C. 4112.02(H) claims must likewise fail. Thus, these moving Defendants are entitled to summary judgment as a matter of law as to Plaintiffs' state law housing discrimination claims.

### F. THE TRUSTEES WERE NOT PUBLIC OFFICIALS AT ALL TIMES PERTINENT TO PLAINTIFFS' CLAIMS

As set forth in the facts above, Doug Culbertson is a Township Trustee and has served in that capacity since 1986.[98] Clint Cameron is a Township Trustee and has served in that capacity since 1992.[99] Paul Bunting is a Township Trustee and has served in that capacity from 1963-1964, 1967-1968 and 1999 to present.[100] The depositions of Plaintiffs revealed that many of the Plaintiffs did not live in the Township at the time that Bunting, Culbertson and Cameron were serving as Trustees.[101]

#### i. Doug Culbertson

The Plaintiffs identified as numbers 1, 5, 6, 12, 13, 14, 15, 16, 18, 19, 20, 21 and 62, to the Township's Summary Judgment Ex. A did not reside in Washington Township at any time when Doug Culbertson served as a Trustee for the Township. Accordingly, these Plaintiffs'

---

[96] <u>Smith v. Chrysler Corp.</u>, 155 F.3d 799, 805 (6th Cir.1998)
[97] <u>Lindsay v. Yates</u>, 2006 WL 2988222, slip copy, (N.D. Ohio 2006) citing <u>Cleveland v. Ibrahim</u>, 2003 WL 24010953, (N.D. Ohio 2003.
[98] See City SJ Ex. Y, attached to Township's Answers to Plaintiffs' First Set of Interrogatories
[99] <u>Id.</u>
[100] <u>Id.</u>
[101] Township Summary Judgment Ex. A

claims against Doug Culbertson must be dismissed.

### ii. Clint Cameron

The Plaintiffs identified as numbers 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 and 62 to the Township's Summary Judgment Ex. A did not reside in Washington Township at any time when Clint Cameron served as a Trustee for the Township. Accordingly, these claims must be dismissed.

### iii. Paul Bunting

The Plaintiff identified as number 14 to the Township's Summary Judgment Exhibit A did not live in Washington Township at any time when Paul Bunting served as a Trustee for the Township. Accordingly, these claims must be dismissed.

## G. PLAINTIFFS' CLAIMS ARE BARRED BY THE RESPECTIVE STATUTES OF LIMITATIONS

### i. 42 U.S.C. § 1981, 42 U.S.C. § 1982 and R.C. 4112.02(H)

The statutory provisions of 42 U.S.C. § 1981 does not include a statute of limitations provision. However, in Sutton[102] the Sixth Circuit, in reviewing a case alleging racial discrimination in housing, held that claims brought pursuant to 42 U.S.C. § 1981 and § 1982 are governed by a two-year statute of limitations.[103] The Sutton court reasoned that, in the absence of a specific statute of limitations provision, the court must look to the most analogous state law for guidance.[104] Accordingly, the Sutton court looked to R.C. Chapter 4112, governing the statute of limitations for state law discrimination claims, and determined that the 180-day statute of limitations set forth in the former R.C. 4112.05 was to apply. Accordingly, based upon the Sutton analysis, Plaintiffs' 42 U.S.C. § 1981 and § 1982 claims are governed by the present R.C. 4112.05 which provides a one-year statute of limitations for R.C. 4112.02(H) housing

---

[102] Sutton v. Bloom, 710 F. 2d 1188 (6th Cir., 1983)
[103] Sutton v. Bloom, 710 F. 2d 1188 (6th Cir., 1983)

discrimination, commencing "after the alleged discriminatory practice was committed."[105]

Plaintiffs allege that the discriminatory practice committed by the Township and Trustees was the passage of the April 19, 2001 resolution reincorporating the pertinent portions of the Township to the EMWA.[106] Plaintiffs claim continuing violations of 42 U.S.C. § 1981 and § 1982 through November of 2002, the date on which Plaintiffs allege the completion of construction of the Adamsville/Pleasant Grove water line.[107]

A plain reading of R.C. 4112.05(B)(1) reflects that discrimination claims brought pursuant to R.C. 4112.02(H) must be filed "within one year after the alleged unlawful discriminatory practice was <u>committed</u>."[108] Accordingly, the alleged discriminatory practice, as alleged by Plaintiffs, was committed on April 19, 2001 with the passage of the resolution. There is <u>no evidence</u> to support that the Township and Trustees continued the alleged discriminatory practice through the November 2002 conclusion of the water line project as suggested by Plaintiffs.

