IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JERRY R. KENNEDY,** *et al.*, | |
| **Plaintiffs,** | CASE NO. 2:03cv1047 |
| v. | Judge MARBLEY<br>Magistrate Judge ABEL |
| **CITY OF ZANESVILLE, OHIO,** *et al.*, | |
| **Defendants.** | |

### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE LIABILITY OF MUSKINGUM COUNTY FOR THE EAST MUSKINGUM WATER AUTHORITY

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs respectfully move this Court for partial summary judgment on the narrow issue of Muskingum County's liability for the acts and omissions of the East Muskingum Water Authority. Through this motion, Plaintiffs do not seek a ruling on the factual question of whether the EMWA engaged in discriminatory practices; rather, Plaintiffs ask this Court only to find that if the jury concludes that the East Muskingum Water Authority engaged in such practices, Muskingum County is liable for those acts.

Here, no genuine dispute of fact exists under either Ohio or federal common law on successor liability. Indeed, the County assumed all liabilities of the East Muskingum Water Authority through an agreement entered into on October 23, 2002 and ratified by the Ohio Court of Common Pleas on February 23, 2003. Accordingly, for the reasons set forth in the attached Memorandum in Support, this Court should grant Plaintiffs' motion for partial summary judgment and hold the County liable for the East Muskingum Water Authority's acts or omissions.

## TABLE OF CONTENTS

                                                          **Page**

I.    FACTUAL BACKGROUND ............................................................................................... 1

II.    LEGAL STANDARD ....................................................................................................... 4

III.    ARGUMENT ..................................................................................................................... 5

      A.    Under Ohio's Test For Successor Liability, The County Is Liable For The EMWA. ................................................................................................................... 5

           1.    The County continued the EMWA's business activity. ............................ 7

           2.    Muskingum County shares a "sufficient nexus" with the EMWA. ........... 8

           3.    The EMWA immediately dissolved ............................................................ 8

           4.    Muskingum County assumed the EMWA's liabilities. ............................. 9

      B.    Under Federal Common Law, The County Is Liable For The EMWA's Acts And Omissions. ......................................................................................... 10

           1.    The County had actual notice. .................................................................. 12

           2.    The EMWA cannot provide relief. ........................................................... 13

           3.    Substantial continuity exists. .................................................................... 14

IV.    CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................4, 5

*Cytec Industrial Inc. v. B.F. Goodrich Co.*,
    196 F. Supp. 2d 644 (S.D. Ohio 2002) ......................................................................6, 8, 9

*Kendall v. The Hoover Co.*, 751 F.2d 171 (6th Cir. 1984) .............................................................5

*E.E.O.C. v. MacMillan Bloedel Containers, Inc.*,
    503 F.2d 1086 (6th Cir. 1974) ...................................................................................11, 13

*Upholsterers' International Union Pension Fund v. Artistic Furniture of Pontiac*,
    920 F.2d 1323 (7th Cir. 1990) ...........................................................................................11

### STATE CASES

*Welco Industrial, Inc. v. Applied Cos.*,
    617 N.E.2d 1129 (Ohio 1993) .......................................................................................5, 6

### FEDERAL RULES

Fed. R. Civ. P. 56(c) ........................................................................................................................4

**MEMORANDUM IN SUPPORT**

I.    **FACTUAL BACKGROUND**[1]

The East Muskingum Water Authority (hereinafter "EMWA") was formed in 1967 as a result of a petition seeking to establish a water authority that was filed with the Court of Common Pleas of Muskingum County by the County Commissioners. (Ex. 69, Order Establishing EMWA, Apr. 28, 1967; Ex. 11, Gormley Dep. at 23). Twenty years later, in 1998, Muskingum County began considering taking over the EMWA. (*See* Ex. 120, Letter to Commissioner Kenily, June 8, 1998). The takeover discussions between the County and the EMWA initially resulted in the signing of a letter of intent. (Ex. 166, Letter of Intent, Sept. 10, 1998; Ex. 117, EMWA Minutes, Aug. 9, 1999). Soon after, the County created a Countywide Water and Sewer District, and the parties continued working toward an ultimate merger of the EMWA into this new Countywide Water and Sewer District. (Ex. 130, County Resolution Dec. 13, 1999; *see also* Ex. 167, EMWA Meeting Minutes, Dec. 13, 1999).