Based upon the foregoing, the statute of limitations commenced on April 19, 2001 and, pursuant to R.C. 4112.05(B)(1), barred any claims filed after April 19, 2002. Plaintiffs filed their Complaint with the Ohio Civil Rights Commission on July 26, 2002 – more than three months after the statute of limitations had expired. For these reasons, Plaintiffs' 42 U.S.C. § 1981 and § 1982 claims are barred by the one-year statute of limitations set forth in R.C. 4112.05(B)(1).

In addition to the above, a large number of Plaintiffs were not even residents of Washington Township on April 19, 2001, having left the Township years before. Plaintiffs numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 44, 47, 48, 50, 54, 62 and 63 in Township's Summary Judgment Ex. A admit that they were not

---

[104] <u>Id</u>. at 1190, citing <u>Runyon v. McCrary</u>, 427 U.S. 160, 180 (1976) and <u>Warner v. Perrino</u>, 585 F.2d 171, 173 (1978)
[105] R.C. 4112.05(B)(1)
[106] See <u>Fourth Amended Complaint</u> at paragraph 150
[107] See <u>Fourth Amended Complaint</u> at paragraph 152

residents of Washington Township on the date of the alleged discriminatory act – April 19, 2001.[109] Accordingly, those Plaintiffs numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 44, 47, 48, 50, 54, 62 and 63, as identified in Township Ex. A, are barred by the one year statute of limitations.

### ii.    42 U.S.C. § 2000d

In Simmons v. Middle Tennessee State Univ.,[110] the Sixth Circuit held that claims brought pursuant to 42 U.S.C. § 2000d, a statute that has no stated limitations period, are governed by the most appropriate state law limitations period. In the case at bar, Plaintiffs allege intentional discrimination pursuant to 42 U.S.C. § 2000d.[111] The most appropriate state law provision governing discrimination is R.C. 4112.02(H) concerning housing discrimination. Accordingly, for all the reasons set forth above, with respect to Plaintiffs' 42 U.S.C. § 1981 and § 1982 claims, Plaintiffs' claims are barred by the one-year statute of limitations set forth in R.C. 4112.05(B)(1).

### iii.    42 U.S.C. § 1983 and 42 U.S.C. § 3601

Similar to 42 U.S.C. § 1981 and § 1982 claims, 42 U.S.C. § 1983 does not provide a statute of limitations provision. In Wilson v. Garcia,[112] the Supreme Court held that 42 U.S.C. § 1983 claims should no longer be governed by the "most appropriate" state statute of limitations but, rather, should have a more certain standard.[113] Accordingly, Wilson held that the statute of limitations for 42 U.S.C. § 1983 claims are governed by that state statute of limitations governing personal injury claims.[114] R.C. 2305.10(A), provides a two-year statute of limitations for personal injury claims.

---

[108] R.C. 4112.05(B)(1). (Emphasis added.)
[109] Township SJ Ex. A
[110] Simmons v. Middle Tennessee State Univ., 117 F.3d 1421, (6th Cir.1997), citing, Johnson v. Railway Express Agency, 421 U.S. 454, 462 (1975)
[111] See Second Amended Compaint at Count V, paragraph 203
[112] Wilson v. Garcia, 471 U.S. 261, 276-280 (1980)
[113] Id.

Claims asserting violations of the Fair Housing Act are governed by a two-year statute of limitations.[115] The limitations period begins to run on the date of the last occurrence of discrimination.[116]

As set forth above, Plaintiffs filed their Ohio Civil Rights Commission Complaint on July 26, 2002. Accordingly, any Plaintiffs who did not reside in the Township on July 26, 2000, are barred by the two-year statute of limitations. As set forth in Township's Summary Judgment Ex. A, those Plaintiffs numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 44, 47, 48, 50, 54 and 62 did not reside in Washington Township on July 26, 2000.[117] Thus, those Plaintiffs' 42 U.S.C. § 1983 claims are barred by the two-year statute of limitations set forth in R.C. 2305.10(A).

### H.   THE REQUEST FOR INJUNCTION IS MOOT

All Plaintiffs received access to PWS in December 2003/January 2004 as a result of a PWS project undertaken by Muskingum County.[118] Accordingly, Plaintiffs request for injunction is moot.