The continuing takeover discussions led to a formal cooperative agreement in December 2000, which granted Muskingum County a ten percent interest in the EMWA's water treatment plants and well fields. (Ex. 71, Cooperative Water Agreement, Dec. 7, 2000). As part of this cooperative agreement, the County and the EMWA agreed upon general areas in which each would be free to develop new water projects. (Ex. 71, Cooperative Water Agreement, Dec. 7, 2000, Exhibit B). In creating these service areas, the County and the EMWA jointly considered where current waterlines existed and areas within the County that needed water. (Ex. 41,

---

[1] Plaintiffs incorporate by reference the Factual Background of their Opposition to Defendants' motions for summary judgment. All references to exhibits in this Motion refer to exhibits in the appendix to Plaintiffs' Opposition to Defendants' motions for summary judgment.

Krischak Dep. at 83-84; Ex. 26, Kenily Dep. at 86, 249-50). There was no discussion of the Coal Run neighborhood in any of those planning meetings. (Ex. 41, Krischak Dep. at 84; Ex. 26, Kenily Dep. at 97-98).

After entering into this cooperative agreement, the plans for Muskingum County to acquire the East Muskingum Water Authority continued. (Ex. 26, Kenily Dep. at 86-87.) During the negotiations, one issue that arose was the County's assumption of liability once it acquired the EMWA. (*See* Ex. 168, Letter from Counsel for EMWA, Mar. 1, 2000). EMWA's understanding was that "the County is going to assume *all* liability arising out of the Authority's operation." (*Id.* (emphasis added)). One reason for this understanding was the planned acquisition of all of the EMWA's assets with no money changing hands. (*Id.*; *see also* Ex. 41, Krischak Dep. at 68 (testifying that the "intention was the acceptance of the obligations of the [EMWA] and an agreement by the county to accept those liabilities and assets at the same time")). Similarly, because the EMWA would cease to exist as part of the planned transaction, it could not retain any liability. (*See* Ex. 168, Letter from Counsel for EMWA, Mar. 1, 2000).

Finally, on October 23, 2002, the EMWA and the County entered into the Acquisition and Dissolution Agreement that formed the basis of the transaction (the "Agreement"). (Ex. 74, Acquisition and Dissolution Agreement, Oct. 23, 2002). Under this Agreement, the County acquired ownership of the EMWA including all its assets and liabilities. (*Id.*). As part of the Agreement, the East Muskingum Water Authority agreed to:

> convey[] to the County all of its assets, including without limitation, all interests in real property, fixtures, personal property, bank accounts, records, interests in contracts, claims and causes of action, and accounts receivable, including but not limited to, the Water System and all water lines, connections, pump stations, monitoring equipment and all other property of any type that is a part of or used in connection with the operation, maintenance or repair of the Water System.

(*Id.* at Section 2). In other words, Muskingum County got everything. (*See* Ex. 53, Montgomery Dep. at 140-41).

In exchange, the Agreement required the County to operate and maintain the EMWA's current water system in order to continue providing water service to the EMWA's customers. (Ex. 74, Acquisition and Dissolution Agreement, Oct. 23, 2002, Section 4). Additionally, the County agreed to continue to employ the EMWA's employees as County employees. (*Id.* at Section 7; Ex. 169, Memorandum of Understanding; Ex. 170, Letter to EMWA Board, Dec. 13, 1999).