### I.   PUNITIVE DAMAGES CANNOT BE RECOVERED AGAINST A MUNICIPALITY

The United States Supreme Court has ruled punitive damages cannot be recovered against municipalities, even in 42 U.S.C. § 1983 actions.[119] For non-constitutional claims,[120] Ohio law bars recovery of punitive damages against political subdivisions of the State including municipalities.[121] Accordingly, Plaintiffs may not recover punitive damages against the

---

[114] Id.
[115] 42 U.S.C. § 3613, Tolbert v. State of Ohio Dept. of Transp., 172 F.3d 934, 939 (6th Cir.1999)
[116] Havens Realty Corp. v. Coleman, 455 U.S. 363, 381 (1982)
[117] Township SJ Ex. A
[118] City SJ Ex. F
[119] City of Newport v. Fact Concerts, 453 U.S. 247, 271 (1981) and Monell v Dept. of Social Services, 436 U.S.658 (1978)
[120] Ohio Rev. Code Sec. 2744.09(E)
[121] Ohio Rev. Code Sec. 2744.05, Political subdivision is a defined term per Ohio Rev. Code 2744.01(F) and includes municipal corporations.

27

Township or the Trustees.

## V. CONCLUSION

For the reasons stated above, the Township and Trustees are entitled to summary judgment as a matter of law. If the court does not grant the Township's and Trustees' motion for summary judgment in its entirety, the Township and Trustees respectfully requests the court grant the motion for summary judgment on the issue of punitive damages as the law clearly requires.

Respectfully submitted,

/S/ Michael J. Valentine

Michael J. Valentine, Esq. (#0038806)
Paul-Michael La Fayette (#0067031)
Counsel for Defendants,
***Washington Township, Paul Bunting,***
***Doug Culbertson, and Clint Cameron***
**REMINGER & REMINGER CO., L.P.A.**
Capitol Square
65 E. State St., Ste. 400
Columbus, Ohio 43215
614.228.1311 / Fax: 614.232-2410
E-Mail: mvalentine@reminger.com
           plafayette@reminger.com

## PROOF OF SERVICE

I hereby certify that on the 14th day of March 2007, a copy of the foregoing pleading was filed electronically with the Clerk of Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

## TOWNSHIP SUMMARY JUDGMENT EXHIBIT A

1.  Barbara Chapman:

    Resided at 1685 Coal Run Rd. from 1953 to 1978.  (Depo. Pg. 14.)
    Never made any requests to Washington Township for public water.
    (Depo. Pg. 17.)

2.  Karen Gilbert:

    Has not lived in the Coal Run Rd. area since 1995.  (Depo. Pg. 11.)
    At no time did she ever made a request for public water to be brought to the Coal
    Run Rd. area.  (Depo. Pg. 12.)

3.  Ellen Harvey:

    Has not lived in the Coal Run Rd. area since 1987.  (Depo. Pg. 19.)
    Never in her lifetime made a request from Washington Township to have water
    brought to the Coal Run Rd. area.  (Depo. Pg. 20.)

4.  Lorena Hill:

    Lived at 1715 Coal Run Rd. from 1983 to 1986.  (Depo. Pg. 13.)
    Never made a specific request to Washington Township for public water.
    (Depo. Pg. 27.)

5.  Robert Hill:

    Resided at 1715 Coal Run Rd. until 1980.  (Depo. Pg. 13.)
    Never made any requests for water service to anyone from Washington
    Township.  (Depo. Pg. 21.)

6.  Roger Lee Hill:

    Has not resided in the Coal Run Rd. area since 1985.  (Depo. Pg. 11.)
    Never requested public water from Washington Township.  (Depo. Pg. 16)

7.  Donald Kennedy:

    Has not lived in the Coal Run Rd. area since 1989.  (Depo. Pg. 7.)
    Never made any request for public water to any government officials when he
    resided in the Coal Run Rd./Langan Lane area.  (Depo. Pg. 42)

8.  Marsha Kennedy:

    Last lived in the Coal Run Rd./Langan Lane area in 1986.  (Depo. Pg. 21)
    In her lifetime, never requested that Washington Township bring public water to
    the Coal Run Rd. neighborhood.  (Depo. Pg. 23.)



9. <u>Rebecca Kennedy</u>:

The last time she resided in the Coal Run Rd./Langan Lane area on a permanent basis was 1987. (Depo. Pg. 15.)
She has never made a request for public water service. (Depo. Pg. 29.)

10. <u>Shawn Kennedy</u>:

Last lived in the Coal Run Rd./Langan Lane area in 1989. (Depo. Pg. 11.)
Never made any requests to receive public water. (Depo. Pg. 12.)