Additionally and most relevant here, Muskingum County assumed the East Muskingum Water Authority's liabilities. (Ex. 74, Acquisition and Dissolution Agreement, Oct. 23, 2002, Section 5; Ex. 168, Letter from Counsel for EMWA, Mar. 1, 2000; Ex. 24, Howard Dep. at 102). Related to Muskingum County's assumption of all liabilities, the EMWA's board warranted that it had no other litigation pending against it other than as disclosed in the Agreement. (Ex. 74, Acquisition and Dissolution Agreement, Oct. 23, 2002, Section 6 and Appendix E). The Agreement expressly included the pending discrimination charge filed with the Ohio Civil Rights Commission by residents of the Coal Run neighborhood:

> Investigation by the Ohio Civil Rights Commission as a result of complaints from the residences located within Langlan [sic] Lane, Coal Run Road . . . alleging discrimination based on race in failing to extend water lines.

(Ex. 74, Acquisition and Dissolution Agreement, Oct. 23, 2002, Section 6 and App. E).

Subsequently, the EMWA filed a petition with the court for dissolution as provided for under the Agreement; and, on February 28, 2003, the court granted the petition. (Ex. 75, Order Dissolving EMWA, Feb. 28, 2003.) The court ordered that the EMWA "be and is hereby dissolved upon the transfer by the East Muskingum Water Authority to the County of

Muskingum of the East Muskingum Water Authority's water system and the assumption or satisfaction by the County of Muskingum of the *East Muskingum Water Authority's liabilities*." (*Id.* (emphasis added)). Additionally, the court conditioned its grant of the EMWA's petition to dissolve on the County's "assumption or satisfaction" of the EMWA's liabilities. (*Id.*).

The County accepted ownership of the EMWA and its assets on August 1, 2003. (Ex. 131, June 26, 2003; Ex. 53, Montgomery Dep. at 49). At that time, all of the EMWA employees became employees of the Muskingum County Water Department. (Ex. 169, Memorandum of Understanding; Ex. 24, Howard Dep. at 87; Ex. 53, Montgomery Dep. at 139). In addition, three of the former EMWA board members became board members on the Muskingum County Water and Sewer Advisory Board. (Ex. 24, Howard Dep. at 83; Ex. 4, Cameron Dep. at 21-22, 39). The County also continued to work with the same engineer that had previously worked with the EMWA on its water projects. (Ex. 6, Coast Dep. at 17-18, 66). In sum, with the same employees, waterlines, and engineering support, the County continued to operate and maintain the former EMWA water system.

## II.    LEGAL STANDARD

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis deleted); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

**III.     ARGUMENT**

As a successor in interest, the County is liable for the past conduct of the EMWA. This includes any discriminatory policies and practices, such as its failure to provide the Coal Run neighborhood with access to public water. This Court need not decide the ultimate issue of discrimination, however, in order to find that the County is liable for the EMWA's past conduct. Rather, the Court need only determine that the County is a successor in interest of the EMWA.

Whether this Court applies Ohio's common law traditional test for successor liability or federal common law's expanded test for successor liability, the result is the same. The County is a successor in interest of the EMWA and is liable for any acts or omissions of the East Muskingum Water Authority.

**A.     Under Ohio's Test For Successor Liability, The County Is Liable For The EMWA.**

Where the transaction at issue was a de facto merger, Ohio imposes liability on the surviving successor entity. *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993) (noting that "the liability of the successor has usually depended on whether the transaction was a . . . de facto merger (liability imposed by common law) [compared to a] cash-for-assets transaction (no liability))." "A de facto merger is a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor." *Id.* at 1134. In determining whether a transaction is a de facto merger, Ohio courts examine the following factors: (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the

assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations. *Id.*

Applying these factors, this Court recently granted summary judgment on the issue of successor liability by a surviving corporation. *Cytec Indus. Inc. v. B.F. Goodrich Co.*, 196 F. Supp. 2d 644, 659 (S.D. Ohio 2002). In *Cytec*, the surviving corporation acquired all the assets of its predecessor and continued to operate the acquired facility as a new division of the surviving corporation. *Id.* at 658-59. While there was no sale of assets in exchange for stock, this Court found that Ohio law did not require that every factor be present before finding a de facto merger. Instead, the focus should be "whether there exists a sufficient nexus between the successor and predecessor corporations to establish successor liability." *Id.* at 658. Because the surviving corporation absorbed all the assets of the now-dissolved corporation and continued to operate the business in the same manner as before the transaction, this Court determined that a sufficient nexus existed. *Id.* at 659. Finally, this Court determined that although the agreement did not contain an express assumption of all the predecessor's liabilities, the surviving corporation "would have had to assume [the predecessor's] obligations, such as contractual obligations, in order to continue the seamless operation of [the predecessor's business]." *Id.* at 659. Finding all the factors supported the conclusion that the transaction was a de facto merger, this Court granted summary judgment and held the successor liable for the predecessor corporation's liabilities. *Id.*

Similarly, this Court should find that the County is liable for the EMWA here. The County continued the previous business activity of the EMWA using its assets and its personnel. In addition, a sufficient nexus exists between the County and the EMWA, where the County acquired all of the EMWA's assets and employed all the same employees to continue serving

water to the same customers.  And, as no one disputes, the EMWA dissolved upon the County's acquisition of the EMWA's assets and assumption of its liabilities.  Finally, the County both expressly and implicitly assumed all liabilities of the EMWA.

### 1. The County continued the EMWA's business activity.

Turning to the first factor, the County, without interruption, has continued the business activity of the EMWA.  On August 1, 2003, the County acquired all of the EMWA's assets, without limitation.  (Ex. 74, Acquisition and Dissolution Agreement, Oct. 23, 2002, Section 2; Ex. 131, County Resolution June 26, 2003).  In other words, the County got everything, and the EMWA retained nothing.  (*See* Ex. 53, Montgomery Dep. at 140-41; Ex. 168, Letter from Counsel for EMWA, Mar. 1, 2000).  At that same time, the County, as agreed upon, continued to operate the existing water system and service EMWA's former customers using the same personnel and facilities.  (Ex. 74, Acquisition and Dissolution Agreement, Oct. 23, 2002) (agreeing to "operate, maintain and repair the Water System to provide water service to the current and prospective customers of the Water System").  Ever since the County took ownership of the EMWA, it has continued to serve the prior EMWA customers utilizing the same water lines and facilities.  (Ex. 120, Letter to Commissioner Kenily, June 8, 1998).

In addition, the County continued the EMWA's business activity using the very same employees as had previously worked for the EMWA.  (*See* Ex. 24, Howard Dep. at 87; Ex. 53, Montgomery Dep. at 139).  In fact, it was a condition of the Agreement that Muskingum County employ "all the current employees of East Muskingum Water Authority as County employees." (Ex. 169, Memorandum of Understanding; *see also* Ex. 170, Letter to EMWA Board, Dec. 13, 1999) (stating the County's intention to retain all the current employees as County employees with the same privileges, pay and seniority).  Like the employees, the County also incorporated three of the former EMWA board members into the Muskingum County Water and Sewer

Advisory Board, which serves as an advisory board to the Countywide Water and Sewer District. (Ex. 24, Howard Dep. at 83; Ex. 4, Cameron Dep. at 21-22, 39).  As a final piece of evidence of this seamless transition, the County even retained the same engineering firm that previously served the EMWA throughout its entire existence.  (Ex. 6, Coast Dep. at 17-18, 66).  All of this points to the same conclusion:  that the County has continued to operate the EMWA's business activity in substantially the same manner as the EMWA did previously, using the same personnel and serving the same customers.