11. <u>Julia Landkrohn</u>:

Has not resided in the Coal Run Rd./Langan Lane area since 1987. (Depo. Pg. 22.)
She never made any personal requests for water service to anyone. (Depo. Pgs. 26-27.)

12. <u>Donna Lewis</u>:

Has not lived in the Coal Run Rd./Langan Lane area since 1975. (Depo. Pg. 12.)
She did not speak with anyone from Washington Township regarding water service. (Depo. Pg. 51.)

13. <u>Frederick Martin</u>:

Has not lived in the Coal Run Rd. area since 1970. (Depo. Pg. 12.)
Never made a personal request for public water to Washington Township. (Depo. Pg. 21.)

14. <u>Paul Martin</u>:

Has not lived in the Coal Run Rd. area since 1960. (Depo. Pg. 9.)
Never had any discussions with any Washington Township Trustees regarding the issue of water. (Depo. Pg. 29.)

15. <u>Richard Lewis Martin</u>:

Last lived in the Coal Run Rd. area in 1976. (Depo. Pg. 21.)
Never made a personal request to any governmental agency to receive access to public water. (Depo. Pg. 41.)

16. <u>Tommy W. Martin</u>:

Has lived at 722 Indiana St., Zanesville, Ohio since July of 1984. (Depo. Pg. 8.)
Never made any personal request to receive water to the Coal Run Rd./Langan Lane area at any time from any government agency or governmental employee. (Depo. Pg. 39.)

17. <u>Julie Mayle</u>:

> Has not lived in the Coal Run Rd. area since 1989. (Depo. Pg. 12.)
> Has not personally made any requests for water service. (Depo. Pg. 26.)

18. <u>Glenna McConnell</u>:

> Has not resided in the Coal Run Rd. area since 1974. (Depo. Pg. 13.)
> Has never had any conversation with anyone from Washington Township about extending water lines to the Washington Township area. (Depo. Pg. 30.)

19. <u>Jacqueline Norvet</u>:

> Has not lived in the Coal Run Rd. area since 1968. (Depo. Pg. 22.)
> She has never personally requested public water from Washington Township. (Depo. Pg. 25.)

20. <u>Carolyn Page</u>:

> Has lived in Columbus since 1969. (Depo. Pg. 12.)
> Has never made a request for public water to anyone from Washington Township. (Depo. Pg. 17.)

21. <u>Alice Stokes</u>:

> Has not lived in the Coal Run Rd. area since 1980. (Depo. Pg. 14.)
> Has never had any conversations with any officials from Washington Township regarding the obtainment of water. (Depo. Pg. 15.)

22. <u>Kay Turner</u>:

> Has not lived in the Coal Run Rd. area since 1992. (Depo. Pg. 6.)
> Has not made any requests to receive water. (Depo. Pg. 18.)

23. <u>Audrey Ford</u>:

> Has resided at 1663 Coal Run Rd. since November of 2002. (Depo. Pg. 6.)
> Never made any request to Washington Township to receive water to her residence. (Depo. Pg. 26.)

24. <u>Thomas Ford</u>:

> Has resided at 1663 Coal Run Rd. since November of 2002. (Depo. Pg. 12.)
> Never made any request from any government entity to bring public water to the Coal Run Rd. neighborhood. (Depo. Pg. 19.)

3

25. <u>Cynthia Hairston</u>:

Has resided at 1800 Coal Run Rd. since 2000. (Depo. Pgs. 24-25.)
Never spoke with any Washington Township elected official about securing water services to the Coal Run Rd./Langan Lane area. (Depo. Pgs. 64, 137.)

26. <u>Edwin Lynn Hairston</u>:

Has resided at 1800 Coal Run Rd. since 2000. (Depo. Pg. 7.)
In his lifetime, has never had any conversations with any Washington Township officials as it relates to water services. (Depo. Pgs. 29-30.)

27. <u>Doretta Hale</u>:

Has resided at 1775 Coal Run Rd., since 1956. (Depo. Pg. 9.)
Has never made any requests to Washington Township for public water service. (Depo. Pg. 16.)

28. <u>Mark Hale</u>:

Has resided at 1636 Coal Run Rd. for the past 20 years. (Depo. Pg. 7.)
Has never requested water from Washington Township. (Depo. Pg. 18.)