### 2. Muskingum County shares a "sufficient nexus" with the EMWA.

This continuity also demonstrates that a "sufficient nexus" exists between the EMWA and Muskingum County, satisfying the second factor, "continuity of shareholders."  While no stock, or in fact money, changed hands during this transaction (*see* Ex. 168, Letter from Counsel for EMWA, Mar. 1, 2000), as this Court noted in *Cytec*, such a transfer of assets for stock is not necessary.  Rather, what is necessary is a "sufficient nexus" between the successor and predecessor.  Where the County acquired all the EMWA's assets, employed all its employees, and continued to operate the water system and serve the same customers as before, this "sufficient nexus" requirement is satisfied.  *See Cytec*, 196 F. Supp. 2d at 659 (finding a "sufficient nexus" where the successor continued to operate the predecessor's business in substantially the same manner as the predecessor).

### 3. The EMWA immediately dissolved.

No one can dispute that the EMWA dissolved and no longer exists today.  This dissolution occurred at the moment that Muskingum County assumed all of the EMWA's assets and liabilities.  (Ex. 75, Judgment Entry, Feb. 28, 2003 ("The East Muskingum Water Authority be and is hereby dissolved upon the transfer by the East Muskingum Water Authority to the County of Muskingum of the East Muskingum Water Authority's water system and the

assumption or satisfaction by the County of Muskingum of the East Muskingum Water Authorities liabilities.")). As one County Commissioner put it, "it's one government entity basically being dissolved and brought under another county agency." (Ex. 26, Kenily Dep. at 92). Thus the third factor—the immediate or rapid dissolution of the predecessor—is satisfied.

### 4. Muskingum County assumed the EMWA's liabilities.

Finally, this transaction satisfies the fourth factor because Muskingum County has assumed all of the EMWA's liabilities and obligations ordinarily necessary to continue the business operations. As an initial matter, this Court could find from the nature of the transaction alone that the County assumed these liabilities and obligations. As this Court found in *Cytec*, an assumption of the predecessor's liabilities can be presumed from the fact that the surviving corporation "continue[d] the seamless operation" of the prior business activity. *Cytec*, 196 F. Supp. 2d at 659. That occurred here. The County seamlessly and without interruption continued the very same business operations of the EMWA's water system, serving the same customers using the exact same personnel and the same facilities. From this alone, this Court should find that the County assumed the EMWA's liabilities.

Here, however, there is more. First, under the Agreement, the County assumed *all* of the EMWA's liabilities. The Agreement expressly states that the "County hereby assumes and agrees to discharge, the Authority Liabilities." (Ex. 74, Acquisition and Dissolution Agreement, Oct. 23, 2002, Section 5; *see also id.* at Section 7 ("The County [] has authorized the assumption of the Authority Liabilities . . . ."); Ex. 24, Howard Dep. at 102 (testifying that the County assumed all the debts of the EMWA)). In addition, within the Agreement itself, the EMWA board expressly included its potential legal liability for the then-ongoing investigation of the charges of discrimination that form the basis of Plaintiffs' allegations here. (Ex. 74, Acquisition and Dissolution Agreement, Oct. 23, 2002, Appendix E). Moreover, the Court conditioned its

grant of the dissolution petition on Muskingum County's "assumption or satisfaction" of the EMWA's liabilities.

Second, the intent at the time the Agreement was entered into was that "the County [was] going to assume all liability arising out of the Authority's operation." (Ex. 168, Letter from Counsel for EMWA, Mar. 1, 2000; *see also* Ex. 41, Krischak Dep. at 68 (testifying that the "intention was the acceptance of the obligations of the [EMWA] and an agreement by the county to accept those liabilities and the assets at the same time")). This was so because by entering into this transaction with the County, the EMWA Authority "will go out of existence and will have no assets from which its current Board members could pay any liability once it ceases to exist." (Ex. 168, Letter from Counsel for EMWA, Mar. 1, 2000). When the County acquired all of the EMWA's assets, it did so without anything of value being provided to the EMWA or its board. (*Id.*). As such, neither the EMWA nor its board could remain responsible for any unresolved liabilities as the EMWA retained nothing. (*See id.* ("If this were an arm's length transaction in which money was exchanging hands I would agree that they may be responsible for any breach of such contracts prior to the closing of this deal.")). In this way, both the express language of the Agreement and the nature of the transaction demonstrate that the County expressly and implicitly assumed all the obligations and liabilities of the EMWA.