29. <u>Regina Hale</u>:

Has resided at 1636 Coal Run Rd. since 1989. (Depo. Pg. 6.)
Has never made any personal requests of any government agency to receive public water. (Depo. Pg. 12.)

30. <u>Theodore Hale</u>:

Has resided at 1775 Coal Run Rd. since 1956. (Depo. Pg. 8.)
Has never requested water from any government group. (Depo. Pgs. 18-19.)

31. <u>James Hill</u>:

Has lived at 910 Langan Lane since 1997. (Depo. Pg. 7.)
Has never made a request for public water to Washington Township. (Depo. Pg. 27.)

32. <u>Jeff Hill</u>:

Has lived at 1707 Coal Run Rd. for the past 10 years. (Depo. Pg. 7.)
Has never spoken with anyone from Washington Township about getting water or requesting water. (Depo. Pg. 27.)

4

33.   John Hill:

Has lived at 910 Langan Lane since 1974.  (Depo. Pg. 7.)
Has never made any request to receive water.  (Depo. Pg. 31.)

34.   Kathleen Hill:

Has lived at 910 Langan Lane since 1966 or 1967.  (Depo. Pg. 7.)
Has never spoken with anyone about getting water to her house.
(Depo. Pgs. 20-21.)

35.   Bernard Kennedy:

Has lived at 940 Langan Lane since 1983.  (Depo. Pg. 7.)
Has never made any request to anyone from Washington Township to receive
water.  (Depo. Pg. 72.)

36.   Christine Marie Kennedy:

Lived at 925 Langan Lane since 1985.  (Depo. Pgs. 6-7.)
Has never personally made any requests of Washington Township to bring water
to her residence.  (Depo. Pg. 13.)

37.   Dennis Kennedy:

Lived at 915 Langan Lane since 1979.  (Depo. Pg. 7.)
Has never personally requested water from any government official.
(Depo. Pg. 38.)

38.   Jeanene Kennedy:

Resided at 1095 Langan Lane since 1961.  (Depo. Pg. 6.)
Has never made any personal request for water to Washington Township
Trustees, Clint Cameron, Paul Bunting or Doug Culbertson.  (Depo. Pg. 10.)
She believes she paid some money to someone to sign up for water but, does
not know who it was or what organization they were with.  (Depo. Pg. 11.)

39.   Jerry Kennedy:

Resided either at 1155 Langan Lane or 940 Langan Lane for the past 30 years.
(Depo. Pg. 56.)
He never made any personal requests to Washington Township for water while
residing at 940 Langan Lane.  (Depo. Pg. 91.)
No Township Official ever refused to provide water service to his residence.
(Depo. Pg. 117.)

5

40. <u>Joshua Kennedy</u>:

Resided at 925 Langan Lane between 1985 and 2001. (Depo. Pgs. 7, 12.)
He also resided at 925 Langan Lane from 2002 to 2005. (Depo. Pg. 11.)
He made no requests for water service to Washington Township.
(Depo. Pg. 20.)

41. <u>Marcus Kennedy</u>:

Resided at 1095 Langan Lane from 1987 to 2005. (Depo. Pgs. 7, 12.)
He never had any conversations with any elected Township Trustees regarding
water. (Depo. Pg. 34.)

42. <u>Richard Kennedy, Jr.</u>:

Resided at 921 Langan Lane since 1989. (Depo. Pg. 7.)
He has never personally made a request for public water to Washington
Township. (Depo. Pg. 26.)

43. <u>Nancy Kennedy</u>:

Has resided at 925 Langan Lane since 1985. (Depo. Pg. 7.)
She testified that, if there was something to do with water or the water supply,
her husband, Denver, handled it. (Depo. Pg. 40.)
She did not remember signing any petition making any request for water.
(Depo. Pg. 41.)

44. <u>Thomas Levi King</u>:

He has resided at 1800 Coal Run Rd. since 2004. (Depo. Pg. 5.)
He also resided in the Coal Run Rd. area in 1992. (Depo. Pgs. 6, 9.)
He never spoke with anyone from Washington Township about water service.
(Depo. Pg. 10.)

45. <u>John Paul Mayle</u>:

He has resided at various locations in the Coal Run Rd. area from 1961 to the
present date. (Depo. Pgs. 6, 15, 23.)
He never requested public water from Washington Township. (Depo. Pg. 28.)

46. <u>Helen McCuen</u>:

She has resided at 1685 Coal Run Rd. since 1947. (Depo. Pg. 9.)
She never made any request to receive access to public water from any
governmental agency or governmental employee. (Depo. Pg. 13.)