In sum, all four factors of the de facto merger analysis are satisfied here. Consequently, Muskingum County should be held liable for any acts or omissions of the EMWA.

### B. Under Federal Common Law, The County Is Liable For The EMWA's Acts And Omissions.

Not only is Muskingum County's takeover of the EMWA a de facto merger under Ohio's common law standard for successor liability, the County also qualifies as a successor in interest of the EMWA under the federal common law standard of successor liability. Federal common

- 10 -

law has developed a more relaxed standard of successor liability that has been applied to claims involving important federal statutory rights, such as claims of discrimination. *See E.E.O.C. v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1091-92 (6th Cir. 1974) (holding that Title VII's intent to eliminate discrimination in the workplace compelled an equitable consideration of a successor's liability for its predecessor's past acts of discrimination); *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1327 (7th Cir. 1990) (finding "the imposition of successor liability to be appropriate in those cases where the vindication of an important federal statutory policy has necessitated the creation of an exception to the common law rule"). The purpose of applying this more relaxed standard is to ensure that victims of discrimination are not left without an adequate remedy, particularly where the predecessor is no longer able to provide any monetary relief. *MacMillan*, 503 F.2d at 1091-92.

The liability of a successor is decided on a case-by-case basis, keeping in mind that "the equities of the matter favor successor liability because it is the successor who has benefited from the discriminatory [past] practices of its predecessor." *Id.* at 1092. In making this case-by-case determination, courts have considered the following factors: (1) whether the successor had notice of the allegations of discrimination; (2) the ability of the predecessor to provide relief; and (3) whether there has been substantial continuity of business operations. *Id.* at 1094; *Upholsterers' Int'l*, 920 F.2d at 1327. In addition, courts also consider a variety of factors that all relate to the substantial continuity of business operations, such as whether the successor uses the same facility, same equipment, and same work force and supervisory personnel; whether the successor offers substantially the same types of jobs; and whether the successor produces the same product. *MacMillan*, 503 F.2d at 1094. Applying this multi-factor analysis here compels a

- 11 -

conclusion that the County should be held liable as a successor for any acts or omissions of the East Muskingum Water Authority.

### 1. The County had actual notice.

The County had actual notice of the claims of discrimination alleged by the Plaintiffs. First, the Agreement contained express notification of these pending claims of discrimination. (Ex. 74, Acquisition and Dissolution Agreement, Oct. 23, 2002, Section 6 and Appendix E). Additionally, on July 26, 2002, a complaint against both the County and the EMWA was filed with the Ohio Civil Rights Commission, and on June 12, 2003, the Commission found that probable cause existed to believe that the County and the EMWA had engaged in unlawful discriminatory practices. (Ex. 148, OCRC Probable Cause Finding). All of this occurred prior to the County's final acquisition of the EMWA, which occurred on August 1, 2003. (Ex. 131 County Resolution, June 26, 2003).

Third, in addition to Muskingum County's express knowledge of the claims of discrimination, the County also had extensive knowledge of the need for water in the Coal Run neighborhood. For example, in 1993, the County was involved in an income survey for the booster pump station installed by the City for the Old Adamsville Road waterline. (Ex. 171, Results of Nov. 1993 Income Survey). This income survey included the streets of Langan Lane and Coal Run Road. (*Id.*). As part of the County's analysis of these income surveys, it determined which houses did not have a tap on this water system. (*Id.*).