47.    James McCuen:

Has not lived in the Coal Run Rd. area since 1995.  (Depo. Pg. 10.)
He never made any personal request to any government entities to receive
access to public water while he was living in the Coal Run Rd. area.
(Depo. Pg. 17.)

48.    John McCuen:

Has not lived in the Coal Run Rd. area since 1995.  (Depo. Pg. 24.)
He never made any requests for water to Washington Township.  (Depo. Pg. 39.)

49.    Sondra McCuen:

Has lived at 1685 Coal Run Rd. since 1954.  (Depo. Pg. 6.)
She never made any personal requests to receive water.  (Depo. Pg. 16.)

50.    Jessica Mirgon:

Lived in the Coal Run Rd. area from 1978 to 1997.  (Depo. Pg. 13.)
She never made any requests for water service to anyone.  (Depo. Pg. 18.)

51.    Bryan Newman:

Resides at 1695 Coal Run Rd. for the past six years.  (Depo. Pg. 9.)
He has never made any personal requests for water.  (Depo. Pg. 15.)

52.    Goldie Newman:

Has resided at 1805 Coal Run Rd. for the past 33 years.  (Depo. Pg. 7.)
Has never spoken with anyone about extending water to his residence on Coal
Run Rd.  (Depo. Pg. 33.)

53.    Judy Newman:

Has lived at 1805 Coal Run Rd. since 1973.  (Depo. Pg. 9.)
She never made a request for public water service.  (Depo. Pg. 36.)

54.    Baranda Paynter:

Has resided at 1625 Coal Run Rd. since 2002.  (Depo. Pgs. 6, 19.)
She never made any personal request for public water to be extended to her
house.  (Depo. Pg. 20.)

7

55.    Tammy L. Scott:

Has lived at 921 Langan Lane since 1999. (Depo. Pg. 7.)
Has never made any request to anyone from Washington Township to receive
water to her residence. (Depo. Pg. 22.)

56.    Violet Thompson:

Has resided at 1095 Langan Lane since 1987. (Depo. Pg. 6.)
Has never personally made a request for public water. (Depo. Pg. 14.)

57.    Coty Thompson:

Has resided at 1095 Langan Lane since 1985. (Depo. Pg. 7.)
Has never personally made any requests to receive public water.
(Depo. Pg. 11.)

58.    Erin Walker:

Has resided at 1659 Coal Run Rd. since 1998. (Depo. Pg. 15.)
Has not made any requests to Washington Township for water. (Depo. Pg. 20.)

59.    Mark Walker, Sr.:

He has lived in the Coal Run Rd. area since 1998. (Depo. Pg. 14.)
He has never made a request for water service from anyone. (Depo. Pg. 30.)

60.    Nora Walker:

She has resided at 1655 Coal Run Rd. since 1956. (Depo. Pg. 5.)
She has never made any request for public water. (Depo. Pg. 20.)

61.    Richard Kennedy, Sr.:

He has lived at 1095 Langan Lane since 1962. (Depo. Pg. 15.)
He never made any request to Washington Township Trustees for water to his
residence. (Depo. Pg. 113.)

62.    Mary Kennedy:

She has resided at 1740 Adamsville Rd. with access to public water since 1987.
(Depo. Pg. 13.)
She never contacted Washington Township to request public water.
(Depo. Pg. 28.)

63. <u>Michael Kennedy</u>:

He has resided at 1095 Langan Lane from 1971 to 1992 and for approximately two months in the year 2000. (Depo. Pg. 11.)
He never made any personal request to receive access to public water. (Depo. Pg. 19.)

64. <u>Robert Kennedy</u>:

He has resided at 1680 Russell St. for the past 15 years. (Depo. Pg. 9.)
He never had any conversations with any Washington Township officials regarding water. (Depo. Pg. 55.)

65. <u>Ricky Kennedy</u>:

He has resided at 921 Langan Lane since 1989. (Depo. Pg. 7.)
He never made a request for public water to Washington Township. (Depo. Pg. 26.)

66. <u>Gary Mayle</u>:

He has resided at 1665 Coal Run Rd. since 1999. (Depo. Pg. 7.)
He never made any personal request to receive water. (Depo. Pg. 25.)

67. <u>Marvin Kennedy, Sr.</u>:

He has resided at 1145 Langan Lane from 1960 to the present date. (Depo. Pg. 6.)
He never made a request to Washington Township Trustees for public water at his residence. (Depo. Pgs. 129-130.)