Similarly, at least by late 2000, Muskingum County was again aware of the dire need for water in the Coal Run neighborhood when it was asked to partner with Zanesville on a project that would have served this area with public water. (Ex. 1, Bennett Dep. at 40-42; Ex. 45, Madden Dep. at 109-10). The County, however, later rejected this joint project idea. (Ex. 60, Sims Dep. at 61; *see also* Ex. 45, Madden Dep. at 123). Then, in December 2001, two residents

of the Coal Run neighborhood, Jerry Kennedy and Richard Kennedy, Jr., attended a public hearing on the grant for the County's Chandlersville water project. (Ex. 143, County Public Hearing, Dec. 13, 2001; Ex. 144, Kennedy, Jerry and Kennedy, Richard affidavits). There is no dispute that at this meeting Jerry Kennedy asked about getting water to the Coal Run neighborhood. (Ex. 143, County Public Hearing, Dec. 13, 2001; Ex. 26, Kenily Dep. at 126; Ex. 45, Madden Dep. at 190; Ex. 53, Montgomery Dep. at 258-59). The only dispute is over the County's response, an issue of fact that is not relevant to whether the County had notice. These undisputed facts demonstrate that the County not only had express notice of the charge of discrimination, it also was aware of the need for water in the Coal Run neighborhood prior to its acquisition of the East Muskingum Water Authority.

### 2. The EMWA cannot provide relief.

This second factor, the ability to provide the discriminatee with full relief, is the primary concern. *MacMillan*, 503 F.2d at 1092. Here, it cannot be doubted that the EMWA cannot provide any relief to Plaintiffs. Upon Muskingum County's acquisition of the EMWA's assets and liabilities, the EMWA ceased to exist. (Ex. 75, Order Dissolving EMWA, Feb. 28, 2003). This transfer of assets was not "an arm's length transaction in which money was exchanging hands." (Ex. 168, Letter from Counsel for EMWA, Mar. 1, 2000). Rather, the County got everything, and the EMWA retained and received nothing. (*Id.*; Ex. 53, Montgomery Dep. at 140-41). And then, immediately upon the County's acquisition of "everything," the EMWA dissolved. (Ex. 75, Order Dissolving EMWA, Feb. 28, 2003).

Under these undisputed facts, this second factor weighs heavily in favor of holding the County liable for the discriminatory acts and omissions of the EMWA, because to do otherwise would "leav[e] the discriminatee without a remedy or with an incomplete remedy." *MacMillan*, 503 F.2d at 1091.

- 13 -

### 3. Substantial continuity exists.

The last factor, whether there is substantial continuity between the predecessor and the successor, also weighs in favor of holding Muskingum County liable for the EMWA's discriminatory acts or omissions. Substantial continuity exists here where the County acquired all the EMWA's assets, continued to employ the same employees, and continued to provide water service to the same customers using the same pipes, equipment and facilities. (Ex. 74, Acquisition and Dissolution Agreement, Oct. 23, 2002, Section 7; Ex. 169, Memorandum of Understanding; Ex. 170, Letter to EMWA, Dec. 13, 1999; Ex. 24, Howard Dep. at 87; Ex. 53, Montgomery Dep. at 139). Further cementing this continuity of operations, the County even retained the very same engineering firm that had worked with the EMWA in developing projects throughout its over 35-year existence. (Ex. 6, Coast Dep. at 17-18, 66).

Taking all these factors into account, the only reasonable conclusion is that Muskingum County is a successor in interest of the EMWA under the federal common law standard. Furthermore, even under the traditional common law test, the County is a successor in interest of the EMWA. As a successor in interest, the County is liable for any acts or omissions of the EMWA. Consequently, this Court should hold Muskingum County liable for any discriminatory acts or omissions of the EMWA.

- 14 -

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment should be granted.

Dated:  April 20, 2007

Respectfully Submitted,

| | |
|---|---|
| /s/ Kerstin Sjoberg-Witt | /s/ per authority |
| Shawn J. Organ (Bar No. 0042052) | John P. Relman |
| Kerstin Sjoberg-Witt (Bar No. 0076405) | Stephen M. Dane* (Bar No. 0013057) |
| JONES DAY | Reed N. Colfax |
| Street Address: | Jennifer I. Klar |
| 325 John H. McConnell Boulevard | RELMAN & ASSOCIATES, PLLC |
| Suite #600 | 1225 19th Street, N.W., Suite 600 |
| Columbus, OH 43215-2673 | Washington, D.C.  20036-2456 |
| Mailing Address: | (202) 728-1888 |
| P.O. Box 165017 | jrelman@relmanlaw.com |
| Columbus, Ohio 43216-5017 | sdane@relmanlaw.com |
| (614) 281-3889 | rcolfax@relmanlaw.com |
| (614) 461-4198 (fax) | jklar@relmanlaw.com |
| sjorgan@jonesday.com | |
| ksjobergwitt@jonesday.com | *Trial Attorney for Plaintiff Fair Housing Advocates Association |
| **Counsel for Individual Plaintiffs and Plaintiff Fair Housing Advocates Association** | **Counsel for Individual Plaintiffs and Plaintiff Fair Housing Advocates Association** |

/s/ per authority
Kimberly M. Skaggs (Bar No. 0061572)
Rachel K. Robinson* (Bar No. 0067518)
EQUAL JUSTICE FOUNDATION
88 East Broad Street, Suite 1590
Columbus, OH 43215
(614) 221-9800
kms@equaljusticefoundation.com
rkr@equaljusticefoundation.com

*Trial Attorney for Individual Plaintiffs

**Counsel for Individual Plaintiffs and Plaintiff Fair Housing Advocates Association**

/s/ per authority
Isabelle Thibault
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
(202) 319-1000
isabelle_thabault@washlaw.org

**Counsel for Individual Plaintiffs and Plaintiff Fair Housing Advocates Association**

/s/ per authority
Beth A. Wilson (Bar No. 0068766)
Jennifer W. Steves (Bar No. 0074804)
COOPER & WALINSKI, L.P.A.
900 Adams Street
Toledo, OH 43624-1505
(419) 241-1200
wilson@cooperwalinski.com
steves@cooperwalinski.com

**Counsel for Individual Plaintiffs and Plaintiff Fair Housing Advocates Association**

Marc Dann
**ATTORNEY GENERAL**

/s/ per authority
Marilyn Tobocman (Bar No. 0024888)
Stefan J. Schmidt (Bar No. 0047358)
Stephanie Bostos Demers (Bar No. 0061712)
State of Ohio – Office of the Attorney General
Civil Rights Section
30 East Broad Street, 15th Floor
Columbus, OH 43215-3428
Phone: (614) 466-7181
Fax:    (614) 466-2437
mtobocman@ag.state.oh.us
sschmidt@ag.state.oh.us
sdemers@ag.state.oh.us

**Counsel for Plaintiff Ohio Civil Rights Commission**

- 17 -

## CERTIFICATE OF SERVICE

Due to scheduled maintenance on the Court's CM/ECF system, the foregoing Plaintiffs' Motion for Partial Summary Judgment on the Liability of Muskingum County for the East Muskingum Water Authority was filed via email per permission of the Court on April 20, 2007, to be followed by electronic filing through the CM/ECF system on Monday, April 23, 2007. I hereby certify that on April 20, 2007, a copy of the foregoing was sent to the following via email:

> Jessica Philemond
> *Counsel for Defendants Muskingum County, Dorothy Montgomery, Ed Kenily, and Don Madden*
>
> Mark Baserman
> *Counsel for Defendant City of Zanesville*
>
> Mike Valentine
> *Counsel for Defendants Washington Township, Paul Bunting, Doug Culbertson, and Clint Cameron*

All counsel of record will receive notification by operation of the Court's electronic filing system on Monday, April 23, 2007.

> /s/ Kerstin Sjoberg-Witt
> Counsel for Individual Plaintiffs and Plaintiff
> Fair Housing Advocates Association

- 17 -

COI-1368636v4